EXHIBIT A



02/08/2013 1:08PM FAX 4153█████41     BRADLEY                    ☒0006/0040

SUMMONS ISSUED

VERNON L. BRADLEY (SBN 49294)
LAW OFFICES OF VERNON L. BRADLEY
Waldo Point Harbor
54 Liberty Dock
Sausalito, California 94965-3106

Telephone:    (415) 331-4441
Facsimile:    (415) 331-4443

Attorney for Plaintiff,
HEDDI LINDBERG

**F I L E D**
Superior Court of California
County of San Francisco

FEB -8 2013

CLERK OF THE COURT
BY: _____ Chas. R.A.
                    Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

Unlimited Civil Case

HEDDI LINDBERG,

    Plaintiff,

v.

WELLS FARGO BANK, N.A. A/K/A
WACHOVIA MORTGAGE as successor by
merger with WORLD SAVINGS BANK,
FSB; REGIONAL TRUSTEE SERVICES
CORPORATION, and DOES 1 through 50,
inclusive, and all persons unknown, claiming
any legal or equitable right, title, estate, lien,
or interest in the property described in the
complaint adverse to Plaintiff's title, or any
cloud on Plaintiff's title thereto, named as
DOES 51-100, inclusive,

    Defendants.

Case No.:  **CGC-13-528662**

**COMPLAINT**

**COMPLAINT FOR RELIEF:**
1) DECLARATORY RELIEF;
2) INJUNCTION – TEMPORARY,
PRELIMINARY, AND PERMANENT
INJUNCTION;

**COMPLAINT FOR DAMAGES:**
3) INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS;
4) NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS;
5) QUIET TITLE TO REAL PROPERTY;
6) BREACH OF IMPLIED COVENANT
OF GOOD FAITH & FAIR DEALING;
7) DECEIT-PROMISE MADE WITHOUT
INTENT TO PERFORM
8) DECEIT – INTENTIONAL
MISREPRESNETION
9) FRAUD AND DECEIT – SUPPRESSION
OF MATERIAL FACT;
10) FRAUD & DECEIT-NEGLIGENT
MISREPRESENTATION;
11) PROMISSORY ESTOPPEL;
12) NEGLIGENCE;
13) ELDER ABUSE;
14) WRONGFUL FORECLSOURE;
15) VIOLATION OF BUSINESS &
PROFESSIONS CODE § 17200 ET SEQ.;
16) CANCELLATION OF INSTRUMENTS

**JURY TRIAL DEMANDED**

- 1 -

FILED BY FAX

02/08/2013 1 08PM FAX 4153▪▪4; BRADLEY ☒0007/0040

COMES NOW Plaintiff HEDDI LINDBERG and alleges as follows:

## PARTIES

1. Plaintiff HEDDI LINDBERG is and at all times herein mentioned, was a resident of San Francisco County, State of California.

2. Defendant WELLS FARGO BANK, N.A. is a Delaware Corporation, authorized to transact business within the State of California with its principal place of business South Dakota and in this instance was also known as WACHOVIA MORTGAGE, a division of Wells Fargo Bank N.A., and formerly known as WACHOVIA MORTGAGE, FSB, formerly known as WORLD SAVINGS BANK, FSB (hereinafter "the Bank").

3. Defendant REGIONAL TRUSTEE SERVICES CORPORATION. is a Washington State Corporation, authorized to do business at 616 1st Avenue, Suite 500, Seattle, Washington 98104.

4. Defendants DOES 1 through 50, inclusive, have, or claim to have, an interest in the property, the exact nature of which is unknown to plaintiff. Plaintiff is ignorant of the true names, interests, rights, and capacities of Defendants sued as DOES 1 through 100, inclusive, and therefore sues these Defendants by those fictitious names. Plaintiff will amend this complaint to allege her true names, rights, interests, and capacities when they are ascertained.

5. DOES 51 through 100, inclusive, and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title, or any cloud on Plaintiff's title thereto, named as DOES 51-100, inclusive.

6. The true names and capacities of DOES 1 through 100 are unknown to Plaintiff at present, and leave of Court to amend will be sought once their true names have been ascertained.

## COMMON ALLEGATIONS

7. At all times herein mentioned, Plaintiff holds title to the real property situated in the County of San Francisco commonly described as 3 Summit Street, San Francisco, California 94112 Attached as "Exhibit A" is a Deed of Trust.

- 2 -

1      8.    Plaintiff is 71 years old and a cancer survivor although she continues to experience
2 health related issues with her treatment. Plaintiff obtained a residential home re-finance loan from
3 World Savings Bank, FSB, for which a Deed of Trust was recorded against Plaintiff's real property
4 on or about January 17, 2003.

5      9.    Plaintiff sought a refinance to help with her financial situation. Shortly after the
6 refinance of the loan, Plaintiff was diagnosed with breast cancer and incurred significant medical
7 costs. Plaintiff obtained a pick-a-pay, negative amortization loan with World Savings. Plaintiff's
8 mortgage increased each year as a result of this predatory loan.

9     10.    Plaintiff is informed and believes that there were numerous improprieties and
10 fraudulent conduct that caused Plaintiff to be near foreclosure of her property. For instance, it was
11 never explained to Plaintiff that the mortgage rates would continue to rise under the "Pick-A-Pay"
12 option loan. To the average borrower, like Plaintiff, who knows nothing about loans and
13 mortgages, this action is fraudulent and disastrous because Plaintiff had no idea what she was
14 signing and how it would affect her. World of Trouble by CBS NEWS, attached as Exhibit D.
15 Therefore Plaintiff requests for a cancellation, resclssion, and/or complete cancellation of her loan.

16     11.    Plaintiff was 62 years old at the time of the loan. She had approached a mortgage
17 broker about obtaining a loan to assist with the medical payments for her cancer treatments. World
18 Savings, thereafter, took advantage of Plaintiff by persuading her to take out a $405,000 loan at 7%
19 interest. World Savings representatives misrepresented to Plaintiff that interest rates would
20 continue to rise significantly in the future and the "opportunity" to get a 7% interest rate would be
21 lost even though interest rates at the time of the loan were significantly available at a much lower
22 rate.

23     12.    Plaintiff is informed and believes and thereon alleges that World Savings took
24 advantage of Plaintiff's age and lack of banking experience to get her to take a much higher loan
25 than she initially wanted so that they could profit from the broker commissions.

26     13.    Plaintiff contends that Defendants violated the Elder Abuse Act (Welf. & Inst.
27 §15600) by intentionally taking advantage of Plaintiff, who was 62 years old at the time of the loan,

- 3 -

1    and in failing health, persuading Plaintiff to take a much larger loan than she initially sought and not
2    disclosing that lower interest rates were available at the time of the loan so the purpose of obtaining
3    a large commission fee.

4        14.    Plaintiff also contends that Defendants and each of them forced Plaintiff to take a
5    much larger loan that Defendants knew Plaintiff could never pay off because of her advanced age
6    and health issues for the purpose of defrauding her out of her home through unlawful foreclosure
7    proceedings.

8        15.    All of these practices are indicative of predatory lending, and these practices were
9    imposed upon these inexperienced and ill-informed victims for the financial gain of the mortgage
10   company and their Co-Defendants.

11       16.    In 2012, Plaintiff sought a loan modification with Wells Fargo (the purported
12   servicer of her loan). Plaintiff retained the law firm of Greystone-Bristol to assist her with the
13   modification. She was told that she must be sufficiently in default of 3 months in order to qualify
14   for a modification of her loan. Plaintiff was told she had to come up with documentation of her
15   income to qualify for a loan modification. The representations of the Defendants were that if
16   plaintiff would provide documents, they would modify the loan, so that Plaintiff could keep her
17   home. The request for documents was endless. Many times Plaintiff would submit the same
18   documents that she previously submitted to the other agents. Plaintiff submitted her paperwork
19   over many times by fax and mail.

20       17.    Sometime in October 2012, the Greystone-Bristol disappeared and Plaintiff could no
21   longer contact them. Plaintiff thereafter contacted Wells Fargo directly to discuss loan modification
22   process. On or about October 10, 2012, Plaintiff received a Notice of Default attached as "Exhibit
23   B." However, Plaintiff had been told by representatives of Wells Fargo that she was still in the loan
24   modification review and not to be concerned about foreclosure.

25       18.    Plaintiff has continued the loan modification process directly with Wells Fargo since
26   approximately October 2012. Plaintiff is still in the loan modification review process with Wells
27   Fargo.

- 4 -

19. On or about January 10, 2013, Defendant Regional Trustee Services Corporation recorded a Notice of Trustee of Sale on the property with a scheduled date of sale set for February 13, 2013 attached as "Exhibit E." However, at the time the Notice of Trustee Sale was recorded Plaintiff was still under a loan modification review.

20. This dual tracking approach has been outlawed by the Comptroller of the Currency, under the division of the US Treasury Department, a Consent Order has been issued as of April 13, 2011, attached as **Exhibit C**, ordering Wells Fargo, Wachovia, World Savings, and several other banks to cease desist their predatory lending practices including this dual track approach. A summary of the Consent Order was published in the San Francisco Chronicle, attached as **Exhibit C**, which stated:

> Going forward, banks may no longer simultaneously proceed with both loan modifications and foreclosures. That 'dual track' process resulted in many cases where homeowners who were making trial loan modification payments suddenly have their homes repossessed. Banks must establish a single point of contact-either one person or a team-for homeowners seeking assistance. Many struggling homeowners say they had Kafkaesque experiences over and over again, each time explaining their situation from scratch to a new bank representative. Banks must also develop plans for staffing, training and over-sight of outside firms. Banks' plans for correcting foreclosure problems will be supervised by bank regulators."

21. Moreover, dual tracking is now outlawed in the State of California. SB 900, Section 14 which amends Civil Code §2924.11 and takes effect on January 1, 2013. The statute provides in pertinent part:

> (a) If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicers, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:
>
> (1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.
>
> (2) A foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

22. Defendants are in violation of the Homeowner's Bill of Rights which requires that mortgage services (such as Wells Fargo) be restricted from advancing the foreclosure process if the

1 | homeowner is working on securing a loan modification. When a homeowner submits an application
2 | for a loan modification the foreclosure process is stayed pending the completed application has been
3 | fully reviewed. Plaintiff has submitted a loan application which is still currently under review.

4 |     23.    While at the same time, Plaintiff was complying with every request for documents,
5 | the Defendants were continuing on their outlawed dual track approach of continuing the foreclosure
6 | process while asking Plaintiff to submit documents so that she could obtain a loan modification.

7 |     24.    On Friday evening, February 1, 2013, Plaintiff received a letter from Patrick
8 | Finnegan of Wells Fargo by overnight mail requesting Plaintiff to produce additional information
9 | and substantial documents (many of which she had previous provided to Wells Fargo). The letter
10 | informed Plaintiff that she must have all of the information and documents to Wells Fargo within no
11 | later than Monday, February 4, 2013. On February 4, 2013, Plaintiff, along with assistance from
12 | Todd Cunningham of Home Loan Information Center, contacted Finnegan by phone to discuss the
13 | details of the January 31, 2013 letter. Mr. Finnegan at first refused to discuss the loan modification
14 | because he did not have an authorization from Mr. Cunningham. After Mr. Cunningham confirmed
15 | that he had sent in over 5 authorizations, Mr. Finnegan told Plaintiff that she would need to get the
16 | information and documents requested by the end of the day.

17 |     25.    Plaintiff is informed and believes that Defendants were hoping that Plaintiff would
18 | not be vigilant with her foreclosure, therefore rendering moot her application for modification of the
19 | loan. Defendant Wells Fargo never intended to modify her loan and continued to pursue the
20 | foreclosure against her house and the prepaid loan modification on a dual track. Plaintiff has been
21 | continuously in contact with bank for the last year trying to modify her loan to prevent her from
22 | being put into foreclosure. Plaintiff has spoken to several different "relationship managers," filed
23 | with Bank on several different occasions paperwork which was "required" but was not required on
24 | the call before. On nearly every call to the bank, Plaintiff has heard from multiple agents, "you
25 | need additional documents," or "you need to fill out 'this blank' in the original document, and you
26 | need to send us the whole package again." Plaintiff has re-applied many separate times and has
27 |
.. |

-6-

1  been, for the last year since April of 2012, strung along so that Defendant could simply take
2  Plaintiff's home.

3        26.    Plaintiff knows Defendants and each of them ignored traditional lending guidelines
4  in the making the loan, and that Defendant Wells Fargo, Wachovia, World Savings, through the
5  mortgaging department made Plaintiff this toxic loan in which they knew that the borrower could
6  never keep up with the multiplying and rising payments.

7        27.    The Plaintiff, and ordinary refinancing borrower, with no experience in loans, was
8  assured by the lender's agent that she could refinance or modify her loan at any time, so her notice
9  that these payments would rise was fraud in the inducement. Wells Fargo, Wachovia, World
10  Savings' agents that sold Plaintiff this loan told Plaintiff that she would be able to refinance to allow
11  her to side step her rising payment. However, instead of allowing Plaintiff to refinance when her
12  payments started to rise above her ability, Defendant Wells Fargo, Wachovia, World Savings
13  blamed the rapid reduction in home values, and Plaintiff was unable to refinance, as the lender's
14  agent had assured. Plaintiff had relied on lender's representation here to her detriment. Defendants
15  knew or should have known that their representation was simply not true. Defendant Wells Fargo,
16  Wachovia, World Savings should never have let their agents consistently represent to borrowers, as
17  they were acting in the scope of their employment, furthering and benefiting Wells Fargo,
18  Wachovia, World Savings, the borrower's ability to refinance and not explain the basis for such
19  contentions.

20        28.    Plaintiff, an ordinary home re-financing consumer did not know these facts about the
21  housing market, nor was she told or informed of such by the agent giving Plaintiff her loan. Had
22  the true facts been known to Plaintiff, the offered loan would have been rejected and Plaintiff would
23  have declined what was offered, preferring to avoid forfeiture of the home with its equity, which is
24  exactly what is occurring unless stopped by the Courts.

25        29.    All of these practices are indicative of predatory lending, and were imposed upon
26  these inexperienced and ill-informed victims for the financial gain of the mortgage company and
27  their Co-Defendants.

-7-

1      30.    Plaintiff is informed and believes and based thereon alleges that neither World

2    Savings nor Wachovia, nor any agent for them has ownership or possession of the original

3    Promissory note, the basis for Defendants to bring a foreclosure sale based upon breach of the

4    Promissory note for which the Deed of Trust, with the power of sale, is security.

5      31.    Plaintiff contends that Wells Fargo, Wachovia, World Savings intended to use

6    Plaintiff's loan to make a secondary profit. Plaintiff believes Wells Fargo, Wachovia, World

7    Savings attempted to sell Plaintiff's loan through the secondary mortgage market to Wall Street

8    investors. This process of selling loans to Wall Street investors is known as "securitization." Such

9    securitization has so transformed Plaintiff's deed of trust that it is no longer the same deed of trust

10   in which Defendant Wells Fargo, Wachovia, World Savings and Plaintiff entered into. Further, a

11   failed securitization causes the deed of trust to become invalid. Plaintiff believes, and can prove

12   upon a securitization audit, that Defendant Wells Fargo, Wachovia, World Savings has caused

13   Plaintiff's deed of trust to become invalid because Wells Fargo, Wachovia, World Savings failed to

14   property securitize Plaintiff's deed of trust.

15     32.    Plaintiff has reacted to this intentional and malicious conduct by the Defendants,

16   with the severe physical ailment of becoming ill, having severe panic attacks, stress related, and

17   furthered her psychiatric disability. Defendant's actions were done with the knowledge that the

18   Plaintiff was to suffer mental anguish and emotional distress. Defendants continued to string

19   Plaintiff along knowing at the end of the process she would experience extreme emotional and

20   mental distress at the prospect of losing her home and the distress of losing her credit that had a

21   pervasive effect on her ability to obtain goods and services in general. Any reasonable and logical

22   person would have understood what kind of effects such extreme and outrageous conduct would

23   have on another person. The simple prospect of losing one's family home, treasured as the property

24   to be passed down the lineage, being taken away, simply because the Bank decided to wait a few

25   months every time they made any actions, if at all, is horrendous. Further, to add insult to injury,

26   Bank let Plaintiff think she was saving her house, when all the while Bank was putting Plaintiff in

27

- - 

- 8 -

1   further and greater peril as they told her to default on her loan in order to qualify for a loan

2   modification program.

3       33.    Based upon the actions of these Defendants, and each of them, Plaintiff is threatened

4   with the wrongful and unlawful dispossession of the title of her real property and the manner and

5   method of such wrongful dispossession entitles Plaintiff not only to compensatory and

6   consequential damages, but punitive damages for the intentional and willful conduct of the

7   Defendants, and each of them. Said punitive award should be assessed according to proof at the

8   time of trial, to set an example and deter others from similar conduct.

9                                   **FIRST CAUSE OF ACTION**
                                         (Declaratory Relief)
10                                    AGAINST ALL DEFENDANTS

11      34.    Plaintiff incorporates by reference to the allegations contained in Paragraph 1

12   through 33, inclusive, as if set forth in full herein.

13      35.    Defendants Wells Fargo, Wachovia, World Savings and Regional Trustee Services

14   Corporation lack of legal standing to conduct and enforce a non judicial foreclosure as they are not

15   the holders in due course and they are not in default as said holders in due course. Since "the note

16   and the mortgage are inseparable, the former as essential, and the latter as an incident; assignment

17   of a note carries the mortgage with it, but the assignment of a mortgage alone is nullity." *Carpenter*

18   *v Longan* (1873) 83 U.S. 271, 274.

19      36.    Further, assignment of a deed of trust without transferring the promissory note is

20   completely ineffective. On information and belief, Plaintiff's deed of trust may have been

21   transferred through the secondary mortgage market in an attempt to securitize Plaintiff's loan.

22   Plaintiff maintains on information and belief that Plaintiff's promissory note was not transferred

23   with her assignment of deed of trust and therefore such is now made ineffective.

24      37.    Also, Plaintiff maintains on information and belief that there have been numerous

25   improprieties in the transfer of the Deed of Trust and appointment of the trustee in the handling of

26   her loan, and that the trustees do not represent the holders in due course in possession of

27

· ·

                                            - 9 -

1  instruments that have the rights of holders in due course to enforce a non judicial foreclosure.

2  Further, the notes if they exist at all are not in default.

3      38.    Through the so-called securitization process mortgages, deeds of trust, and notes

4  were converted from an ill-liquid thirty (30) year mortgage to immediately liquid certificates,

5  bonds, or stocks. That process severed the authority of the holders in due course to take steps to

6  avoid losses and the right of foreclosure. The securitization process converted holders in due course

7  into owners of the right to collect contract payments without holding any legal or equitable interest

8  in any of the securitized mortgages, stocks, bonds, or other derivatives. They have not realized any

9  loss or damages resulting from the purported default. The structure of securitization provided

10  insurance to pay the monthly cash flow to the investor in the event of a default and there is no

11  investor or holder in due course to claim that a particular mortgage is in default. Since the

12  Defendants are not holder in due course and their foreclosure does not conform to the strict

13  mandates of civil Code 2923.5, 2924, and 2932.5, and they do not have the legal authority or

14  standing to foreclose.

15      39.    In the alternative, even if Defendant Wells Fargo, Wachovia, World Savings is able

16  to make up this missing assignment of Plaintiff's promissory note, Plaintiff is informed and believes

17  that there was no valid assignment of her Deed of Trust to a new entity to establish the chain of title

18  in order for the Defendants to foreclose. Nor was the securitization process along with the Pooling

19  and Servicing Agreements or the REMIC (Real Estate Mortgage Investment Conduits) provisions

20  of the IRS Tax Code properly followed by the Defendant or the alleged successors in interest.

21  Plaintiff further believes that the strict requirements of the Pooling and Servicing agreements

22  involved in Plaintiff's securitization process prevent Defendant from becoming the owner of the

23  Deed of Trust, Promissory note, or the mortgage and therefore Defendant does not have standing to

24  foreclose. Further, Defendants cannot foreclose because they have not properly assigned the

25  mortgage and the promissory note, without the assignment of the promissory note, the mortgage is

26  deemed ineffective because it does not secure property for any reason.

27

- 10 -

1        40.    An actual controversy has arisen and now exists between Plaintiff and Defendants

2  concerning their respective rights and duties. Plaintiff contends that Defendants do not have

3  standing to foreclose on the property and that Defendants are not the entities that Plaintiff needs to

4  be paying her loan off with, that Wells Fargo, Wachovia, World Savings no longer retains authority

5  over Plaintiff's loan and therefore all these years have been wasted by working with the wrong

6  party. Further, in the course of preparing the mortgages to be sold on Wall Street, Wells Fargo,

7  Wachovia, World Savings, as the Plaintiff is informed and believes, signed the Assignment of Deed

8  of Trust in blank, in order to fill it in later when they finally figured out who was the Assignee.

9  Therefore, the Deed of Trust was never assigned to the proper foreclosing bank or entity.

10       41.    A judicial declaration is necessary and appropriate at this time and in these

11  circumstances so that Plaintiff and Defendants may ascertain their rights and duties under the Note

12  and Deed of Trust, if any.

13      WHEREFORE, Plaintiff prays for judgment as set forth below.

14

15
### SECOND CAUSE OF ACTION
(Injunction for temporary restraining order; preliminary and permanent injunction)
AGAINST ALL DEFENDANTS

16       42.    Plaintiff incorporates by reference to the allegations contained in Paragraph 1

17  through 41, inclusive, as if set forth in full herein.

18       43.    Plaintiff received a Notice of Trustee's Sale on or about January 10, 2013. The

19  authorization of sale was taken from Regional Trustee Service Corporation, LLC, as "Trustee."

20  However, Regional Trustee Service Corporation is not the Trustee listed on Plaintiff's deed of trust,

21  which is Golden West Savings. There is no Substitution of Trustee substituting in Regional Trustee

22  Services Corporation on file. Therefore, Regional Trustee Services Corporation has no standing to

23  foreclosure on the property.

24       44.    Defendants threaten to and unless restrained, will sell the subject property, or cause it

25  to be sold, to Plaintiff's great and irreparable injury, for which pecuniary compensation would not

26  afford adequate relief, because the real property is unique and such sale would have the effect of

27

- 11 -

1   losing Plaintiff's home to a bona fide third party Wells Fargo, Wachovia, World Savings through an

2   illegal non judicial foreclosure.

3        45.    As a proximate result of Defendant's wrongful conduct, Plaintiff has been damaged

4   in an amount according to proof. Plaintiff will be further damaged in like manner so long as

5   Defendant's conduct is allowed to continue. The full amount of this damaged is not yet known to

6   Plaintiff, and Plaintiff will amend this complaint to state this amount when it becomes known to her

7   or on the proof of damages.

8        WHEREFORE, Plaintiff prays for judgment as set forth below.

9

10  <div align="center">**THIRD CAUSE OF ACTION**<br>(Intentional Infliction of Emotional Distress)<br>**AGAINST ALL DEFENDANTS**</div>

11       46.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through

12  45, inclusive, as if fully set forth herein.

13       47.    World Savings knew of Plaintiff's health issues and still continued to press and sell

14  Plaintiff on a loan.

15       48.    During the course of this loan going in default, Plaintiff, as a direct approximate

16  result of the stress through endless requests for resubmitting loans, incompetent and defective loan

17  analysis of the financial data by Wells Fargo and their representatives, all of whom are employees

18  and agents of Wells Fargo, Wachovia, World Savings and were working within the scope of their

19  employment to the benefit of Wells Fargo, Wachovia, World Savings. Further, Plaintiff was misled

20  as to what the status of her loan was in, and where her loan modification was. Plaintiff was told

21  several times that she was in modification and for months, she would wait with no progress, and

22  suddenly, and without reason, Plaintiff would be shut out with Wells Fargo, Wachovia, World

23  Savings' denial and request for a new application.

24       49.    The misleading statements that Plaintiff would qualify for various programs

25  improving her financial status were all made in extreme bad faith and fraud.

26

27

\- -

<div align="center">- 12 -</div>

<div align="right">**Notice of Removal**<br>**Exhibit A page 31**</div>

1    50.    As a proximate result of the acts of Defendants, Plaintiff suffered mental anguish and

2  emotional distress along with chronic sleep deprivation and bouts of deep depression, requiring her

3  to seek and employ physicians to examine and treat her which incurred additional medical expenses.

4    51.    The aforementioned acts of Defendants were willful, wanting, malicious, and

5  oppressive and justify the awarding of exemplary punitive damages.

6    WHEREFORE, Plaintiff prays for judgment as set forth below.

7
8

### FOURTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)
AGAINST ALL DEFENDANTS

9    52.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through

10  51, inclusive, as if fully set forth herein.

11    53.    At all times and places herein mentioned Defendant negligently and carelessly

12  carried out their duty to Plaintiff. Plaintiff, an ordinary home refinance customer had no idea that

13  she would not be allowed to modify her loan. Instead, Defendant Wells Fargo, Wachovia, World

14  Savings represented to Plaintiff through their loan agents that she would be able to seek refinancing

15  whenever the payments became too great.

16    54.    To add to these loan origination misrepresentations, Defendant Wells Fargo,

17  Wachovia, World Savings severely misrepresented themselves when it comes to Plaintiff's loan

18  modification efforts. Wells Fargo, Wachovia, World Savings continuously, through their agents,

19  told Plaintiff that her default was needed, indeed required, in order for her to begin modification

20  efforts. Further to add to the malicious acts, Wells Fargo, Wachovia, World Savings continued to

21  represent to Plaintiff that without the default, she could not begin to apply for a loan modification.

22  This is a blatant misrepresentation and was made in the hopes that Plaintiff would continue to

23  modify her property's loan with Wells Fargo, Wachovia, World Savings. Therefore, Defendant

24  Wells Fargo, Wachovia, World Savings has violated their duty to Plaintiff.

25    55.    Further, Defendant Wells Fargo, Wachovia, World Savings had a duty to act as any

26  reasonable agent would to Plaintiff's benefit and not detriment. Wells Fargo, Wachovia, World

27  Savings had extended themselves to Plaintiff through this loan modification scheme and since

- 13 -

1   Plaintiff was a long time consumer of Wells Fargo, Wachovia, World Savings's loans, Plaintiff felt

2   safe with Wells Fargo, Wachovia, World Savings because of her prior contacts.  Wells Fargo,

3   Wachovia, World Savings have the duty not to lie to their borrowers and make blatant

4   misrepresentations.  In the least, Wells Fargo, Wachovia, World Savings have the duty to

5   reasonably oversee their agents and not allow such blatant misrepresentations to occur.

6        56.    As a proximate result of the negligence of Defendants, Plaintiff was rendered

7   chronically depressed and experienced great anxiety and sleeplessness, as well as great disturbance,

8   shock and injury to her nervous system, all of which caused and continues to cause her great,

9   physical and mental pain and suffering all to her general damage in amount to conform to proof at

10  the time of trial.

11       WHEREFORE, Plaintiff prays for judgment as set forth below.

12                      **FIFTH CAUSE OF ACTION**
13                     (Quiet Title to Real Property)
                        AGAINST ALL DEFENDANTS

14       57.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through

15  56, inclusive, as if fully set forth herein.

16       58.    The purpose of quiet title is to establish title against adverse claims to real property

17  or any interest in the Real Property (*Code of Civil Procedure of California 760.020*).

18       59.    Plaintiff is the owner of the subject property and is seeking to quiet title against the

19  claims of Defendants as follows:  Defendants are seeking to hold themselves out as the holders in

20  due course of Plaintiff's mortgage, when in fact they do not have the original note signed in ink by

21  Plaintiff, the assignment of such purported promissory note, nor can they prove they are holders in

22  due course of the Note and Deeds of Trust.

23       60.    Also, the Promissory Note is not in default because the agreed upon portion of the

24  monthly mortgage payments have been paid by insurance which was put in place as a result of the

25  securitization process.  Therefore, there is no holder in due course that can claim the mortgage is in

26  default.

27

- 14 -

1       61.    Plaintiff seeks a judicial declaration of title, that title to the subject property be

2  vested in the Plaintiff alone, and that the Defendants declared to have no equitable interest, rights,

3  or title in the subject property and that each of them be forever enjoining from asserting any estate,

4  title, or interest in the subject property adverse to Plaintiff herein.

5       **Unclear Chain of Title**

6       62.    In order to demonstrate that the Defendants are the real and beneficial parties of

7  interest, and therefore having the authority to foreclose or enforce the Promissory note, there must

8  be a clear and unbroken chain of title for both the Deed of Trust and the Promissory Note. Since the

9  assignment of the promissory note would have carried the deed of trust's power of sale clause with

10  it, all Defendants needed to provide is the promissory note and its assignment. Instead, Defendants

11  are unable to come up with this, and have tried to make up the chain of title with an assignment of

12  the mortgage instead. The assignment of mortgage without transferring the promissory note is

13  ineffective. Therefore, without an assignment of the promissory note, Defendants do not have the

14  necessary chain of title to effectuate the power of sale clause contained in Plaintiff's deed of trust

15  signed in March of 2004. *Kelley v. Upshaw*, (1952) 246 P2d 23.

16       63.    In a recent ruling in the Massachusetts Supreme Court in *U.S. Bank National*

17  *Association v. Ibanez* (No. SJC-10694. Dated October 7, 2010 – January 7, 2011), attached as it was

18  unanimously ruled as follows:

19         "One of the terms of the power of sale that must be strictly adhered to is the restriction on

20         who is entitled to foreclose. The 'statutory power of sale' can be exercised by 'the
            mortgagee of his executors, administrators, successors or assigns.' G.L. c. 183, § 21.

21         Under G.L. c. 244, § 14, '[t]he mortgagee or person having his estate in the land
            mortgaged, or a person authorized by the power of sale, or the Attorney duly authorized by

22         writing under seal, or the legal guardian or conservator of such mortgagee or person acting
            in the name of such mortgagee or person' is empowered to exercise the statutory power of

23         sale. Any effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a
            foreclosure under these statutes is void. *Chace v. Morse*, 189 Mass. 559, 561 (1905),

24         citing *Moore v. Dick*, supra. See *Davenport v. HSBC Bank USA*, 275 Mich.App. 344, 347-

25         348 (2007) (attempt to foreclose by party that had not yet been assigned mortgage results in
            'structural defect that goes to the very heart of Defendants' ability to foreclose by

26         advertisement,' and renders foreclosure sale void).'"

27       And further:

- 15 -

# EXHIBIT B

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

FEB 15 2013

CLERK OF THE COURT
BY: _____ MARY A. MORAN _____
Deputy Clerk

1  WRIGHT, FINLAY & ZAK, LLP
   T. Robert Finlay, Esq., SBN 167280
2  Nicole K. Neff, Esq., SBN 257964
3  4665 MacArthur Court, Suite 280
   Newport Beach, CA 92660 (Lindberg, Heddi / Declaration of Non-Monetary Status)
4  Tel. (949) 477-5050; Fax (949) 477-9200
   Rfinlay@wrightlegal.net; nneff@wrightlegal.net;
5

6  Attorneys for Defendant,
   REGIONAL TRUSTEE SERVICES CORPORATION
7

8              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                       COUNTY OF SAN FRANCISCO

10  HEDDI LINDBERG,                        )  Case No: CGC 13-528662
                                           )
11                                         )
              Plaintiff,                   )
12                                         )  DECLARATION OF NON-MONETARY
       v.                                  )  STATUS BY DEFENDANT REGIONAL
13                                         )  TRUSTEE SERVICES CORPORATION
    WELLS FARGO BANK, N.A. A/K/A           )
14  WACHOVIA MORTGAGE as successor by      )
    merger with WORLD SAVINGS BANK,        )
15  FSB; REGIONAL TRUSTEE SERVICES         )  [Civil Code 2924l]
    CORPORATION, and DOES 1 through 50,    )
16  inclusive, and all persons unknown, claiming )
17  any legal or equitable right, title, estate, lien, or )
    interest in the property described in the )
18  complaint adverse to Plaintiff's title, or any )
    cloud on Plaintiffs title thereto, named as )
19  DOES 51-100, inclusive,                )
                                           )
20                                         )
              Defendants.                  )
21  _____)

22         I, Deborah Kaufman, do hereby declare and state as follows:

23         1.     I am Vice President for Defendant, Regional Trustee Services Corporation,

24  ("Regional" or "Defendant") in the above-referenced action. I have personal knowledge of

25  the facts set forth herein, and if called upon to do so, I would and could competently testify

26  thereto.

27         2.     On February 8, 2013, Plaintiff, Heddi Lindberg, ("Plaintiff"), filed a

28  Complaint in the Superior Court of California, County of San Francisco, ("Complaint"), for

                                    -1-

                   DECLARATION OF NON-MONETARY STATUS

1  Declaratory Relief; Injunction – Temporary, Preliminary, and Permanent Injunction;
2  Intentional Infliction of Emotional Distress; Negligent Infliction of Emotional Distress; Quiet
3  Title to Real Property; Breach of Implied Covenant of Good Faith and Fair Dealing; Deceit –
4  Promise Made Without Intent to Perform; Deceit – Intentional Misrepresentation; Fraud and
5  Deceit – Suppression of Material Fact; Fraud & Deceit – Negligent Misrepresentation;
6  Promissory Estoppel; Negligence; Elder Abuse; Wrongful Foreclosure; Violation of Business
7  and Professions Code § 17200 et seq.; and Cancellation of Instrument. The Complaint arises
8  out of a loan involving the borrower and the lender. Regional is simply the foreclosure
9  trustee ("Trustee"), with the power to foreclose on the property that arises from the Deed of
10 Trust securing the loan.

11     3.     Based on my review of Plaintiff's Complaint, it is my reasonable belief that
12 Regional has been named in this action solely in its capacity as Trustee, and not arising out of
13 any wrongful acts or omissions on its part in the performance of its duties as Trustee. The
14 basis for my reasonable knowledge or belief set forth above is that Regional has not been
15 involved in any way with the property which is the subject of this lawsuit outside of its
16 capacity as Trustee, has no interest in the property, except to be named as the Trustee under
17 the deed of trust encumbering the property by way of Substitution of Trustee. Attached as
18 Exhibit "A", is a copy of the recorded Substitution of Trustee. The trustee's conduct,
19 including the recording of the substitution of trustee and foreclosure notices, is *privileged*
20 pursuant to *Civil Code* §§47 and 2924(d).

21     4.     I am not aware of any evidence produced to date by Plaintiff or the remaining
22 Defendants, or of any facts, documents, or testimony tending to suggest that Regional
23 engaged in any misconduct in connection with the performance of its duties as Trustee.
24 Pursuant to *Civil Code* section 2924(b), the foreclosure trustee incurs no liability for relying
25 in good faith on information provided by the beneficiary regarding the nature and amount of
26 the default under the secured obligation. The Complaint makes no credible allegations that
27 Regional failed to perform any of its duties as a Trustee, nor have any of the remaining
28 Defendants filed a Cross-Complaint against Regional alleging any defect in the performance

-2-

DECLARATION OF NON-MONETARY STATUS

**Notice of Removal
Exhibit B page 36**

1    of its duties as trustee, either under the Deed of Trust, or the applicable statutes set forth in

2    *Civil Code* Section 2924, et seq.

3        5.    Given the foregoing facts and pursuant to *Civil Code* 2924l, Regional hereby

4    agrees to be bound by whatever non-monetary Order or Judgment this Court issues with

5    regard to the Deed of Trust.

6        I declare under penalty of perjury under the laws of the State of California that the

7    foregoing is true and correct.

8        Executed this 15ᵗʰ day of February, 2013, at Seattle, Washington.

9

10

11                   Deborah Kauffman, Declarant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

DECLARATION OF NON-MONETARY STATUS

# EXHIBIT "A"

Recording Requested By

When recorded, mail to:

**REGIONAL SERVICE CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

120343276

Trustee's Sale No: 05-FWA-122856

THIS IS TO CERTIFY THAT THIS IS A FULL, TRUE AND
CORRECT COPY OF THE ORIGINAL RECORDED
IN THE OFFICE OF SAN FRANCISCO COUNTY

RECORDING FEE:   **$20.00**

RECORDED ON:    **December 14, 2012**

AS DOCUMENT NO: **2012-J563232**

BY:   **s/ PETER SAR**
LSI TITLE COMPANY

## *FWA1228560171000000*

### SUBSTITUTION OF TRUSTEE

**WHEREAS** HEDDI M. LINDBERG, TRUSTEE OF THE HEDDI M. LINDBERG REVOCABLE TRUST, CREATED BY
DECLARATION OF TRUST ON FEBRUARY 20, 2004 was the original Trustor, and GOLDEN WEST SAVINGS
ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION was the original Trustee, and WORLD SAVINGS BANK,
FSB, ITS SUCCESSORS AND/OR ASSIGNEES was the original Beneficiary under that certain Deed of Trust dated
03/07/2007, and recorded on 03/15/2007 in Volume J348 of Official Records, at page 0094, under Instrument No. 2007-
I353091-00, records of SAN FRANCISCO County, CALIFORNIA; and WHEREAS, Wells Fargo Bank, N.A., successor by
merger to Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB, the undersigned, is the present
Beneficiary under said Deed of Trust, and **WHEREAS** the undersigned desires to substitute a new Trustee under said Deed
of Trust in the place and stead of said original Trustee thereunder,

**NOW, THEREFORE,** the undersigned hereby substitutes REGIONAL SERVICE CORPORATION, a California corporation,
whose address is 616 1st Avenue, Suite 500, Seattle, WA 98104, as Successor Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number
includes the plural.

Dated: October 24, 2012

Wells Fargo Bank, N.A.

By   _Monica I Montalvo_
Monica I. Montalvo Rivas – Vice President Loan Documentation

Name: Monica I. Montalvo Rivas
Title: Vice President Loan Documentation
Company: Wells Fargo Bank, N.A.
Date:   10/24/2012

State of Texas
County of Bexar

    This instrument was acknowledged before me on October 24, 2012 by Monica I. Montalvo Rivas, Vice President
Loan Documentation of Wells Fargo Bank, N.A., a federally chartered bank, on behalf of said bank.

_Christy Jenkins_
Notary Public

```
CHRISTY JENKINS
Notary Public, State of Texas
My Commission Expires
June 17, 2013
```

1                              CA Sub

**Notice of Removal**
**Exhibit B page 39**

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104
Phone: (206) 340-2550 / Fax:

*Trustee Sale No.: 05-FWA-122856*



**AFFIDAVIT OF MAILING
SUB-BY-CODE**

STATE OF WA      )
                        ) ss.
COUNTY OF KING        )

I SAPHRONIA HENDRICK , being first duly sworn, state that I am now, and at all times herein mentioned was a citizen of the United States a resident of the State of Washington, and over the age of eighteen years, and my business address is Regional Trustee Services, 616 1st Avenue, Suite 500, Seattle, WA 98104. On 12 11 2012 , a copy of the attached Substitution of Trustee was mailed, prior to the recording thereof, in the manner provided in Section 2924b of the Civil Code of the State of California, to the trustee of record under the Deed of Trust described in said Substitution and to all persons whom a copy of the Notice of Default would be required to be mailed by the provisions of such section.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 12 11 2012

CA_SubByCodeAff

1  **PROOF OF SERVICE**

2     I, Tina Flores, declare as follows:

3     I am employed in the County of Orange, State of California.  I am over the age of eighteen (18)
and not a party to the within action.  My business address is 4665 MacArthur Court, Suite 280, Newport
4  Beach, California 92660.  I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for
collection and processing of correspondence for mailing with the United States Postal Service.  Such
5  correspondence is deposited with the United States Postal Service the same day in the ordinary course of
6  business. I am aware that on motion of party served, service is presumed invalid if postal cancellation
date or postage meter date is more than one day after date of deposit for mailing in affidavit.

7     On February 15, 2013, I served the within **DECLARATION OF NON-MONETARY STATUS**
8  **BY DEFENDANT REGIONAL TRUSTEE SERVICES CORPORATION** on all interested parties in
this action as follows:

9
[ ]    by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as
10         follows:

11     Vernon L. Bradley
Law Offices of Vernon L. Bradley
12     54 Liberty Dock
Sausalito, CA 94965
13     Tel:  (415) 331-4441
Attorney for Heddi Lindberg, Plaintiff
14

15
[X]    (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date
16         following ordinary business practices.

17  [ ]    (BY CERTIFIED MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this
date following ordinary business practices, via Certified Mail, Return Receipt Requested.
18
[ ]    (BY PERSONAL SERVICE) I caused personal delivery by ATTORNEY SERVICE of said
19         document(s) to the offices of the addressee(s) as set forth on the attached service list.

20  [ ]    (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 477-9200, complied
with California Rules of Court, Rule 2003, and no error was reported by the machine.  Pursuant to
21         California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of
22         the transmission, a copy of which is attached to the original Proof of Service.

23  [ ]    (BY NORCO OVERNITE - NEXT DAY DELIVERY) I placed true and correct copies thereof
enclosed in a package designated by Norco Overnite with the delivery fees provided for.

24  [ ]    (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of
25         the addressee(s) listed by electronic mail at the e-mail address(es) set forth above pursuant to
Fed.R.Civ.P.5(b)(2)(E). "A Notice of Electronic Filing (NEF) is generated automatically by the
26         ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail
address of record in the case, shall constitute the proof of service as required by
27         Fed.R.Civ.P.5(b)(2)(E).  A copy of the NEF shall be attached to any document served in the
traditional manner upon any party appearing pro se."
28

1
**PROOF OF SERVICE**

[X]  (State) I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.

[ ]  (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 15, 2013, at Newport Beach, California.

Tina Flores

2
**PROOF OF SERVICE**

**Notice of Removal
Exhibit B page 42**

**F I L E D**

Superior Court of California
County of San Francisco

FEB 1 1 2013

CLERK OF THE COURT

BY: _____
Deputy Clerk

1 │ VERNON L. BRADLEY (SBN 49294)
  │ LAW OFFICES OF VERNON L. BRADLEY
2 │ Waldo Point Harbor
  │ 54 Liberty Dock
3 │ Sausalito, California 94965-3106

4 │ Telephone:    (415) 331-4441
  │ Facsimile:    (415) 331-4443

5 │ Attorney for Plaintiff
  │ HEDDI LINDBERG
6 │

7 │           SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 │              IN AND FOR THE COUNTY OF SAN FRANCISCO

9 │                        Unlimited Civil Case

10│

11│ HEDDI LINDBERG,                    Case No.: CGC 13-528662

12│        Plaintiff,                  **ORDER TO SHOW CAUSE RE:**
                                       **PRELIMINARY INJUNCTION AND**
13│ v.                                 **TEMPORARY RESTRAINING ORDER**

14│ WELLS FARGO BANK, N.A. A/K/A
   │ WACHOVIA MORTGAGE as successor by
15│ merger with WORLD SAVINGS BANK,
   │ FSB; REGIONAL TRUSTEE SERVICES
16│ CORPORATION, and DOES 1 through 50,
   │ inclusive, and all persons unknown, claiming
17│ any legal or equitable right, title, estate, lien,
   │ or interest in the property described in the
18│ complaint adverse to Plaintiff's title, or any
   │ cloud on Plaintiff's title thereto, named as
19│ DOES 51-100, inclusive,

20│        Defendant.

21│

22│         On reading the verified Complaint of Plaintiff on file in the above-entitled action and the Ex

23│ Parte Application and the Declarations and the Memorandum of Points and Authorities submitted

24│ therewith, it appears to the satisfaction of the Court that this is a proper case for granting an order

25│ to Show Cause for a Preliminary Injunction and a Temporary Restraining Order, and that, unless

26│

27│                                    - 1 -

OSC, Temporary Restraining Order, Prelim In Junction
*Lindberg v. Wells Fargo, et. al.*

1  the Temporary Restraining Order prayed for be granted, great or irreparable injury will result to

2  Plaintiff before the matter can be heard on notice.

3      IT IS ORDERED that the above-named Defendants, and each of them, appear in

4  Courtroom ___50/ at 9 30  on February 27, 2013___, or as soon thereafter as the matter may be heard, then and
                     a.m

5  there to show cause, if any they have, why they and their agents, servants, employees, and

6  representative, and all persons acting in concert or participating with them, should not be enjoined

7  and restrained during the pendency of this action from engaging in, noticing, committing, or

8  performing, directly or indirectly, any and all of the following acts:

9      Performing, conducting, making forward progress toward a Trustee's Sale on the property

10 located at 3 Summit Street, San Francisco, California 94112.

11     IT IS FURTHER ORDERED that the above-named Defendants, and each of them, appear

12 at the same time and place and show cause, if any they have, why they should not be commanded

13 by order of this Court and be required during the pendency of this action to:

14     Refrain from conducting a Trustee's sale on the property located at 3 Summit Street, San

15 Francisco, California 94112.

16     IT IS FURTHER ORDERED that:
                                        Ex-Parte TRO, Complaint & PI support pap.
17a.    a. Plaintiff shall serve this Order to Show Cause on Defendants in the following time and

18 manner:

19     By personal service on the agents(s) for the service of process by ___2/12/2013___,

20 2013.

21     b. Proof of service must be delivered to the Court hearing the OSC on:

22     ___2/19/2013___, 2013.

23     IT IS FURTHER ORDERED that, pending the hearing and determination of the Order to

24 Show Cause, the above-named Defendants, and each of them, and their officers, agents,

25 employees, representatives, and all persons acting in concert or participating with them, are

26

27                                    - 2 -

OSC, Temporary Restraining Order, Prelim In Junction
Lindberg v. Wells Fargo, et. al.

1  restrained and enjoined from engaging in or performing, directly or indirectly, any and all of the

2  following acts:

3      Performing a Trustee's Sale on the property located at 3 Summit Street, San Francisco,

4  California 94112.

5      IT IS FURTHER ORDERED that copies of the Complaint, the Ex Parte Application and

6  Declarations and Memorandum of Points and Authorities in support thereof, and this Order to Show

7  Cause and Temporary Restraining Order be served on Defendants no later than _2/12/2013_

8  2013.

9      IT IS SO ORDERED.

10  DATED:      February 11, 2013

11                                        Honorable Ronald Quidachay
12                                        Judge of the Superior Court

13
14  * Defendant's opposition shall be filed and served
15    no later than February 21, 2013. Reply shall
16    be filed and served no later than February 25, 2013

17  * Plaintiff shall post $ 2,328 no later than
18    February 15, 2013.

19
20  FEB 11 2013                          Judge of the Superior Court

21

22

23

24

25

26

27
                                    - 3 -

OSC, Temporary Restraining Order, Prelim In Junction
Lindberg v. Wells Fargo, et. al.

1  VERNON L. BRADLEY (SBN 49294)
   LAW OFFICES OF VERNON L. BRADLEY
2  Waldo Point Harbor
   54 Liberty Dock
3  Sausalito, California 94965-3106

4  Telephone:    (415) 331-4441
   Facsimile:    (415) 331-4443

5  Attorney for Plaintiff
   HEDDI LINDBERG
6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8              IN AND FOR THE COUNTY OF SAN FRANCISCO

9                        Unlimited Jurisdiction

10 HEDDI LINDBERG,                         Case No.: CGC 13-528662

11        Plaintiff.                       MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF
12 v.                                      EX PARTE APPLICATION FOR
                                           TEMPORARY RESTRAINING ORDER
13 WELLS FARGO BANK, N.A. A/K/A            AND ORDER TO SHOW CAUSE AND
   WACHOVIA MORTGAGE as successor by       PRELIMINARY INJUNCTION
14 merger with WORLD SAVINGS BANK,
   FSB; REGIONAL TRUSTEE SERVICES
15 CORPORATION, and DOES 1 through 50,
   inclusive, and all persons unknown, claiming
16 any legal or equitable right, title, estate, lien,
   or interest in the property described in the
17 complaint adverse to Plaintiff's title, or any
   cloud on Plaintiff's title thereto, named as
18 DOES 51-100, inclusive,

19        Defendant.





       Wells Fargo, et. al. through its foreclosure agent Regional Trustee Services Corporation, has

22 set a Trustee's Sale for the property located at 3 Summit Street, San Francisco, California 94112,for

23 February 13, 2013. Plaintiff is the owner and title holder of the property. Plaintiff has filed suit for

24 declaratory and injunctive relief related to the respective rights and duties of the Plaintiff and

25 Defendants concerning the Defendants' standing to even conduct a non-judicial foreclosure on

26 Plaintiff's property.

27

- -                              - 1 -

MPA Ex Parte Application for TRO, OSC
Lindberg v. Wells Fargo, et. al

Notice of Removal
Exhibit B page 46

1    STATEMENT OF LAW

2    CCP § 526(a) provides, in pertinent part, that:

3    An injunction may be granted in the following cases:
4        (1) When it appears by the complaint that the plaintiff is entitled to the relief demanded,
     and the relief, or any part thereof, consists in restraining the commission or continuance of
5    the act complained of, either for a limited period or perpetually.
         (2) When it appears by the complaint or affidavits that the commission or continuance of
6    some act during the litigation would produce waste, or great or irreparable injury, to a party
     to the action.
7        (3) When it appears, during the litigation, that a party to the action is doing, or threatens,
     or is about to do, or is procuring or suffering to be done, some act in violation of the rights
8    of another party to the action respecting the subject of the action, and tending to render the
     judgment ineffectual.
9        (4) When pecuniary compensation would not afford adequate relief.
         (5) Where it would be extremely difficult to ascertain the amount of compensation which
10   would afford adequate relief.

11

12   **ARGUMENT**

     Plaintiff is entitled to the relief demanded in her Complaint and the relief consists in
13
     restraining the foreclosure sale of Plaintiff's house. The Plaintiff's actions for Declaratory and
14
     Injunctive Relief are based upon the claim that the Defendant does not have standing to foreclose
15
     because they are not the holders in due course of Plaintiff's note and deed and trust and Plaintiff is
16
     not in default. Further, Plaintiff's Deed of Trust that was originally signed with Defendant World
17
     Savings is no longer the same loan in which Wells Fargo is now foreclosing on. Defendant Wells
18
     Fargo does not own the loan that they are suing on and Plaintiff is being defrauded out of her house
19
     and home in which she lives in and has been living in far since before this toxic loan was forced
20
     upon her. Plaintiff also has causes of action for a Promise Made Without Intent to Perform, Fraud
21
     and Deceit for negligent misrepresentation, intentional misrepresentation, suppression of material
22
     fact together with Violations of the Business and Professions Code §17200, promissory estoppel,
23
     and both negligent and intentional infliction of emotional distress, negligence, and cancellation of
24
     instruments, as well as quiet title in order to stop and reverse the damage Defendant Wells Fargo
25
     and their agents have done to Plaintiff's title. The foreclosure sale would produce waste as well as
26
     great and irreparable injury to the Plaintiff as she will lose her right to cure the default and she
27
     would lose all the equity she invested into the property. In addition the property might be sold to a

- 2 -

MPA Ex Parte Application for TRO, OSC
*Lindberg v. Wells Fargo, et. al.*

third-party bona fide purchaser, cutting off viable defenses to her claims that this Note and Deed of Trust are not in default and that Defendants do not have standing to foreclose.

Unless restrained, Defendants' foreclosure would tend to render the judgment ineffectual, specifically if the foreclosure sale were to go forward, her cause of action for injunctive relief would be rendered moot and her cause of action for declaratory relief would be very much put in jeopardy. Pecuniary compensation cannot afford adequate relief, because this real property is unique, and it would be extremely difficult to outline the abuse the Defendants committed against Plaintiff or to ascertain the amount of compensation which would afford adequate relief because of fluctuating market values. Great and/or irreparable injury will result to plaintiff before the matter can be heard on notice, as the foreclosure sale is set for November 23, 2011.

Plaintiff's loan was sold by her original lender, World Savings, to Wall Street investors. In the process of what is known as "securitization," the Wall Street firms took bundles of mortgages, usually of 2,000 to 5,000 notes and deeds of trust and transferred them to what is known as a "Pooling and Servicing Agreement" or PSA. This PSA was written to confirm to the IRS Code Section 860 for the transfer of asset to a PSA that the IRS Code required the PSA transfer of all the assets out of the PSA within three (3) months or be subject to paying taxes on the asset. What happened was the PSA took in the assets but did not transfer the assets to the investors. The investors paid in money for the notes and mortgage, but what the investors got was a contract right for cash flow. The PSA then transferred the note and deed of trust to a custodial trust. The Pooling and Servicing Agreements are registered with the Security and Exchange Commission (SEC) and a copy can be obtained from the internet. A typical PSA agreement advises investors what they are getting for their money.

"Your certificates represent interest only in asset of the issuing entity. All payment to you will come only from amounts received in connection with these assets. The trust owns a pool of mortgage loans and other assets described as 'Trust A' in this property supplement."

What the investor got was a contract right for a cash flow, not the instruments evidencing the note and deed of trust. The PSA by its own agreement and IRA regulations had to rid itself of the assets, the notes and deeds of trust, to maintain its tax free status. By statute and agreement the

- 3 -

Notice of Removal
Exhibit B page 48

1 PSA could not own the assets and investors who never got the assets to make them the necessary
2 holders of the notes and deeds of trust. There is nowhere to be found the necessary holder in due
3 course to bring the foreclosure action as required by Commercial Code §3302 and Civil Code
4 §3306. What makes the situation even worse for the Defendants is the sellers of the securities
5 inserted a guarantee of payment to the investor that would pay if the homeowner did not pay their
6 monthly mortgage Hedge funds, and insurance companies were hired and paid premiums so that the
7 contract amount would be paid to the investor no matter what. The Defendants cannot say there is a
8 holder in due course on this note and deed of trust who is in default, because if you could
9 characterize the investors as a holder in due course they are not in default. This legal theory in
10 principal has been adapted by a number of Courts around the country coming to the conclusion that
11 defects in the foreclosure documents will deny the right to foreclose. *U.S. Bank National*
12 *Association v. Ibanez* (No.SJC 1096 Dated October 7, 2010-January 2011, *Bank of New York v.*
13 *Stephen Silverberg* case.

14     Further, Defendants have fraudulently recorded documents on Plaintiff's chain of title
15 without the authority to do so. Even without taking into account the fraudulent signatures, just from
16 the dates of the documents as executed, Regional Trustee Services Corporation did not have
17 authority to file a notice of default of October 22, 2010 or the Trustee Sale Notice of January 10,
18 2013. Moreover, Plaintiff is currently in a loan modification review. Pursuant to the new
19 Homeowner's Bill of Rights effective January 1, 2013, Defendants cannot foreclose on the property
20 until the completion of the loan modification review process. Dual tracking is now outlawed in the
21 State of California. SB 900, Section 14 which amends Civil Code §2924.11 and takes effect on
22 January 1, 2013. The statute provides in pertinent part:

23     (a) If a foreclosure prevention alternative is approved in writing prior to the recordation of a
24 notice of default, a mortgage servicers, mortgagee, trustee, beneficiary, or authorized
agent shall not record a notice of default under either of the following circumstances:
25
26       (1) The borrower is in compliance with the terms of a written trial or permanent loan
modification, forbearance, or repayment plan.
27

- 4 -

(2) A foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

Defendants are in violation of the Homeowner's Bill of Rights which requires that mortgage services (such as Wells Fargo) be restricted from advancing the foreclosure process if the homeowner is working on securing a loan modification. When a homeowner submits an application for a loan modification the foreclosure process is stayed pending the completed application has been fully reviewed. Plaintiff has submitted a loan application which is still currently under review.

While at the same time, Plaintiff was complying with every request for documents, the Defendants were continuing on their outlawed dual track approach of continuing the foreclosure process while asking Plaintiff to submit documents so that she could obtain a loan modification.

On Friday evening, February 1, 2013, Plaintiff received a letter from Patrick Finnegan of Wells Fargo by overnight mail requesting Plaintiff to produce additional information and substantial documents (many of which she had previous provided to Wells Fargo). The letter informed Plaintiff that she must have all of the information and documents to Wells Fargo within no later than Monday, February 4, 2013. On February 4, 2013, Plaintiff, along with assistance from Todd Cunningham of Home Loan Information Center, contacted Finnegan by phone to discuss the details of the January 31, 2013 letter. Mr. Finnegan at first refused to discuss the loan modification because he did not have an authorization from Mr. Cunningham. After Mr. Cunningham confirmed that he had sent in over 5 authorizations, Mr. Finnegan told Plaintiff that she would need to get the information and documents requested by the end of the day.

Plaintiff is informed and believes that Defendants were hoping that Plaintiff would not be vigilant with her foreclosure, therefore rendering moot her application for modification of the loan. Defendant Wells Fargo never intended to modify her loan and continued to pursue the foreclosure against her house and the prepaid loan modification on a dual track. Plaintiff has been continuously in contact with bank for the last year trying to modify her loan to prevent her from being put into foreclosure. Plaintiff has spoken to several different "relationship managers," filed with Bank on several different occasions paperwork which was "required" but was not required on the call before.

- 5 -

MPA Ex Parte Application for TRO, OSC
*Lindberg v. Wells Fargo, et. al.*

1   On nearly every call to the bank, Plaintiff has heard from multiple agents, "you need additional

2   documents," or "you need to fill out 'this blank' in the original document, and you need to send us

3   the whole package again." Plaintiff has re-applied many separate times and has been, for the last

4   year since April of 2012, strung along so that Defendant could simply take Plaintiff's home.

5        There will be great, irreparably harm to Plaintiff without a temporary restraining order and

6   little or no damage to Defendants.

<div align="center"><strong>CONCLUSION</strong></div>

7

8        For the foregoing reasons, Plaintiff respectfully requests that the Court grant (1) a

9   Temporary Restraining Order restraining Defendants Wells Fargo, et. al. and their agents, servants,

10   and employees, from conducting a foreclosure sale on the property located at 3 Summit Street, San

11   Francisco, California 94112; and (2) an Order to Show Cause why a preliminary injunction should

12   not be granted enjoining Defendants Wells Fargo, et. al., together with their agents, servants, and

    employees from performing the above described acts during the pendency of this action.

13

14   DATED:     February 10, 2013         Respectfully Submitted.

15

16                               Vernon L. Bradley,

                                  Attorney for Plaintiff.

17

18

19

20

21

22

23

24

25

26

27

- 6 -

MPA Ex Parte Application for TRO, OSC
*Lindberg v. Wells Fargo, et. al.*

1   VERNON L. BRADLEY (SBN 49294)
    LAW OFFICES OF VERNON L. BRADLEY
2   Waldo Point Harbor
    54 Liberty Dock
3   Sausalito, California 94965-3106

4   Telephone:      (415) 331-4441
    Facsimile:      (415) 331-4443

5   Attorney for Plaintiff,
    HEDDI LINDBERG
6

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA

8             IN AND FOR THE COUNTY OF SAN FRANCISCO

9                    Unlimited Jurisdiction

10  HEDDI LINDBERG,                    Case No.:   CGC 13-528662
11
         Plaintiff.
12                                     VERNON L. BRADLEY'S CERTIFICATION
    v.                                 OF NOTIFICATION TO DEFENDANTS OF
13                                     HEARING TIME FOR TEMPORARY
    WELLS FARGO BANK, N.A. A/K/A       RESTRAINING ORDER
14  WACHOVIA MORTGAGE as successor
    by merger with WORLD SAVINGS
15  BANK, FSB; REGIONAL TRUSTEE
    SERVICES CORPORATION, and DOES
16  1 through 50, inclusive, and
    all persons unknown, claiming
17  any legal or equitable right,
    title, estate, lien, or
18  interest in the property
    described in the complaint
19  adverse to Plaintiff's title,
    or any cloud on Plaintiff's
20  title thereto, named as DOES
    51-100, inclusive,
21
         Defendant.
22

23

24       I, Vernon L. Bradley, declare:

25

26

27

                              - 1 -

    Declaration of Vernon L. Bradley, Certificate of Notice
    *Lindberg v. Wells Fargo Bank, et. al.*

1.   I am an attorney at law duly admitted to practice before all the courts of the State of California and am the attorney of record for the Plaintiff in the above-described action.

2.   On February 8, 2013 at approximately 5:05 p.m., I caused to be noticed through my office Regional Trustee Services Corporatino by faxing them the attached Notice of Intent to Appear at the fax number 1-206-292-4930. Thereafter, I faxed to said number the notice required. Confirmation attached as Exhibit A.

3.   At approximately 5:10 p.m., I contacted, through my office, Wells Fargo, and received a fax number of 1-866-278-1179. Thereafter, I faxed to said number the notice required. Confirmation attached as Exhibit B.

I declare the foregoing to be true and correct and so declare under penalty of perjury under the laws of the State of California.

Executed this 10th day of February 2013 at Sausalito, California.

_____
Vernon L. Bradley

- 2 -

Declaration of Vernon L. Bradley, Certificate of Notice
*Lindberg v. Wells Fargo Bank, et. al.*

VERNON L. BRADLEY (SBN 49294)
LAW OFFICES OF VERNON L. BRADLEY
Waldo Point Harbor
54 Liberty Dock
Sausalito, California 94965-3106

Telephone:    (415) 331-4441
Facsimile:    (415) 331-4443

Attorney for
HEDDI LINDBERG

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

Unlimited Civil Case

| | |
|---|---|
| HEDDI LINDBERG,<br><br>Plaintiff.<br><br>v.<br><br>WELLS FARGO BANK, N.A. A/K/A WACHOVIA MORTGAGE as successor by merger with WORLD SAVINGS BANK, FSB; REGIONAL TRUSTEE SERVICES CORPORATION, and DOES 1 through 50, inclusive, and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title, or any cloud on Plaintiff's title thereto, named as DOES 51-100, inclusive,<br><br>Defendant. | Case No.: CGC 13-528662<br><br>**DECLARATION OF HEDDI LINDBERG IN SUPPORT OF PLAINTIFF'S EX PARTE TEMPORARY RESTRAINING ORDER** |

I, HEDDI LINDBERG, can, if called upon, competently and truthfully testify and I declare the following:

- 1 -

1. I am the owner of the subject property located at 3 Summit Street, San Francisco, California 94112. I have spent my whole life's savings on this home, have been living in it for the over the last 20 yrs and have been improving it. I love my home very much and have a unique liking to our home. I enjoy the way my home sits in my neighborhood, and how the sun hits it as the day goes on. I love my neighborhood and my neighbors. I would never wish to trade or sell my home. I never would have thought that trying to obtain a loan modification would cause me to go into foreclosure and default which caused my credit to plummet.

2. I am on a fixed income, and I do not have any other way of living other than to use credit for the part of the month that I have no cash. Now, I have to live off only cash, and it has caused me severe hardship that I would never have gotten into if World Savings properly reviewed my file instead of just turning a blind eye.

3. I also began my loan modification with Wells Fargo (who is not the lender of my loan) in April 2012. I have verified my complaint, and I agree with the allegations therein. I was certainly strung along for the last year. I feel like every time I called, I was shifted to a different person for the purpose of confusing me. They kept asking for documents, this document, that document, Wells Fargo continued to push me into a corner and continued to prod me after.

4. I was told constantly to that if I want a loan modification, the only way to obtain review of a loan modification was to go into default for 90 days. I did so, and almost immediately, Defendant Wells Fargo filed their notice of default. I was outraged, and I asked what Wells Fargo was doing. Defendant reassured and convinced me that the default was not of importance and that there would be no foreclosure so long as I worked with Wells Fargo toward a loan modification. I did so, I contacted Wells Fargo, I sent them documents. I sent them the same documents. Then I would send them additional documents and the same documents and over and over and over again I would have to send them documents that I know I have sent before. Wells Fargo claimed to have lost my documents, thereby requiring me to send them again and again.

- 2 -

5. I also tried to call, as much as I could, to ascertain whether defendant Wells Fargo had finished reviewing my loan, after at least 15 minutes of waiting on hold or trying to get to the loan agent that had previously helped me, someone else would help me and instead of giving me a solid answer of whether the modification was rejected or not, they would almost invariably tell me that my loan modification was under review.

6. I was under the impression that I was still in review when I received Defendant's Notice of Trustee's Sale. At that point I thought to myself, "how could this be?" Wells Fargo had told me to go into default, they had told me that I would not be foreclosed on if we modified. We were modifying my loan, Wells Fargo were the ones that were taking such a long time to get me my answer, and I was in the modification process. I was shocked, outraged, and hurt. I felt violated because Wells Fargo reassured me and convinced me that I would not have to go through foreclosure if I submitted my paperwork to Wells Fargo and continued to work with Wells Fargo on a loan modification.

7. I have followed every bit of Wells Fargo's instructions. I have been put in these foreclosure proceedings unlawfully. I have also learned from my attorney that this type of conduct is called "dual tracking." Such conduct has been outlawed by the Comptroller of the Currency, a U.S. Treasury Division. John Welsh, together with The Office of Thrift Supervision, the Federal Reserve and the Federal Deposit Insurance Corp., attached to my Complaint as "Exhibit C," have declared:

"Going forward, banks may no longer simultaneously proceed with both loan modifications and foreclosures. That 'dual track' process resulted in many cases where homeowners who were making trial loan modification payments suddenly has their homes repossessed. Banks must establish a single point of contact-either one person or a team-for homeowners seeking assistance. Many struggling homeowners say they had Kafkaesque experiences over and over again, each time explaining their situation from scratch to a new bank representative. Banks must also develop plans for staffing, training and over-sight of outside firms. Banks' plans for correcting foreclosure problems will be supervised by bank regulators."

8. Dual tracking is now outlawed in the State of California. SB 900, Section 14 which amends Civil Code §2924.11 and takes effect on January 1, 2013. The statute provides in pertinent part;

- 3 -

(a) If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicers, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

While at the same time, I was complying with every request for documents, the Defendants were continuing on their outlawed dual track approach of continuing the foreclosure process while asking Plaintiff to submit documents so that she could obtain a loan modification.

9. On Friday evening, February 1, 2013, I received a letter from Patrick Finnegan of Wells Fargo by overnight mail requesting me to produce additional information and substantial documents (many of which she had previous provided to Wells Fargo). The letter informed me that I must have all of the information and documents to Wells Fargo within no later than Monday, February 4, 2013. On February 4, 2013, I, along with assistance from Todd Cunningham of Home Loan Information Center, contacted Finnegan by phone to discuss the details of the January 31, 2013 letter. Mr. Finnegan at first refused to discuss the loan modification because he did not have an authorization from Mr. Cunningham. After Mr. Cunningham confirmed that he had sent in over 5 authorizations, Mr. Finnegan told me that I would need to get the information and documents requested by the end of the day.

10. Also, the attorneys I have hired have examined the documentation in my case, and have informed me that Wells Fargo, et. al. are trying to foreclose with a non-judicial sale even though they do not have proper legal title to do so. They have either "securitized" my loan or they have failed at their securitization, in either way they no longer are the holder in due course. I found that in order to foreclose, they must be the holder in due course and must have the original note and deed of trust, or at least have a chain of title purporting that they have control of these instruments. They have converted my note and deed of trust into something completely different than what I originally signed. Furthermore, they have not

- 4 -

**Notice of Removal
Exhibit B page 57**

1    complied with foreclosure requirements of California Civil Code §2923.5, §2924, §2932.5

2    and cannot claim that my mortgage payments are in default since they are not themselves the

3    owners, nor are they willing to point to a specific beneficiary of my loan.

4    11. The argument for this is laid out in substantial detail in the Memorandum of Points &

5    Authorities in Support of Order to Show Cause Re Preliminary Injunction and Temporary

6    Restraining Order and in the Complaint, attached as Exhibit A to the Memo of Points and

7    Authorities and on file herein. I request that the Court issue a temporary restraining Order in

8    order to Show Cause so that I may have the opportunity to prove my case that Wells Fargo

9    does not have standing to foreclose nor do its agents.

10   12. I started this whole process with Wells Fargo with a very good credit score. I am very

11   careful about paying my bills on time and in full. My credit is now destroyed due to Wells

12   Fargo's representations and recordings on my title. I had been told so many times that these

13   were simple legal processes and would not affect me. This is outrageous that Wells Fargo

14   can be allowed to lie like this to me, and I have heard, from my attorney, that my experience

15   is very similar to several cases he has, and this incident is not a onetime occurrence. I

16   believe Wells Fargo does this "dual tracking" with everyone, and we, as a public should not

17   be forced to endure such lies and deceit.

18   I declare the foregoing to be true and correct and so declare under penalty of perjury under the
     laws of the State of California.

19   Executed this 10th Day of February, in San Francisco, California.

20

21

22   Heddi Lindberg

23

24

25

26

27

- 5 -

**Notice of Removal**
**Exhibit B page 58**

1 | the Temporary Restraining Order prayed for be granted, great or irreparable injury will result to

2 | Plaintiff before the matter can be heard on notice.

3 |     IT IS ORDERED that the above-named Defendants, and each of them, appear in

4 | Courtroom _____*501 at 9³⁰ a.m*_ on February 27, 2013 ., or as soon thereafter as the matter may be heard, then and

5 | there to show cause, if any they have, why they and their agents, servants, employees, and

6 | representative, and all persons acting in concert or participating with them, should not be enjoined

7 | and restrained during the pendency of this action from engaging in, noticing, committing, or

8 | performing, directly or indirectly, any and all of the following acts:

9 |     Performing, conducting, making forward progress toward a Trustee's Sale on the property

10 | located at 3 Summit Street, San Francisco, California 94112.

11 |     IT IS FURTHER ORDERED that the above-named Defendants, and each of them, appear

12 | at the same time and place and show cause, if any they have, why they should not be commanded

13 | by order of this Court and be required during the pendency of this action to:

14 |     Refrain from conducting a Trustee's sale on the property located at 3 Summit Street, San

15 | Francisco, California 94112.

16 |     IT IS FURTHER ORDERED that:

17. |     a. Plaintiff shall serve this Order to Show Cause *Ex-Parte TRO, Complaint, PI, supporting papers* on Defendants in the following time and

18 | manner:

19 |     By personal service on the agents(s) for the service of process by _____*2/12/2013*_____ ,

20 | 2013.

21 |     b. Proof of service must be delivered to the Court hearing the OSC on:

22 |     _____*2/19/2013*_____ , 2013.

23 |     IT IS FURTHER ORDERED that, pending the hearing and determination of the Order to

24 | Show Cause, the above-named Defendants, and each of them, and their officers, agents,

25 | employees, representatives, and all persons acting in concert or participating with them, are

26 |

27 |                          - 2 -

OSC, Temporary Restraining Order, Prelim In Junction
*Lindberg v. Wells Fargo, et. al.*

**Notice of Removal
Exhibit B page 59**



## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

# Document Scanning Lead Sheet

Feb-11-2013 1:55 pm

Case Number: CGC-13-528662

Filing Date: Feb-11-2013 1:54

Filed by: MARSHA SMITH

Juke Box: 001    Image: 03939971

ORDER

HEDDI LINDBERG VS. WELLS FARGO BANK N.A. AKA WACHOVIA MORTGAGE et al

001C03939971

**Instructions:**
Please place this sheet on top of the document to be scanned.

# Notice of Removal
# Exhibit B page 60

EXHIBIT C



**Office of Thrift Supervision** .                                      · *Nicholas J. Dyer*
Department of the Treasury                          · *Assistant Regional Director* ·

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007 ·

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NCO630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

<div align="center">

Re:  World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws     ,

</div>

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office. ·

Please feel free to contact me at (650) 746-7025 if there are any questions. ·

<div align="center">

Sincerely,

*Nicholas J. Dy—*

Nicholas J. Dyer
Assistant Regional Director

</div>

cc:  Robert Burns, FDIC - Atlanta

EXHIBIT D



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:   Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
      bank and application to merge the converted bank with and into Wells Fargo Bank,
      National Association, Sioux Falls, South Dakota
      Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

Stephen A. Lybarger
Large Bank Licensing Lead Expert

# EXHIBIT E



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFIED ARTICLES OF ASSOCIATION

I, John Walsh, Acting Comptroller of the Currency, do hereby certify that the document hereto attached is a true and correct copy, as recorded in the Office of the Comptroller of the Currency, of the currently effective Articles of Association for "Wells Fargo Bank, National Association," Sioux Falls, South Dakota (Charter No. 1).

IN TESTIMONY WHEREOF, today, March

27, 2012, I have hereunto subscribed my

name and caused my seal of office to be

affixed to these presents at the U.S.

Department of the Treasury, in the City of

Washington, District of Columbia.



John Walsh

Acting Comptroller of the Currency

## ARTICLES OF ASSOCIATION
## OF
## WELLS FARGO BANK, NATIONAL ASSOCIATION

### ARTICLE I - NAME

The title of this Association shall be Wells Fargo Bank, National Association. The Association may also use the abbreviation Wells Fargo Bank, N.A.

### ARTICLE II - OFFICES

1. Main Office. The main office of this Association shall be in the City of Sioux Falls, County of Minnehaha, State of South Dakota. The Board of Directors shall have the power to change the location of the main office to any other place within the limits of the City of Sioux Falls, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

2. Branch Offices. The Board of Directors shall have the power to establish or change the location of any branch or branches of this Association to any other location, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

3. Conduct of Business. The general business of the Association shall be conducted at its main office and its branches.

### ARTICLE III - BOARD OF DIRECTORS

1. Number. The Board of Directors of this Association shall consist of not less than five nor more than twenty-five persons, the exact number to be fixed and determined from time to time by resolution of a majority of the full Board of Directors or by resolution of the shareholders at any annual or special meeting thereof.

2. Qualification. Each director, during the full term of his or her directorship, shall own a minimum of $1,000 par value of stock of this Association or an equivalent interest, as determined by the Comptroller of the Currency, in any company which has control over this Association within the meaning of Section 2 of the Bank Holding Company Act of 1956.

3. Vacancy. The Board of Directors, by the vote of a majority of the full Board, may, between annual meetings of shareholders, fill vacancies created by the death, incapacity or resignation of any director and by the vote of a majority of the full Board may also, between annual meetings of shareholders, increase the membership of the Board by not more than four members and by like vote appoint qualified persons to fill the vacancies created thereby; provided, however, that at no time shall there be more than twenty-five directors of this Association; and provided further, however, that not more than two members may be added to the Board of Directors in the event that the total number of directors last elected by shareholders was fifteen or less.

4. Appointment of Officers. The Board of Directors shall appoint one of its members President of this Association, who shall act as Chairman of the Board, unless the Board appoints another director to act as Chairman. In the event the Board of Directors shall appoint a President and a Chairman, the Board shall designate which person shall act as the chief executive officer of this Association. The Board of Directors shall have the power to appoint one or more Vice Presidents and to appoint a Cashier and such other officers and employees as may be required to transact the business of this Association.

5. Powers. The Board of Directors shall have the power to define the duties of the officers and employees of this Association; to fix the salaries to be paid to them; to dismiss them; to require bonds from them and to fix the penalty thereof; to regulate the manner in which the increase of the capital of this Association shall be made; to manage and administer the business and affairs of this Association; to make all Bylaws that it may be lawful for them to make; and generally to do and perform all acts that it may be legal for a Board of Directors to do and perform.

## ARTICLE IV - MEETINGS OF SHAREHOLDERS

1. Annual Meeting. The annual meeting of the shareholders for the election of directors and the transaction of whatever other business may be brought before said meeting shall be held at the main office, or such other place as the Board of Directors may designate, on the day of each year specified therefor in the Bylaws, but if no election is held on that day, it may be held on any subsequent day according to the provisions of law; and all elections shall be held according to such lawful regulations as may be prescribed by the Board of Directors.

2. Special Meetings. The Board of Directors, the Chairman, the President, or any one or more shareholders owning, in the aggregate, not less than 25 percent of the stock of this Association, may call a special meeting of sharcholders at any time.

3. Notice of Meetings. Unless otherwise provided by the laws of the United States, a notice of the time, place, and purpose of every annual and special meeting of the shareholders shall be given by first-class mail, postage prepaid, mailed at least ten days prior to the date of such meeting to each shareholder of record at his or her address as shown upon the books of this Association.

4 Written Consents. Any action required or permitted to be taken at an annual or special meeting of the shareholders of the Association may be taken without prior written notice and without any meeting if such action is taken by written action, containing a waiver of notice, signed by all of the shareholders entitled to vote on that action.

## ARTICLE V - CAPITAL

1. Capitalization. The amount of authorized capital stock of this Association shall be $1,122,000,000, divided into 112,200,000 shares of common stock of the par value of Ten Dollars ($10.00) each; but said capital stock may be increased or decreased from time to time, in accordance with the provisions of the laws of the United States.

- 2 -

Notice of Removal
Exhibit E page 65

2. Voting Rights. Each holder of common stock of the Association shall be entitled to vote on all matters, one vote for each share of common stock held by such holder. No holder of shares of the capital stock of any class of this Association shall have any pre-emptive or preferential right of subscription to any shares of any class of stock of this Association, whether now or hereafter authorized, or to any obligations convertible into stock of this Association, issued or sold, nor any right of subscription to any thereof other than such, if any, as the Board of Directors, in its discretion, may from time to time determine and at such price as the Board of Directors may from time to time fix.

3. Debt Obligations. The Association, at any time and from time to time, may authorize and issue debt obligations, whether or nor subordinated, without the approval of the shareholders.

## ARTICLE VI - PERPETUAL EXISTENCE

The corporate existence of this Association shall continue until terminated in accordance with the laws of the United States.

## ARTICLE VII - INDEMNIFICATION

To the extent permitted by 12 CFR 7.2014 and consistent with the requirements of 12 USC 1828(k) and the implementing regulations thereunder:

(a) Elimination of Certain Liability of Directors. A director of the Association shall not be personally liable to the Association or its shareholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Association or its shareholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

(b)(1) Right to Indemnification. Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Association or is or was serving at the request of the Association as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action or inaction in an official capacity as a director, officer, employee, or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Association to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Association to provide broader indemnification rights than said law permitted the Association to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall

- 3 -

Notice of Removal
Exhibit E page 66

continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that the Association shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Association. The right to indemnification conferred in this paragraph (b) shall be a contract right and shall include the right to be paid by the Association the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the Delaware General Corporation Law requires, the payment of such expenses incurred by a director of officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Association of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director of officer is not entitled to be indemnified under this paragraph (b) or otherwise. The Association may, by action of its Board of Directors, provide indemnification to employees and agents of the Association with the same scope and effect as the foregoing indemnification of directors and officers.

(2) Non-Exclusivity of Rights. The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this paragraph (b) shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles of Association, by-law, agreement, vote of shareholders or disinterested directors or otherwise.

(3) Insurance. The Association may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Association or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the Association would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

## ARTICLE VIII - AMENDMENT

These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this Association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of holders of such greater amount.

S:\RUEDP01\ARTICLES\WFB Articles (CURRENT).doc

- 4 -

Case4:13-cv-00808-PJH Document1-1 Filed02/21/13 Page54 of 77

Back to Search Bank Find

Your Bank at a Glance

---

## Wells Fargo Bank, National Association (FDIC Cert: 3511) is FDIC Insured.

---

Wells Fargo Bank, National Association has been FDIC insured since January 1, 1934.
It was established on **January 1, 1870.**
Its main office (headquarters) is located at:
> **101 N. Phillips Avenue**
> **Sioux Falls, South Dakota 57104**
> **County of Minnehaha**

Wells Fargo Bank, National Association has 6603 Domestic Branches (Offices) located in 41 state(s) and 37 Foreign Offices. (Check Branches (Offices) by state.)

Wells Fargo Bank, National Association's reported (or primary) website: http://www.wellsfargo.com:80/

**Wells Fargo Bank, National Association is chartered as a National Bank. Therefore the primary regulator is the Office of the Comptr Currency (OCC). For consumer assistance regarding an issue with this institution, please contact the OCC directly using http://www.helpwithmybank.gov/.**

Calculate your FDIC insurance coverage at Wells Fargo Bank, National Association using FDIC EDIE at www.fdic.go Last financial information available about Wells Fargo Bank, National Association. Historical profile of Wells Fargo Bank, National Association.

For additional information please click on one of the following:
1. For more information on Federal Deposit Insurance, Your Insured Deposits or Insured or Not Insured
2. View the industry's overall picture - Statistics at a Glance
   (This will open a new window.)
3. Current Financial data about your bank - Institution Directory – Two years Financial Report
   (This will open a new window.)
4. Examine your bank's financial data - CALL/TFR Financial Information *6/30/2010 Latest Available*
5. Study branching and deposit market share - Summary of Deposits/Market Share
6. Analyze and compare individual institutions and create custom reports - Institution Directory – Compare
7. Review industry using 8 predefined reports - Statistics on Depository Institutions
8. Identify the latest performance trends in your state - Quarterly Banking Profile State Tables
   (This will open a new window.)
9. Analyze institutions and custom peer groups - Statistics on Depository Institutions
10. View branch office deposit information - Summary of Deposits
11. Community Reinvestment Act (CRA) Performance Ratings - CRA Performance Ratings
12. FDIC's Disclaimer - FDIC's Disclaimer

Questions, Suggestions & Requests

Home | Contact Us | Search | Help | SiteMap | Forms

Freedom of Information Act (FOIA) Service Center | Website Policies | USA.gov | FDIC Office of Inspector General

FDIC Open Government Webpage | No FEAR Act Data

**Notice of Removal
Exhibit E page 68**

# EXHIBIT F

Corporations: Registration Detail
Page 1 of 2

Search OSOS Web Sites

SEARCH

Contact Us | Connect:



# Corporations Division

| Corporations Home | Charities Home | Awards | Public Notices |
|---|---|---|---|

### Corporations Division - Registration Data Search

Neither the State of Washington nor any agency, officer, or employee of the State of Washington warrants the accuracy, reliability, or timeliness of any information in the Public Access System and shall not be liable for any losses caused by such reliance on the accuracy, reliability, or timeliness of such information. While every effort is made to ensure the accuracy of this information, portions may be incorrect or not current. Any person or entity who relies on information obtained from the System does so at his or her own risk.

REGIONAL TRUSTEE SERVICES CORPORATION

| | |
|---|---|
| UBI Number | 601061176 |
| Category | REG |
| Profit/Nonprofit | Profit |
| Active/Inactive | Active |
| State Of Incorporation | WA |
| WA Filing Date | 12/30/1987 |
| Expiration Date | 12/31/2011 |
| Inactive Date | |
| Registered Agent Information | |
| Agent Name | ROBINSON TAIT PS |
| Address | 710 2ND AVE STE 710 |
| City | SEATTLE |
| State | WA |
| ZIP | 98104 |
| Special Address Information | |
| Address | |
| City | |
| State | |
| Zip | |

**Governing Persons**

| Title | Name | Address |
|---|---|---|
| President,Chairman ,Director | REBHUHN , CHRIS | 616 1ST AVE #500 SEATTLE , WA |
| Vice President | KAUFMAN , DEBORAH | 616 1ST AVE #500 SEATTLE , WA |
| Secretary,Treasurer | POOLE , CRYSTAL | 616 1ST AVE #500 SEATTLE , WA |

Purchase Documents for this Corporation »

« Return to Search List

http://www.sos.wa.gov/corps/search_detail.aspx?ubi=601061176
7/27/2011

**Notice of Removal
Exhibit F page 69**

Translate our site into:

Select Language

Powered by Google Translate
Phone Numbers | Privacy Policy | Accessibility
Washington Secretary of State - Corporations Division
801 Capitol Way South
PO Box 40234, Olympia WA 98504-0234
(360) 725-0377

**Notice of Removal**
**Exhibit F page 70**

EXHIBIT G

10   CR# 35 203037 JH
3 SUMMIT ST, SF
APN lot 059, Block 7094

RECORDING REQUESTED BY:
**WORLD SAVINGS BANK**

WHEN RECORDED MAIL TO:
**WORLD SAVINGS BANK**
**FINAL DOCUMENTATION**
**CLOSING DEPARTMENT**
**P.O. BOX 659548**
**SAN ANTONIO, TX 78265-9548**

LOAN NUMBER:      2408

NOTE AMOUNT: $475,000.00



San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC— 2007—I353091—00
Acct 1-CHICAGO Title Company
Thursday, MAR 15, 2007 08:00:00
Ttl Pd    $60.00        Nbr-0003193542
REEL J348 IMAGE 0094
                        081/GG/1-18

_____
FOR RECORDER'S USE ONLY

## DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY PAYMENT AMOUNT AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $593,750.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.   DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
(A)  Security Instrument. This Deed of Trust, which is dated March 7, 2007, will be called the "Security Instrument."

(B)  Borrower. HEDDI M. LINDBERG, TRUSTEE OF THE HEDDI M. LINDBERG REVOCABLE TRUST, CREATED BY DECLARATION OF TRUST ON FEBRUARY 20, 2004 sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C)  Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612 .


0 0 3
LENDER'S USE ONLY

SD001A (2004-03-3)
DEFERRED INTEREST                          Page 1                          CA

2406

(D) **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$475,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by April 1, 2037 ("Maturity Date").

(E) **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H) **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

II.    **BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)     pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.   **DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below:

(i)     The Property which is located at **3 SUMMIT ST, SAN FRANCISCO, CA  94112-3033.** The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-3)
DEFERRED INTEREST                                   Page 2                                                CA

2408

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

## 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

## 2.    PAYMENTS FOR TAXES AND INSURANCE

### (A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)                                                                CA

Page 3

Notice of Removal
Exhibit G page 73

2408

**(B)    Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)

Page 4

CA

2408

**3.    APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-3)

Page 5

CA

2408

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.   **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-3)                                                      CA

Page 6

2408

### 7.   LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

### 8.   LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

### 9.   AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SC001G (2004-03-3)                                                                                    CA

**Notice of Removal**
**Exhibit G page 77**

2408

**10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

   **(A)   Borrower's Obligations**

   Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

   Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

   **(B)   Lender's Rights**

   Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11.   OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER
       BORROWER'S RIGHTS OR OBLIGATIONS**

   Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

   Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

   Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.   MAXIMUM LOAN CHARGES**

   If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-3)                                                     CA

2408

### 13. LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

### 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 3 SUMMIT ST, SAN FRANCISCO, CA 94112-3033. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15. GOVERNING LAW; SEVERABILITY

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

### 16. BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

### 17. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

SD0011 (2004-03-3)

CA

Page 9

2408

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.     INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.     CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.     LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.     WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.     CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.     MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.     CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)                                                                                                    CA

**Notice of Removal
Exhibit G page 80**

2408

(B)     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

### 25.   FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-3)                                                                    CA

Page 11

Notice of Removal
Exhibit G page 81

2408

**26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

THIS SPACE INTENTIONALLY LEFT BLANK.

**27.    SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)    [L01 (2008-06-1)]                                                                CA

Page 12

2408

**28.  RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.  RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.  STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-3)

CA

Page 13

2408

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-3)    [N01 (2008-08-1)]                                                                                    CA

**Notice of Removal**
**Exhibit G page 84**

2408

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

HEDDI M. LINDBERG, TRUSTEE OF THE HEDDI M. LINDBERG REVOCABLE TRUST, CREATED BY DECLARATION OF TRUST ON FEBRUARY 20, 2004

BY:  _____ (Seal)
HEDDI M. LINDBERG, TRUSTEE

**ATTACH TRUST NOTARY ACKNOWLEDGEMENT**

SC001 (2004-03-1)      [AP1 (2004-03-1)]      Page 15                    CA
                       [B01 (2004-03-1)]

Notice of Removal
Exhibit G page 85

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of ___ SAN FRANCISCO ___ } ss.

On ___ MARCH 09, 2007 ___ before me, ___ Denny S. Wu, Notary Public
<br>Date · Name and Title of Officer (e.g. "Jane Doe, Notary Public")

personally appeared ___ HG00: M. LINDBERG ___
<br>Name(s) of Signer(s)

☐ personally known to me
<br>☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
<br>Signature of Notary Public

DENNY S. WU
<br>COMM. # 1425672
<br>NOTARY PUBLIC - CALIFORNIA
<br>SAN FRANCISCO COUNTY
<br>My Commission Expires June 21, 2007

------------------- OPTIONAL -------------------

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**

Title or Type of Document: ___ OOT ___

Document Date: ___ 03-09-07 ___ Number of Pages: ___

Signer(s) Other Than Named Above: ___

**Capacity(ies) Claimed by Signer**

Signer's Name: ___

☐ Individual
<br>☐ Corporate Officer — Title(s): ___
<br>☐ Partner — ☐ Limited ☐ General
<br>☐ Attorney-in-Fact
<br>☐ Trustee
<br>☐ Guardian or Conservator
<br>☐ Other: ___

RIGHT THUMBPRINT OF SIGNER
<br>Top of thumb here

Signer Is Representing: ___

© 1999 National Notary Association · 9350 De Soto Ave., P.O. Box 2402 · Chatsworth, CA 91313-2402 · www.nationalnotary.org    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827

**WORLD SAVINGS BANK, FSB**

# E X H I B I T "A"
## LEGAL DESCRIPTION

**LOAN NO.**      **2408**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **SAN FRANCISCO**
STATE OF **CALIFORNIA**, DESCRIBED AS FOLLOWS:

– SEE FOLLOWING PAGE –

SD001 (2003-03-2) [GF430A1]                    Page 16 of 16                    CA

**Escrow No.:** 07-35303037-JH
**Locate No.:** CACTJ7738-7738-2353-0035303037
**Title No.:** 07-35303037-RM

## EXHIBIT "A"

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN FRANCISCO, COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 59, BLOCK 7069, PARCEL MAP OF BLOCK "Q", RAILROAD HOMESTEAD ASSOCIATION, FILED JANUARY 14, 1966, IN PARCEL MAP BOOK 1, PAGE 1, SAN FRANCISCO COUNTY RECORDS.

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**NOTICE OF REMOVAL PURSUANT TO 28 U.S.C § 1441 & 1332
[DIVERSITY JURISDICTION]**

on the interested parties in said case as follows:

*Served By Means Other than Electronically Via the Court's CM/ECF System*

| *Attorneys for Plaintiff:* | *Attorneys for Defendant: Regional Trustee Services Corporation* |
|---|---|
| Vernon L. Bradley<br>Law Offices of Vernon L. Bradley<br>Waldo Point Harbor<br>54 Liberty Dock<br>Sausalito, CA  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 | Robin Prema Wright, Esq.<br>Nicole K. Neff, Esq.<br>WRIGHT, FINLAY & ZAK, LLP<br>4665 MacArthur Court, Suite 280<br>Newport Beach, CA  92660 |
| Tel: 415-331-4441<br>Fax: 415-331-4443 | Tel:   (949) 477-5050<br>Fax:   (949) 477-9200<br>*rwright@wrightlegal.net*<br>*nneff@wrightlegal.net* |

☒ **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on February 21, 2013.

Leslie Coumans
_____
(Type or Print Name)

_____
(Signature of Declarant)

CASE NO. _____
CERTIFICATE OF SERVICE