VERNON L. BRADLEY (SBN 49294)
LAW OFFICES OF VERNON L. BRADLEY
Waldo Point Harbor
54 Liberty Dock
Sausalito, California 94965-3106

Telephone: (415) 331-4441
Facsimile: (415) 331-4443

Attorney for Plaintiff
HEDDI LINDBERG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

| | |
|---|---|
| HEDDI LINDBERG,<br><br>  Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A. A/K/A WACHOVIA MORTGAGE as successor by merger with WORLD SAVINGS BANK, FSB; REGIONAL TRUSTEE SERVICES CORPORATION, and DOES 1 through 50, inclusive, and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title, or any cloud on Plaintiff's title thereto, named as DOES 51-100, inclusive,<br><br>  Defendants. | Case No.: 4:13-CV-00808-PJH<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S PRELIMINARY INJUNCTION**<br><br>Date: April 17, 2013<br>Time: 9:00 a.m.<br>Dept.: Courtroom 3 – 3rd Floor<br>Judge: Hon. Phyllis J. Hamilton |

- 1 -

## I. INTRODUCTION AND STATEMENT OF FACTS

The decision to grant or deny a Preliminary Injunction rests in the sound discretion of the district court. See, *Weinberger v. Romero-Barcelo* 456 U.S. 305, 312 (1982) (noting that courts should pay particular attention to the ***public consequences*** when exercising "sound discretion"). (Emphasis Added). What cannot be ignored by the Court in ruling on the Preliminary Injunction is that World Savings Bank (the original lender of Plaintiff's loan) engaged in perhaps the worst of the worst predatory lending practices of any of the major US banks from 1998 to 2008. World Savings loans (similar to Plaintiff's loan) consisted of pick-a-pay loans with negative amortization reaching 125% of the original principal balance. As home values dropped from the subprime mortgage crisis the banks created, properties with World Savings Bank loans have principal balances that just keep going up. "No underwriting was given on these loans, the value of the properties and the promise and belief they would ever rise was the only consideration given to support the loan."[1] The result is that millions of homeowners throughout the country are faced with foreclosure from the very same type of "liar loan" that is the subject of this lawsuit. The public interest in granting the Preliminary Injunction is to "allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their homes." *Sencion v. Saxon Mortg. Service, LLC* 5:10-cv-3108.

Plaintiff is a 71 year old single woman and cancer survivor. She paid the monthly mortgage on her property on time every month for years. However, concerned with her escalating mortgage payments as a result of the negative amortization of her loan and living on a fixed income, Plaintiff contacted Wells Fargo for a loan modification. Wells Fargo makes a big deal that Plaintiff has not made a mortgage payment in "over a year" but what Wells Fargo conveniently ignores is that it was Wells Fargo representatives who instructed Plaintiff to stop making the monthly mortgage payments in order to qualify for a loan modification in the first place.[2] The requirement that a borrower be 3 months delinquent to qualify for a government sponsored loan modification program (i.e., HAMP) is a fallacy and is used as a trap by the banks to initiate foreclosure of properties. Plaintiff worked with Wells Fargo for a nearly a year to modify her loan and was told over and over to re-submit the same documents to several different Wells Fargo agents. The fact is, Plaintiff would have continued making monthly payments rather than face foreclosure on a home she has lived in for years but

---

[1] Daniel Edstrom, "World Savings Bank, A Living Legacy of the Subprime Crisis." December 19, 2010.

[2] Assuming, argumendo, Defendant's calculations are correct it would be a year from this month.

- 1 -

Wells Fargo would not accept any payments during the loan modification process. Plaintiff contends that Wells Fargo never intended to modify her loan and secretly initiated foreclosure proceedings all the while telling Plaintiff that her home would not be sold during the loan modification process. The unconverted fact is that Wells Fargo has violated the new Homeowners' Bill of Rights by initiating foreclosure of the property after January 1, 2013, even though no final decision on Plaintiff's loan modification was made as evidenced by the documentation submitted by Plaintiff in support of the Preliminary Injunction.

## II. FRAUD ON THE COURT BELONGS TO WELLS FARGO

Plaintiff does want to give this issue any credence but, to be clear, Plaintiff's First Amended Complaint (FAC) merely attaches the DOT that counsel for Wells Fargo represented was the DOT in issue. The FAC does not alter one word in the Complaint and was filed as a courtesy to counsel for Wells Fargo. Make no mistake; the fraud on the court is Wells Fargo's false claim to be the real party in interest, claiming that they own this loan and that the loan was never securitized.

## III. PLAINTIFF HAS SUBMITTED ADMISSIBLE EVIDENCE IN SUPPORT OF HER CLAIMS.

Defendant Wells Fargo misses the point! Wells Fargo makes the cursory statement that the allegations in the motion do not meet the evidence requirements for a preliminary injunction but does not cite to one authority to support that argument. First, the documentation that supports her claims include, but are not limited to, the DOT, NOD, Trustee Sale Notice and the (2) letters dated in January 2013 establishing that Defendant Wells Fargo engaged in "dual tracking" in violation of the New Homeowners' Bill of Rights. Also, the purpose of a Preliminary Injunction serves to protect Plaintiff from "irreparable injury" and "to preserve the relative positions of the parties until a trial on the merits can be had." *Univ. of Texas v. Camenisch,* 411 U.S. 390, 395 (1981). Because of the haste necessary to preserve the relative positions of the parties and to protect the movant from irreparable injury, a preliminary injunction is often granted on the basis of less formal procedures than a trial on the merits. *Id.* at 395. Therefore, the Plaintiff **need not prove her case in full at a preliminary injunction hearing.**

As set forth in the complaint, shortly after Plaintiff entered into the Deed of Trust with World Savings, her loan was securitized and sold into a trust on Wall Street. World Savings is known to have created REMICs beginning in 1999 to 2008. A Real Estate Mortgage Investment Conduit (REMIC) is a complex pool of mortgage securities created for the purpose of acquiring collateral. This base is then divided into varying classes of securities backed by mortgages with

different maturities and coupons. As a synthetic investment vehicle, REMICs consist of a fixed pool of mortgages broken apart and marketed to investors as individual securities. The World Savings REMIC transactions have the following structure:

- Originator: World Savings Bank;
- Master Servicer: World Savings Bank;
- Seller: World Savings Bank;
- Underwriter (Lead Manager): World Savings Bank;
- REMIC: World Savings Bank REMIC ##;
- Trustee: Either Deutsche Bank National Trust Company or the Bank of New York.

The information is seemingly impossible to locate because these are Rule 144/A securities meaning they are private transactions. Here is what the securities say: These securities will not be and have not been registered under the Securities Act of 1933 and may not be offered or sold in the United States absent registration or an applicable exemption from registration requirements. What is known is that many of the REMICs have been paid in full.

From that point on, the REMIC became the only true beneficiary under Plaintiff's Deed of Trust. Thus, when Wells Fargo acquired Wachovia (d.b.a. World Savings) through a government-forced sale to avoid a failure of Wachovia in November 2009, the purchase could not have included the beneficial interest in Plaintiff's Deed of Trust as World Savings had already sold the beneficial interest in the loan two years prior, in 2007. Since World Savings (Wachovia) no longer owned the beneficial interest in Plaintiff's Deed of Trust, it had nothing to convey to Defendant Wells Fargo and Defendant Wells Fargo is not the true beneficiary. See, *Barrionuevo v. Chase Bank* (August 6, 2012) US District Court, N.D. California No. C-12-0572 EMC. In *Barriomuevo*, the court found that Chase violated California Civil Code § 2932.5 "in that they have not 'recorded a document in the public chain of title reflecting from whom [they] acquired the beneficial interest in Plaintiffs' Deed of Trust,' as required by the statute. *Id.* \*5 (citing with approval *Sacchi v. Mortgage Electronic Registration Systems, Inc.* No. CV-11-1658 AHM 2011 WL 2533029; *Javaheri v. J.P. Morgan Chase Bank, N.A.,* CV-10-08185 ODW FFMX 2011 WL 2173786; *Ohlendorf v. Am. Home Mortg. Servicing* 279 F.R.D. 575, 583 (E.D. 2010); *Robinson v. Countrywide Home Loans, Inc.* 199 Cal.App.42, 46 fn 5 (2011) – **enjoining a Trustee Sale where Plaintiff alleges that Defendant lacks standing to conduct a foreclosure sale.**

Wells Fargo does not dispute Plaintiff's claim that the note was securitized. The only so-called evidence Defendant submits to establish that they are the current true owner of the loan is the purported merger acquisition of World Savings and Wells Fargo through the FDIC. Regardless, of whether Wells Fargo acquired World Savings by merger or asset purchase (as Plaintiff claims) the overwhelming evidence is that the loan was sold to REMIC and was no longer an asset of World Savings at the time Wells Fargo acquired World Savings. Moreover, the evidence submitted by Defendant Wells Fargo supports Plaintiff's claims. Defendant submits the Notice of Default recorded on **October 22, 2012** by Regional Trustee Services Corporation. However, the original trustee under the Deed of Trust is Golden West. A substitution of trustee was not recorded until 2 months later on **December 14, 2012**. Therefore, Regional Trustee Services Corporation had no standing to record the NOD and the NOD is therefore invalid.

The lawsuit is at the initial pleading stage. Plaintiff has every right, and indeed is entitled to, discovery to support those claims. There is a dispute among the parties as to who is the true present beneficiary of the note with the right to foreclosure. A Preliminary Injunction was recently granted where it was disputed whether the bank had contacted the borrower prior to recording a Notice of Default. See, *Tamburri v. Suntrust Mortgage (Wells Fargo)* (July 6, 2011) United States District Court (N.D. Cal) 3:11-cv-02899. The allegations in Plaintiff's Complaint are much more severe.

### IV. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

#### 1. Plaintiff's Claims Are Not Preempted by HOLA

Well Fargo's assertion that Plaintiff's claims are preempted by HOLA is just plain wrong. The "occupy the field" analysis has not been adopted by California. In California, a number of cases hold that courts may uphold actions unless it specifically conflicts with an applicable federal statute or regulation. *Fenning v. Glenfed* (1995) 40 Cal.App.4th 1285; *People ex rel Sepulveda v. Highland FS&L* (1993) 14 Cal.App.4th 1692; *Siegel v. American S&L* (1989) 210 Cal.App.3d 953 (held: actions for fraud are almost exclusively decided by state law and do not raise issues of great federal interest).

Moreover, "no consensus has emerged with respect to HOLA's reach" in cases involving claims of wrongful foreclosure. *Dixon v. Wells Fargo Bank, N.A.* (D. Mass) No. 11-10368-WGY (July 22, 2011) (held: HOLA does not preempt claims of promissory estoppel related to promises made in the loan modification process citing with approval *DeLeon v. Wells Fargo Bank, N.A.* No. 10-cv-1390-LHK (N.D. Cal. January 28, 2011). In *DeLeon,* the court held that HOLA does not

- 4 -

preempt claims of intentional misrepresentation because it does "not attempt to impose substantive regulations regard loan terms, disclosures or servicing or processing procedures." *Id.* *7. HOLA claims also do not preempt fraud claims in California because those claims "arise from a more general duty not to misrepresent material facts" as opposed to regulate lender actions. *Becker v. Wells Fargo, N.A.* 2110-cv-07799; 2011 WL 1103431 (E.D. Cal. March 22, 2011). The crux of Plaintiff's claims in this action is that Wells Fargo has misrepresented and fraudulently represented itself as the lender of Plaintiff's loan when it is not and that Wells Fargo proceeded to engaged in loan modification and dual tracking without authority in an effort to foreclose on Plaintiff's home and to reap the benefits of her equity.

Moreover, all of the cases cited by Defendant Wells Fargo involved a Motion to Dismiss and not a Preliminary Injunction.

### 2. Defendants Have Violated California Statute Banning Dual Tracking

In California, SB900/AB278 bans the practice of "dual tracking." The new statute requires lenders to halt foreclosure proceedings once a borrower completes a loan modification application. The mortgage lender will be required to render a decision on a loan modification application before advancing the foreclosure process. That is the law! Wells Fargo's twisted reading of the statute notwithstanding, the facts are that: (1) Plaintiff had completed a loan modification; (2) the loan modification review process continued into the year 2013; (3) Wells Fargo did not halt foreclosure proceedings; (4) Wells Fargo advanced the foreclosure process by recording a Trustee Sale on January 10, 2013 ***prior to*** rendering a decision on the loan modification.

### 3. Plaintiff's Declaratory Relief Cause of Action is Sufficient

Plaintiff has an absolute right to challenge defendant's standing to foreclose here because specific facts show there is a *serious* problem with title. *Herrera v Deutsche Bank Nat'l Trust Co.* (2011) 196 CA4th 1366; *Johnson v. HSBC Bank USA, et al.* 3:11-CV-2091-JM-WVG (March 19, 2012). See also, *Vogan v. Wells Fargo Bank, N.A.*, 2011 WL5826016 (E.D. Cal 2011)(holding it was improper to dismiss claims challenging defendants' standing to foreclose based on allegations that an assignment executed after the closing date of the securities pool created a plausible inference that at least some part of the recorded assignment was fabricated or otherwise invalid). *Johnson v. HSBC Bank USA, supra,* *7.

As set forth above, World Savings sold or securitized Plaintiff's loan into a privately held REMIC upon close in 2007. When World Savings (d.b.a.) Wachovia either merged with or was purchased by Wells Fargo through the FDIC in 2009, Plaintiff's loan was the property of a REMIC

- 5 -

and could not be an asset of Wells Fargo. Therefore, Wells Fargo's claim that it is the lender or the loan (or the beneficial interest holder of the loan) is simply false.

Since Plaintiff has properly alleged a "specific factual basis" for doubting Defendants' standing to foreclose, Defendants must show they actually have current authority to take such action. Furthermore, **the premise that the Legislature (supposedly) had not previously created a statutory right to challenge standing is no longer valid. This has changed effective January 1, 2013 in California because the Homeowners' Bill of Rights legislatively expressly requires a foreclosing entity to show it currently owns a beneficial interest in the note or has current authorization to proceed as an agent on behalf of the entity that owns that interest.** See Civ. C. § 2924(a)(6). Defendant has failed to present competent evidence that it currently owns a beneficial interest in the note or has authorization to proceed.

### 4. Plaintiff's Causes of Action for Intentional Infliction of Emotional Distress has a Substantial and Clear Likelihood of Success on its Merits.

In order for Plaintiff to sustain a cause of action for Intentional Infliction of Emotional Distress, there must be 1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; 2) severe or extreme emotional distress suffered by the plaintiff; and 3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Melorich Builders v. Superior Court*, 160 Cal. App. 3d 931, 935 (Cal. App. 4th Dist. 1984); quoting *Fletcher v. Western National Life Ins. Co.,* (1970) 10 Cal.App.3d 376, 394. *Davidson v. City of Westminster*, (1982) 32 Cal.3d 197, 209 quoting from *Cervantez v. J. C. Penney Co.*, (1979) 24 Cal.3d 579, 593.

Defendant's conduct was outrageous and encompassed intentional fraud, deceit, unfair business practices and other egregious behavior by Defendant's loan agents who claimed to be working with Plaintiff to help save his home with a loan modification, while secretly conniving to foreclose. Defendant used this tactic to essentially unlawfully foreclose on Plaintiff's home. That misconduct cannot be tolerated in our society and must be deemed even more despicable when perpetrated by a huge financial conglomerate against unsophisticated homeowners lured into a "confidential relationship" with false promises of help to escape foreclosure and other financial ruin, and other tricks to induce reliance upon the bankers' superior knowledge and expertise.

As described more fully in the Complaint, Plaintiff has suffered severe emotional distress as a direct and proximate result of Defendant's misconduct. Therefore, since this claim is very likely to

succeed on its merits, Plaintiff respectfully asks this Court to grant a preliminary injunction to put the parties in a position of status quo until the claims are litigated.

### 5. Plaintiff's Cause of Action for Negligent Infliction of Emotional Distress and Cause of Action for Negligence Are Likely to Succeed on the Merits.

For Plaintiff to succeed in suing for negligent infliction of emotional distress, there must be the traditional elements of negligence of duty, breach of duty, causation, and severe emotional distress. *Mercado v. Leong*, 43 Cal. App. 4th 317, 321-322 (3d Dist. 1996). Plaintiff's cause of action for negligence is sure to succeed (see below) and he suffered severe emotional distress as a proximate result (see below).

The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, (3) proximate and legal causation, and (4) injury to plaintiff. *Mendoza v. City of Los Angeles,* 66 Cal.App.4th 1333, 1339 (1998).

Defendant participated in the financed enterprise **far beyond the domain of the usual money lender.** See, *Wagner v. Benson* (1980) 101 Cal.App.3d 27, 35; *Nymark v. Heart Fed. Sav. & Loan Ass'n.* (1991) 231 Cal.App.3d 1089, 1095. Moreover, recent case of *Jolley v. Chase* A134019 establishes that where a loan modification review process is marred in fraud, Plaintiff may maintain a cause of action for negligence. In *Jolley,* the court held that the general rule that a financial institution owes no duty of care does not apply when an institution exceeds the scope of a lender in a loan modification (citing with approval *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650.

In its JOLLEY opinion the Appellate Court heralds a new day for California Courts' consideration of properly documented "duty of care" allegations supporting claims for negligence and Breaches of the Covenants of Good Faith & Fair Dealing s against mortgage lenders by borrowers under the recently-enacted Homeowner's Bill of Rights in this State:

> *"(T)he California Legislature has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost.* (Civ. Code, Secs. 2923.5 & 2923.6). *\*\*\*In short, these measures indicate that courts should not rely mechanically on the 'general rule' that lenders owe no duty of care to their borrowers. \*\*\* One of the targets of the legislation is a practice that has come to be known as 'dual tracking.' When a borrower in default seeks a loan modification, the institution often continues to pursue foreclosure at the same time. The result is that the borrower does not know where he or she stands….'Mortgage lenders call it 'dual tracking,' but for homeowners struggling to avoid foreclosure, it might go by another name: the double-cross.* '"(citing references).

- 7 -

The Court of Appeals concluded as to the Duty of Care/Negligence in JOLLEY on facts applicable to those herein at the pleadings stage:

> "*We find support …in recent federal district court cases that have found a duty of care in particular circumstances surrounding loan modification negotiations* (citing cases). *\*\*\* We conclude that the determination that Chase owed no duty to Jolley was error. Thus the summary adjudication on the negligence cause of action must be reversed…*" (citing Laabs v So. Cal. Edison Co. (2009), 175 CCal.App.4th 1260, 1269 for the proposition that " … *triable issues of fact exist as to the relevant considerations underlying duty in this case*…*.*").

Plaintiff's **Cause of Action for Negligence** is directly related to Wells Fargo's dual-tracking – proceeding on the foreclosure track while suppressing the material fact of its true intentions and failing to disclose them to Plaintiff. As a consequence, Plaintiff suffered damages and lost alternative options available to Plaintiff prior to the concealment and dual tracking. Plaintiff was forced by the suppression to go through gyrations and jump through hoops to meet Wells Fargo's continuing accelerated demands and deadlines for production of documents and chasing after documents Wells Fargo has already in its possession, while Wells Fargo all along intended to foreclose and not modify her loan as it promised it would.

Moreover, *Johnson* is also instructive on the issue of Negligence. The court held that Petitioner's allegations that BofA did not have the legal authority to demand payments from Petitioner because of the assignment's invalidity, the general rule shielding actual lenders from liability would not apply. Again, the overwhelming evidence reveals that Defendant is are not the current holder in due course of the note and that Plaintiff's loan was securitized into a REMIC and only the REMIC can initiate a foreclosure.

**6. Plaintiff's Cause of Action for Quiet Title is likely to succeed on the Merits.**

Plaintiff has asserted a cause of action to Quiet Title. In order to Quiet Title, Plaintiff must (1) file a verified complaint; (2) describe the property subject to the action; (3) state the title of the plaintiff seeking the determination; (4) state all claims adverse to the determination sought; (5) state the date for which the determination is sought; and (6) contain a prayer for the determination of plaintiff's title against the adverse claims. California Code of Civil Procedure §761.020.

Plaintiff has met every element described above including a verified complaint.

///
///

### 7. Plaintiff's Causes of Action for Breach of Implied Covenant of Good Faith and Fair Dealing, Promissory Estoppel and Fraud Are All Likely to Succeed on the Merits.

The only prerequisite for breach of implied covenant of good faith and fair dealing is the existence of a contract between the parties and a breach of the implied covenant. *Rai v. GMAC Mortgage.,* 2011 U.S. Dist. LEXIS 11497, pg 19 (N.D. Cal. Jan 31, 2011); citing *Smith v. City and County of San Francisco,* 225 Cal. App. 3d 38, 49 (1990).

Based on the foregoing, the parties indubitably had a valid contract subject to the implied covenant. Indeed, Defendant actively created a "confidential relationship." It is equally clear Defendant never exercised "good faith" and "fair dealing" in its conduct towards Plaintiff in the loan modification process. Defendants' assertion that Plaintiff accepted a loan modification offer is not germane to the issues in the lawsuit. As set forth in the Complaint, concerned with the increasing principal balance due to the negative amortization and living on a fixed income, Plaintiff contacted Wells Fargo who represented themselves as the lender, to inquire about a loan modification. Wells Fargo representatives told Plaintiff that a modification would not be considered unless Plaintiff was in arrears on her mortgage payments. In reliance on this statement by Well Fargo, Plaintiff stopped making payments in hope of qualifying for a modification. This had the effect of destroying Plaintiff's credit and precluding her from exploring other refinancing options. However, what Plaintiff did not know was that the bank never had any intention of qualifying her for an affordable loan and was in the process of "dual tracking" the loan (i.e., leading the Plaintiff to believe that she would qualify for a loan modification when actually the bank had every intention to foreclose on the property.)

This dual tracking approach was expressly outlawed by the Comptroller of the Currency, under the division of the US Treasury Department, in a Consent Order issued on April 13, 2011 which ordered Wells Fargo, and several other banks to cease and desist their predatory lending practices including this dual track approach. (Attached Exhibit C to the Complaint).

Significantly, California Legislature passed groundbreaking foreclosure relief bills on July 2, 2012 (aka California Homeowner Bill of Rights). The legislation bans banks from proceeding with a foreclosure when a homeowner is seeking a loan modification, a practice known as dual tracking. The Bill requires banks to provide struggling homeowners with a single point of contact at the bank; requires the banks to clearly explain to the borrowers why they are rejected for a loan modification; gives borrowers the right to sue the lender for "significant, material violations" of the law; and subjects the lenders to fines of $7,500 per loan for filing and recording unverified documents. All of

the facts establish that Defendant was dual tracking post January 1, 2013 so any retroactivity issues are moot.

### 8. Plaintiff's Fraud-Deceit Causes of Action Have Merit.

A Fraud & Deceit cause of action requires 1) misrepresentation (false representation or concealment/nondisclosure of material fact), 2) knowledge of falsity (scienter), 3) intent to defraud (i.e., to induce action in reliance on the misrepresentation), 4) justifiable reliance, and 5) resulting damages from each of the Defendants. *Lazar v. Superior Court* (1996) 12 Cal.4th 631. The elements of negligent misrepresentation are the same except there is no requirement of scienter. *Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 184.

**Analysis:** Plaintiff's fraud and deceit claims contain adequate particularity to meet notice pleading standards. Plaintiff has **clearly alleged fraud claims based on attempts to foreclose without standing** (see above). Who (Wells Fargo and Regional Trustee Service Corporation), what (attempts to foreclose without standing and collect payments without any right thereto), when (since the recordation of the NOD), where (San Francisco County, California), how (recording a NOD and NOTS without standing and attempting to sell the Property at a trustee sale without any right to do so).

Regarding loan modification fraud, the relevant questions are answered as follows. **Who?** - Defendant's actual and/or ostensible agents that contacted Plaintiff during the relevant period. **What?** - Plaintiff has particularly pled the exact nature of the affirmative misrepresentations and concealed facts including that Wells Fargo told Plaintiff to stop paying the mortgage in order to qualify for a loan modification and that there would be no foreclosure pending the outcome of the loan modification. **When?** - Beginning in April 2012, and continuing to the present, representatives of Wells Fargo made representations to Plaintiff that:

- The note secured by 1st deed of trust on the PROPERTY would be placed in the loan modification program;

- Defendant Wells Fargo told Plaintiff that she should stop making his mortgage payments in order for Defendants to qualify her for loan modification;

- Until the loan modification review process was completed a Trustee's Sale would not be conducted on the Property;

- The Loan Modification Agreement was not executed by Wells Fargo;

- 10 -

As a preliminary matter, Defendant's Opposition fails because the fraud and deceit claims were stated with adequate specificity. An exception to the strict pleading standard for fraud is recognized when it appears the facts lie more within Defendant's knowledge than Plaintiff's. *Committee on Children's Television, Inc. v. General Foods Corp.*, (1983) 35 Cal.3d. 197, 216. In that case, the California Supreme Court unequivocally held that:

> certain exceptions . . . mitigate the rigor of the rule requiring specific pleading of fraud. Less specificity is required when "it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy," [citations]; "[e]ven under the strict rules of common law pleading, one of the canons was that less particularity is required when the facts lie more in the knowledge of the opposite party ...."

Consequently, a party is no longer required to plead with common law exactness, and less particularity is needed **where it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of controversy**. *Simons v. County of Kern*, (1965) 234 Cal.App.2d 362, 367; *Schessler v. Keck*, (1954) 125 Cal.App.2d 827, 835-836.

Fraud is sufficiently pled when the complaint sets out a representative selection of the alleged misrepresentations sufficient to permit the trial court to ascertain whether the statements were material and otherwise actionable. *Goldrich v. Natural Y Surgical Specialties, Inc.*, (1994) 25 Cal.App.4th 772, 782, citing *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 218.

Likewise, *Charpentier v. Los Angeles Rams Football Co.* (1999) 75 Cal. App. 4th 301, held that fraud was sufficiently pled against a corporate defendant with superior knowledge of the underlying facts, when Defendants "cannot persuasively complain it misunderstands the fraud claim made," **and discovery will allow the parties to find out more specifics about "who made the representations and by what means"** (emphasis added).

Defendant also actively concealed the true dangers of "strategic default" from Plaintiff and other clients so they would have an opportunity to collect **millions of dollars a month** in HAMP servicing money and to eventually foreclose after they had "bled" Plaintiff dry, e.g., through useless payments that would only increase Plaintiff's catastrophic equity losses after foreclosure. Since a three month default is necessary to buy real property out of the securitization process for

- 11 -

"pennies on the dollar" and initiate foreclosure, there is strong ground to believe that goal was Defendant's true motive for making such misrepresentations.

Obviously, Plaintiff detrimentally relied upon these misrepresentations and concealment of the true facts regarding intentional default for the "trial modification" / HAMP qualification. Honestly, who would even *conceivably* have considered pursuing modification if Defendant had told Plaintiff and other clients the true facts, which were (1) that he would suffer foreclosure and catastrophic equity losses despite making good-faith trial modification payments, (2) that his credit rating would crash and burn so there would be no way to save the home via other means, (3) that the intentional default *prescribed by Defendant* would result in exorbitant and crippling penalties, fees, costs and other damages that would make it impossible to catch-up once Defendant "pulled the rug out from under her," slapped him with an outrageous bill for arrearages and penalties, and threatened immediate foreclosure for nonpayment, and (4) that costly litigation would be necessary to protect his rights, etc.

Defendant had full knowledge of the falsity of said misrepresentations and of Plaintiff's actual and justifiable misapprehension of the true circumstances concealed by Defendant (i.e., scienter). Defendant engaged in such misconduct with the intent to defraud Plaintiff (i.e., to induce action in reliance on the misrepresentations and concealment). Plaintiff justifiably relied on said misrepresentations and concealment and, as a proximate result, Plaintiff suffered damages from each of the Defendants. Thus, fraud and deceit are clearly established here under all of the alleged theories. *Lazar v. Superior Court* (1996) 12 Cal.4th 631.

### 9. Plaintiff's Promissory Estoppel Claim Prevails.

Promissory estoppel requires "(1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by the party's reliance." See, *Jolley, supra* *25.

Defendant attack this claim for lack of a clear and unambiguous promise and on the preposterous contention that Defendant fulfilled their promises and/or Plaintiff's reliance was not justified, but these contentions are belied by the facts set forth above. Defendants, and each of them as co-conspirators, etc., made the clear and unambiguous promises set forth above; Plaintiff was justified in relying thereon (see duty analysis in Negligence section, above), and Defendants broke those promises to Plaintiff's detriment, i.e., Defendants never gave Plaintiff the promised modification with reasonable terms that could actually help Plaintiff save her home, which was

always the promised result. Thus, this claim prevails. The case of *Cabanillas v. Wachovia Mortg.* SACV 12-00228-CJC (C.D. Cal. March 20, 2012 is inapposite to the case at bar. In that case, Plaintiffs claimed that the bank merely promise to consider and evaluate their modification request. In this case, Plaintiff claims that Wells Fargo promised not to foreclose on the property during the modification review but engaged in illegal dual tracking.

### 10. Plaintiff's Claims for UCL are Likely to Succeed on the Merits

Plaintiff have pled specific violations of law that give rise to relief under California's Unfair Business Practices act and California Business and Professions Code, including, but not limited to, fraudulent concealment and material misstatements, privacy violations, and violations of California Civil Code § 2923.5, 2923, 2924 and 2932.5. Defendant violated these statutory code sections with misrepresentations and other misconduct designed to help its illicit foreclosure on Plaintiffs' home by trick and without valid authority. Based on the foregoing, it is clear Defendant violated these statutes enacted to prevent companies from engaging in misconduct that is "likely to deceive" members of the public. See, *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197. Therefore, Plaintiffs respectfully requests a preliminary injunction.

### 11. Defendant Fails to Address Plaintiff's Claim for Elder Abuse

Defendant has wholly failed to address this issue which is of vital Public Interest. Plaintiff is a senior living on a fixed income. Worlds Savings (Wells Fargo) took advantage of her age and engaged in predatory lending giving her a loan much larger than she initially sought and not disclosing that lower interest rates were available at the time of the loan. Moreover, Plaintiff was most likely available for a refinance or reverse mortgage which was never disclosed to Plaintiff.

### C. THE "BALANCE OF EQUITIES" STRONGLY FAVORS PLAINTIFF.

The interests protected by Plaintiff's request for a preliminary injunction are infinitely more important than Defendant's purported need to immediately foreclose.

On one hand, if this Court allows immediate sale of Plaintiff's home, she will immediately lose many important aspects of this case. Plaintiff's property is so unique that monetary damages can never restore the *status quo ante* (see above). Thus, once the sale occurs, Plaintiff can never truly win this case because her home cannot subsequently be recovered from a third-party bona fide purchaser for value. In short, Plaintiff will suffer devastating and irreparable harm absent a preliminary injunction.

Conversely, Defendant has nothing to lose. Judicially determined property rights will actually enhance Defendant's title and delayed sale will not cause economic harm. The current real estate market trends indicate that home equity will rise over time, so Defendant will likely make more money from a delayed sale. Based on the foregoing, the "balance of equities" tips sharply in favor of Plaintiff's request for a preliminary injunction, so Plaintiff respectfully requests issuance of the preliminary injunction needed to save his home.

**D. No Bond Should Be Required Because Plaintiff is Virtually Indigent, Defendants Risk No Real Harm in a *Rising Real Estate Market*, and Constitutional Due Process Mandates a Reasonable Relationship Between the Bond Amount and the Actual Risk of Damages.**

The Court may waive the bond if they find that the Plaintiff is indigent, and as such would be denied her right to the court. See, Code of Civil Procedure ("CCP") §995.240, which provides:

> **The court may, in its discretion, waive a provision for a bond** in an action or proceeding and make such orders as may be appropriate as if the bond were given**, if the court determines that the principal is unable to give the bond because the principal is indigent and is unable to obtain sufficient sureties**, whether personal or admitted surety insurers. In exercising its discretion the court shall take into consideration all factors it deems relevant, including but not limited to the character of the action or proceeding, the nature of the beneficiary, whether public or private, and the potential harm to the beneficiary if the provision for the bond is waived.

Based on the testimony that Plaintiff is prepared to provide at the hearing regarding her virtual indigence and living on a fixed income, waiver of the bond requirement is appropriate here because Defendant will not suffer any real damage from delay of sale ***in a rising market*** and it would be a denial of constitutional due process rights to require a bond that is excessively large or unrelated to any actual damages that might result from delayed sale of the security. *Lindsey v. Normet* (1972) 405 U.S. 56.

    **1. Alternatively, This Court Should Issue a Bond of <u>No More Than $1,322</u> Because That Statutorily Prescribed Amount is Presumptively Correct.**

Since Plaintiffs' unpaid principal loan is under $400,000 a total bond of $1,322[3] is the maximum bond to cover trustee and attorney fees under Civil Code §§2924c(c)-(d); 2924f(c)(5). These statutory amounts are *presumptively correct*, so the total bond cannot properly exceed

---

[3] Specifically, **$1,322.00** = $50 [single postponement fee per CC §2924c(c)], plus $50 [additional trustee fee per CC §2924f(c)(5)], plus $1222.00 [for the following amounts owed under CC §2924c(c)-(d): $250 (because the unpaid principal sum exceeds $150,000), plus $500 (0.005 x $100,000, i.e., between $50k & $150k), plus $472 (0.0025 x $188,569, i.e., principal amount between $150k & $500k), plus $0 (0.00125 x $0, i.e., principal amount above $500k).

$1,322. Accordingly, the excessive bond demanded by Defendants is not legally authorized and is otherwise patently unfair.

Dated: April 3, 2013
                                  LAW OFFICE OF VERNON BRADLEY

                                  Vernon Bradley,
                                  Attorney for Plaintiff