1   VERNON L. BRADLEY (SBN 49294)
    LAW OFFICES OF VERNON L. BRADLEY
2   Waldo Point Harbor
    54 Liberty Dock
3   Sausalito, California 94965-3106

4   Telephone:    (415) 331-4441
    Facsimile:    (415) 331-4443

5   Attorney for Plaintiff
    HEDDI LINDBERG
6

7

8                   UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

10

11  HEDDI LINDBERG,                         Case No.:   3:13-CV-0808-PJH

12         Plaintiff,                        **PLAINTIFF'S OPPOSITION TO
                                            DEFENDANT WELLS FARGO BANK,
13  v.                                      N.A.'S MOTION TO DISMISS;
                                            OBJECTIONS TO REQUEST FOR
14  WELLS FARGO BANK, N.A. A/K/A            JUDICIAL NOTICE**
    WACHOVIA MORTGAGE as successor by
15  merger with WORLD SAVINGS BANK,
    FSB; REGIONAL TRUSTEE SERVICES
16  CORPORATION, and DOES 1 through 50,     Date:   May 15, 2013
    inclusive, and all persons unknown, claiming   Time:   9:00 a.m.
17  any legal or equitable right, title, estate, lien,   Dept.:   Courtroom 3 – 3rd Floor
    or interest in the property described in the   Judge: Hon. Phyllis J. Hamilton
18  complaint adverse to Plaintiff's title, or any
    cloud on Plaintiff's title thereto, named as
19  DOES 51-100, inclusive,

20         Defendants.

21

22              I.      **INTRODUCTION AND STATEMENT OF FACTS**

23          Plaintiff is a 71 year old single woman and cancer survivor.  She spent years as an airline

24  attendant to save for her home and has lived in the home for the past several years.  Plaintiff has

25  paid the monthly mortgage on her property on time every month for years.  However, concerned

26  with her escalating mortgage payments as a result of the negative amortization of her loan and

27  living on a fixed income, Plaintiff contacted Wells Fargo for a loan modification.  Wells Fargo

- 1 -

makes a big deal that Plaintiff has not made a mortgage payment in "over a year" but what Wells Fargo conveniently ignores is that it was Wells Fargo representatives who instructed Plaintiff to stop making monthly mortgage payments in order to qualify for a loan modification in the first place.[1] The requirement that a borrower be 3 months delinquent to qualify for a government sponsored loan modification program (i.e., HAMP/MHA) is a fallacy and is really just used as a trap by the banks to initiate foreclosure of properties.

Plaintiff spent the next several months submitting and resubmitting her loan modification documents and speaking to countless representatives and agents of Wells Fargo. On October 22, 2012, Defendant Regional Trustee Services Corp. ("RTSC") recorded a Notice of Default (NOD) while Plaintiff was still in the loan modification review process and was still resubmitting the numerous loan modification documents. However, RTSC was **_not_** the trustee under the Deed of Trust at that time. On December 14, 2012, (nearly 2 months later) RTSC was substituted in as trustee. Plaintiff contends the substitution is therefore void and also fraudulent because it contains signatures of known "robo-signers." On January 23, 2013, RTSC recorded a Notice of Trustee Sale setting a sale for the property on February 13, 2013. The NOS was recorded 3 weeks after the new California Homeowners' Bill of Rights went into effect and while Plaintiff was still in the loan modification review process as evidenced by the letters dated in late January and early February 2013 from Wells Fargo. (Attached collectively as Exhibit F to the Complaint).

The "Homeowners' Bill of Rights," AB 278/SB 900, took effect on January 1, 2013, making California the first state to adopt into law the residential mortgage foreclosure reform principles outlined in the February 2012 **National Mortgage Servicing Settlement** with the nation's top five mortgage servicers, including Wells Fargo. The new law makes changes to nonjudicial foreclosure protocols for residential loans. The legislative purpose of the new statute included:

- California's housing crisis has had a devastating economic impact on the state and local governments;
- 900,000 completed foreclosures occurred between 2007-2011, during the time in which California's SB 1137 foreclosure reform (1.0) has been in place, and due to sunset January 1, 2013;
- Every foreclosure imposes on average $19,229 in costs on local governments;

---

[1] Assuming, argumendo, Defendant's calculations are correct it would be a year from this month.

- More than 2 million "underwater" mortgages remain in California. [2]

The main thrust of the statute is that a bank cannot record a Notice of Default until 30 days after initial contract is made to assess the borrower's financial situation and explore options for foreclosure avoidance.  The law prohibits "dual tracking" (i.e., a mortgage servicer, mortgagee, trustee, beneficiary or authorized agent may not record a Notice of Default (NOD) or a Notice of Sale (NOS), and may not conduct a nonjudicial foreclosure sale while (1) a *"complete" first lien loan modification application is pending,* (2) during any applicable appeal period following initial denial of the application, or (3) while the borrower is in compliance with an approved loan modification agreement.  [Civil Code §§ 2923.5, 2923.55, 2923.6, 2924.11, 2924.18].  Moreover, a nonjudicial foreclosure may not be initiated by anyone other than the *holder of a beneficial interest under the deed of trust*.  [Civil Code §2924(a)(6)].  *A borrower can seek a court injunction for a material violation of aforementioned provisions up until a foreclosure sale is completed*, and may seek attorney's fees.  [Civil Code §§ 2924.12(a), 2924.19(a)].

The new California Homeowners' Bill of Rights was enacted as a result of the subprime mortgage crisis the banks created, including World Savings (Wells Fargo).  It is important to note, that World Savings Bank (the original lender of Plaintiff's loan) engaged in perhaps the worst of the worst predatory lending practices of any of the major US banks from 1998 to 2008.  World Savings loans (similar to Plaintiff's loan) consisted of pick-a-pay loans with negative amortization reaching 125% of the original principal balance.  As home values dropped from the subprime mortgage crisis the banks created, properties with World Savings Bank loans have principal balances that just keep going up.  "No underwriting was given on these loans, the value of the properties and the promise and belief they would ever rise was the only consideration given to support the loan."[3]  The result is that millions of homeowners throughout the country are faced with foreclosure from the very same type of "liar loan" that is the subject of this lawsuit and several class action lawsuits throughout the country.   The fact is, Plaintiff detrimentally relied on the misrepresentations and fraud committed by Wells Fargo and is now faced with the loss of her home.  The unconverted fact supported by the

---

[2] *California Enacts "Homeowners' Bill of Rights," a Foreclosure Reform 2.0 Legislation Package (2012)* by Melissa Richards, CMB and Neil Rubenstein, Esq.

[3] Daniel Edstrom, "World Savings Bank, A Living Legacy of the Subprime Crisis." December 19, 2010.

Plaintiff's Opposition to Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss
US District Court – Northern California No. 3:13-CV-0808-JCS

overwhelming evidence is that the foreclosure initiated by Defendants is a fraud. Those claims are set forth clearly and concisely in the Complaint.

## II.    DEED OF TRUST

There is a dispute as to the real DOT.  Plaintiff submitted a DOT dated January 17, 2003 for the amount of $300,700.  Defendants sent to counsel for Plaintiff's a DOT recorded on March 12, 2007 in the amount of $475.000.  Defendant Wells Fargo has represented that this is the true DOT and counsel for Plaintiff amended the complaint to include this DOT on that representation.  But, Plaintiff does not have any recollection of refinancing her loan in 2007.  At that time, Plaintiff was being treated for cancer and was on disability income.  There is no way she would have qualified for a loan for $475,000.  It is apparent that further discovery, forensic analysis and expert witness investigation is necessary to determine which DOT is in issue.

## III.    LEGAL ANALYSIS

In determining whether a complaint states a claim upon which relief can be granted, courts accept the factual allegations in the compliant as true and construe them in the light most favorable to the plaintiff.  *Hill v. White* 321 F.3d 1334, 1335 (11th Cir. 2003).   To survive a motion to dismiss, a complaint must allege facts that, if true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quotations omitted).  A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claims.  *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).

Plaintiff alleges that Wells Fargo has no beneficial interest in the DOT but represented itself as the lender and proceeded to engage in loan modification fraud such as dual tracking unlawfully foreclosing on Plaintiff's home.  In recording the NOD, Wells Fargo did not purport to be acting as the agent for the holder of the note, but rather asserted that it was acting on its own behalf.  These allegations are sufficient to support claims related to the wrongful foreclosure. *Morgan v. Ocwen Loan Servicing LLC* 2011 U.S. District LEXIS 72669 (July 7, 2011) Case No. 1:10-cv-3555-HT (U.S. Dist. N.D. Georgia).  The overwhelming evidence is that Defendants violated the California Homeowners' Bill of Rights by setting a sale date of the property in February 2013 before Plaintiff completed the loan modification process.  This clear violation allows for damages and attorney fees.

- 4 -

IV.    **PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY HOLA**

Well Fargo's assertion that Plaintiff's claims are preempted by HOLA is just plain wrong. The "occupy the field" analysis has not been adopted by California.  In California, a number of cases hold that courts may uphold actions unless it specifically conflicts with an applicable federal statute or regulation.  *Fenning v. Glenfed* (1995) 40 Cal.App.4th 1285; *People ex rel Sepulveda v. Highland FS&L* (1993) 14 Cal.App.4th 1692; *Siegel v. American S&L* (1989) 210 Cal.App.3d 953 (held: actions for fraud are almost exclusively decided by state law and do not raise issues of great federal interest).

In California, the process of foreclosure is a matter of state real property law and therefore claims by borrowers related to the wrongful foreclosure of property are not preempted by HOLA. *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 214.  See also, *Osorio v. Wells Fargo Bank* (2012) WL 1909335 (N.D. Cal. May 24, 2012); *Pey v. Wachovia Mortg.* 2011 WL 5573894 (N.D. Cal. Nov. 15, 2011); *Shaterian v. Wells Fargo Bank* 2011 WL 2314151 (N.D. Cal. June 10, 2010). Moreover, "no consensus has emerged with respect to HOLA's reach" in cases involving claims of wrongful foreclosure.  *Dixon v. Wells Fargo Bank, N.A.* (D. Mass) No. 11-10368-WGY (July 22, 2011) (held: HOLA does not preempt claims of promissory estoppel related to promises made in the loan modification process citing with approval *DeLeon v. Wells Fargo Bank, N.A.* No. 10-cv-1390-LHK (N.D. Cal. January 28, 2011).  In *DeLeon,* the court held that HOLA does not preempt claims of intentional misrepresentation because it does "not attempt to impose substantive regulations regarding loan terms, disclosures or servicing or processing procedures." *Id.* *7.  HOLA claims also do not preempt fraud claims in California because those claims "arise from a more general duty not to misrepresent material facts" as opposed to regulate lender actions.  *Becker v. Wells Fargo, N.A.* 2110-cv-07799; 2011 WL 1103431 (E.D. Cal. March 22, 2011).  See also, *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208.

The crux of Plaintiff's claims in this action is that Defendant Wells Fargo has violated the California nonjudicial statutes and fraudulently represented itself as the lender of Plaintiff's loan. Wells Fargo proceeded to engaged in loan modification and dual tracking without authority in an effort to foreclose on Plaintiff's home and to reap the benefits of her equity.  These claims of fraud are the jurisdiction of California state law and do not conflict with any federal statute or regulation.

*Moreover, the Dodd-Frank Act does not allow HOLA preemption in wrongful foreclosure cases after July 2011*.  Based on the foregoing, Defendant's argument fails.

## V. <u>LEGAL ARGUMENT</u>

1. <u>**Defendants Committed Fraud, Deceit And All Of The Other Alleged Misconduct By Attempting To Unlawfully Foreclose On Plaintiff's Home Even Though Plaintiff Has Alleged Specific Facts Showing Defects in the Chain of Title that Deprive Defendants of Standing to Take Such Action.**</u>

A general demurrer to a declaratory relief claim **must be overruled as long as an actual controversy is alleged;** the pleader need not establish that it is also entitled to a favorable judgment. See *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 606 (**actual controversy allegation accepted as true**). Defendants exclusively base this aspect of the Motion to Dismiss on specious argument that Plaintiff has failed to set forth "specific facts" to support this cause of action.

As set forth in the complaint, shortly after Plaintiff entered into the Deed of Trust with World Savings, her loan was securitized and sold into a trust on Wall Street. World Savings is known to have created REMICs beginning in 1999 to 2008. A Real Estate Mortgage Investment Conduit (REMIC) is a complex pool of mortgage securities created for the purpose of acquiring collateral. This base is then divided into varying classes of securities backed by mortgages with different maturities and coupons. As a synthetic investment vehicle, REMICs consist of a fixed pool of mortgages broken apart and marketed to investors as individual securities. The World Savings REMIC transactions have the following structure:

- Originator: World Savings Bank;
- Master Servicer: World Savings Bank;
- Seller: World Savings Bank;
- Underwriter (Lead Manager): World Savings Bank;
- REMIC: World Savings Bank REMIC ##;
- Trustee: Either Deutsche Bank National Trust Company or the Bank of New York.

The information is seemingly impossible to locate because these are Rule 144/A securities meaning they are private transactions. Here is what the securities say: These securities will not be and have not been registered under the Securities Act of 1933 and may not be offered or sold in the

United States absent registration or an applicable exemption from registration requirements.  What is known is that many of the REMICs have been paid in full.

From that point on, the REMIC became the only true beneficiary under Plaintiff's Deed of Trust.  Thus, when Wells Fargo acquired Wachovia (d.b.a. World Savings) through a government-forced sale to avoid a failure of Wachovia in November 2009, the purchase could not have included the beneficial interest in Plaintiff's Deed of Trust as World Savings had already sold the beneficial interest in the loan two years prior, in 2007.  Since World Savings (Wachovia) no longer owned the beneficial interest in Plaintiff's Deed of Trust, it had nothing to convey to Defendant Wells Fargo and Defendant Wells Fargo is not the true beneficiary.  See, *Barrionuevo v. Chase Bank* (August 6, 2012) US District Court, N.D. California No. C-12-0572 EMC.  In *Barriomuevo,* the court found that Chase violated California Civil Code § 2932.5 "in that they have not 'recorded a document in the public chain of title reflecting from whom [they] acquired the beneficial interest in Plaintiffs' Deed of Trust,' as required by the statute. *Id.* *5 (citing with approval *Sacchi v. Mortgage Electronic Registration Systems, Inc.* No. CV-11-1658 AHM 2011 WL 2533029; *Javaheri v. J.P. Morgan Chase Bank, N.A.,* CV-10-08185 ODW FFMX 2011 WL 2173786; *Ohlendorf v. Am. Home Mortg. Servicing* 279 F.R.D. 575, 583 (E.D. 2010); *Robinson v. Countrywide Home Loans, Inc.* 199 Cal.App.42, 46 fn 5 (2011) – **enjoining a Trustee Sale where Plaintiff alleges that Defendant lacks standing to conduct a foreclosure sale.**

Wells Fargo does not dispute Plaintiff's claim that the note was securitized.  The only so-called evidence Defendant submits to establish that they are the current true owner of the loan is the purported merger acquisition of World Savings and Wells Fargo through the FDIC.  Regardless, of whether Wells Fargo acquired World Savings by merger or asset purchase (as Plaintiff claims) the overwhelming evidence is that the loan was sold to REMIC and was no longer an asset of World Savings at the time Wells Fargo acquired World Savings.

Since Plaintiff has properly alleged a "specific factual basis" for doubting Defendants' standing to foreclose, Defendants must show they actually have current authority to take such action. Furthermore, **the premise that the Legislature (supposedly) had not previously created a statutory right to challenge standing is no longer valid. This has changed effective January 1, 2013 in California because the Homeowners' Bill of Rights legislatively expressly requires a foreclosing entity to show it currently owns a beneficial interest in the note or has current authorization to proceed as an agent on behalf of the entity that owns that interest.** See Civ. C.

§ 2924(a)(6).  Defendant has failed to present competent evidence that it currently owns a beneficial interest in the note or has authorization to proceed.

Here, Plaintiff has set forth "plausible factual allegations" sufficient to state a claim for relief that is "plausible on its face."  *Ashcroft v. Iqbal* 566 U.S. 662 (2009) (held: "[A] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* At 665.  The Complaint sets forth *specific factual* allegations that Plaintiff's loan was securitized into a privately held REMIC after the close of the loan (either in 2004 or 2007) and that World Savings had divested itself of any beneficial interest in the note prior to a merger (or asset purchase) by Wells Fargo.  Those allegations are not disputed. For instance, there is no evidence whatsoever that Wells Fargo has "recorded a document in the public chain of title reflecting from whom [they] acquired the beneficial interest in Plaintiffs' Deed of Trust,' as required by the statute." ***Barrionuevo, supra***.   Wells Fargo's Motion to Dismiss must be denied because an "actual controversy" now exists because it is uncertain as to who is the *holder of the beneficial interest in the deed of trust*.

Moreover, the United State District Court, S.D. California, recently upheld a borrower's right to preemptively seek a judicial determination of defendants' purported standing to foreclose where a controversy existed regarding a fraudulent assignment of the note or deed.  *Johnson v. HSBC Bank USA, et al.* 3:11-cv-2091-JM-WVG decided on **March 19, 2012**; *Naranjo v. SBMC Mortgage, et al.* 11-cv-2229-L (WVG) decided on **July 24, 2012.**   In *Johnson,* plaintiff alleged that his loan was securitized and sold to various entities but not to the defendant that was conducting the foreclosure of the property.  Consequently, defendant was merely a "third-party stranger to the loan transaction" and had no standing to initiate non-judicial foreclosure because that process could only be initiated by the *current* "trustee, mortgagee, or beneficiary" pursuant to California Civ. Code §2924, et seq.  According to *Johnson,* the allegations as set forth in the complaint created an inference of fraud sufficient to support a cause of action for Declaratory Relief.

The cases cited by Defendants *Quintos, Alford, Neal, Gomes* and *Hafiz* are inapposite to the case at bar, decided well before *Johnson* and *Naranjo* and have been effectively overruled by the California Homeowner's Bill of Rights.  The *Naranjo* court distinguished *Gomes* holding that the role of the nominee (in *Gomes* the nominee was MERS) was "not central" to the allegations in the Complaint which were based on an improper transfer of the Note and Deed of Trust into a WaMu Trust.  "Thus Defendants consequently lack the legal right to either collect on the debt or enforce

the underlying security interest." *Id.* *8. This case is similar to *Naranjo* in that the role of the nominee is not central to Plaintiff's claims. Plaintiff alleges that the original lender World Savings sold her loan into a REMIC prior to the merger with Wells Fargo and, therefore, Wells Fargo could not have assumed her loan and has no authority to foreclose on the property.

Based on the foregoing, Plaintiff's cause of action for Declaratory Relief easily prevails.

2. **Plaintiff's Causes of Action for Intentional Infliction of Emotional Distress has a Substantial and Clear Likelihood of Success on its Merits.**

Defendant Wells Fargo does not make any argument for dismissal of Plaintiff's IIED claim except to assert that Wells Fargo has no duty to provide a loan modification. However, a Motion to Dismiss a claim for IIED cannot be granted where the defendant merely asserts a right to foreclose. *Morgan, supra,* *6. In this case, the conduct alleged was outrageous and encompassed intentional fraud, deceit, unfair business practices and other egregious behavior by Defendant's loan agents who claimed to be working with Plaintiff to help save her home with a loan modification, while secretly conniving to foreclose. The misconduct of Wells Fargo cannot be tolerated in our society and must be deemed even more despicable when perpetrated by a huge financial conglomerate against unsophisticated homeowners lured into a "confidential relationship" with false promises of help to escape foreclosure and other financial ruin, and other tricks to induce reliance upon the bankers' superior knowledge and expertise.

As described more fully in the Complaint, Plaintiff has suffered severe emotional distress as a direct and proximate result of Defendant's misconduct including depression and sleep deprivation. The economic impact of Defendant's misconduct also includes loss of credit rating, money paid to the wrong entity and attorney fees.

3. **Plaintiff's Cause of Action for Negligent Infliction of Emotional Distress and Cause of Action for Negligence Are Likely to Succeed on the Merits.**

For Plaintiff to succeed in suing for negligent infliction of emotional distress, there must be the traditional elements of negligence of duty, breach of duty, causation, and severe emotional distress. *Mercado v. Leong*, 43 Cal. App. 4th 317, 321-322 (3d Dist. 1996). Plaintiff's cause of action for negligence is sure to succeed (see below) and she suffered severe emotional distress as a proximate result (see below). The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, (3) proximate and legal causation, and (4) injury to plaintiff. *Mendoza v. City of Los Angeles,* 66 Cal.App.4th 1333, 1339 (1998).

Defendant participated in the financed enterprise **far beyond the domain of the usual money lender.**  See, *Wagner v. Benson* (1980) 101 Cal.App.3d 27, 35; *Nymark v. Heart Fed. Sav. & Loan Ass'n.* (1991) 231 Cal.App.3d 1089, 1095.  Moreover, the recent case of *Jolley v. Chase* A134019 establishes that where a loan modification review process is marred in fraud, Plaintiff may maintain a cause of action for negligence.  In *Jolley,* the court held that the general rule that a financial institution owes no duty of care does not apply when an institution exceeds the scope of a lender in a loan modification (citing with approval *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650).

In its JOLLEY opinion the Appellate Court heralds a new day for California Courts' consideration of properly documented "duty of care" allegations supporting claims for negligence and Breaches of the Covenants of Good Faith & Fair Dealings against mortgage lenders by borrowers under the recently-enacted Homeowner's Bill of Rights in this State:

> "***(T)he California Legislature has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost.***  (Civ. Code, Secs. 2923.5 & 2923.6). *****In short, these measures indicate that courts should not rely mechanically on the 'general rule' that lenders owe no duty of care to their borrowers. *** One of the targets of the legislation is a practice that has come to be known as 'dual tracking.'  When a borrower in default seeks a loan modification, the institution often continues to pursue foreclosure at the same time.  The result is that the borrower does not know where he or she stands….'Mortgage lenders call it 'dual tracking,' but for homeowners struggling to avoid foreclosure, it might go by another name:  the double-cross.'***"(citing references)**.**

The Court of Appeals concluded as to the Duty of Care/Negligence in JOLLEY on facts  applicable to those herein at the pleadings stage:

> "***We find support …in recent federal district court cases that have found a duty of care in particular circumstances surrounding loan modification negotiations*** (citing cases)**.  *** We conclude that the determination that Chase owed no duty to Jolley was error.  Thus the summary adjudication on the negligence cause of action must be reversed…*** (citing Laabs v So. Cal. Edison Co. (2009), 175 CCal.App.4th 1260, 1269 for the proposition that " … ***triable issues of fact exist as to the relevant considerations underlying duty in this case*** …").

Plaintiff's **Cause of Action for Negligence** is directly related to Wells Fargo's dual-tracking – proceeding on the foreclosure track while suppressing the material fact of its true intentions and failing to disclose them to Plaintiff.  As a consequence, Plaintiff suffered damages and lost

- 10 -

alternative options available to Plaintiff prior to the concealment and dual tracking.  Plaintiff was forced by the suppression to go through gyrations and jump through hoops to meet Wells Fargo's continuing accelerated demands and deadlines for production of documents and chasing after documents Wells Fargo has already in its possession, while Wells Fargo all along intended to foreclose and not modify her loan as it promised it would.

Moreover, *Johnson* and *Naranjo* is also instructive on the issue of Negligence holding that allegations that the bank did not have the legal authority to demand mortgage payments from the borrower because of an invalid assignment, the general rule shielding actual lenders from liability would not apply.  Again, the overwhelming evidence reveals that Defendant Wells Fargo is not the beneficial interest holder of the DOT and, therefore, has no authority to collect mortgage payments or foreclose on the property.

### 4.   Plaintiff's Cause of Action for Quiet Title Is Sufficient To State A Cause of Action.

Plaintiff has asserted a cause of action to Quiet Title.  In order to Quiet Title, Plaintiff must (1) file a verified complaint; (2) describe the property subject to the action; (3) state the title of the plaintiff seeking the determination; (4) state all claims adverse to the determination sought; (5) state the date for which the determination is sought; and (6) contain a prayer for the determination of plaintiff's title against the adverse claims.  California Code of Civil Procedure §761.020.

Plaintiff has met every element described above including a verified complaint.

### a.   Plaintiff Does Not Have To Tender Her Indebtedness to State a Claim for Quiet Title Because Plaintiff Disputes the Amount of Indebtedness, If Any, and Because Plaintiff Has Not Yet Been Foreclosed Upon.

Here, Plaintiff is not contesting the foreclosure since it has not yet occurred.  Rather, she is contesting Defendants' standing to foreclose at all.  Plaintiff does not have to tender her alleged indebtedness when a foreclosure is not being set aside.  Moreover, as set forth in the Complaint, Plaintiff is not in defaulted on her loan because the securitization process mutilated the assignments beyond recognition and the overwhelming evidence in the public domain is that the World Savings privately held REMICs have all been paid in full.  Taken in the light most favorable to Plaintiff, if her loan was an asset of a World Savings REMIC, it was not in default.

The Court in *Lona v. Citibank, N.A.* (2011) 202 Cal. App. 4th 89 at 112-113, 134 Cal. Rptr. 3d 622, 640-641, sets forth four exceptions to the "tender rule" to which Plaintiffs make reference. The *Lona* court determined that it would be improper to require the previous Trustor to tender if (1)

- 11 -

the attack was upon the validity of the debt; (2) in the face of a set off or counter claim; (3) when it would be inequitable to impose such a condition on the party challenging the sale and; (4) when the challenge is based in premised on an allegation that the deed is void.

Here, Plaintiffs allege that it is inequitable to require tender (3) and also the deed is void (4). It is inequitable to require tender because there the foreclosure sale was invalid based on facts that the loan was transferred into a securitized trust, it was paid off, and the now the true holder of the note is uncertain. When legal title has been acquired improperly, a myriad of remedies will be available and appropriate. *Newport v. Hatton*, (1925) 195 Cal. 132. These remedies may include: quieting title, cancellation, reconveyance, or establishing or enforcing trusts, or determining the priorities of opposing equities. See *De Leonis v. Hammel*, (1905) 1 Cal.App. 390; See, e.g., *Newport v. Hatton,* (1925) 195 Cal. 132, 153.

### 5. **Plaintiff's Causes of Action for Breach of Implied Covenant of Good Faith and Fair Dealing Is Likely to Succeed on the Merits.**

The only prerequisite for breach of implied covenant of good faith and fair dealing is the existence of a contract between the parties and a breach of the implied covenant. *Rai v. GMAC Mortgage.,* 2011 U.S. Dist. LEXIS 11497, pg 19 (N.D. Cal. Jan 31, 2011); citing *Smith v. City and County of San Francisco,* 225 Cal. App. 3d 38, 49 (1990).

Based on the foregoing, the parties indubitably had a valid contract subject to the implied covenant. Indeed, Defendant actively created a "confidential relationship." It is equally clear Defendant never exercised "good faith" and "fair dealing" in its conduct towards Plaintiff in the loan modification process. As set forth in the Complaint, concerned with the increasing principal balance due to the negative amortization and living on a fixed income, Plaintiff contacted Wells Fargo who represented themselves as the lender, to inquire about a loan modification. Wells Fargo representatives told Plaintiff that a modification would not be considered unless Plaintiff was in arrears on her mortgage payments. In reliance on this statement by Well Fargo, Plaintiff stopped making payments in hope of qualifying for a modification. This had the effect of destroying Plaintiff's credit and precluding her from exploring other refinancing options. However, what Plaintiff did not know was that the bank never had any intention of qualifying her for an affordable loan and was in the process of "dual tracking" the loan (i.e., leading the Plaintiff to believe that she would qualify for a loan modification when actually the bank had every intention to foreclose on the property.)

- 12 -

This dual tracking approach was expressly outlawed by the Comptroller of the Currency, under the division of the US Treasury Department, in a Consent Order issued on April 13, 2011 which ordered Wells Fargo, and several other banks to cease and desist their predatory lending practices including this dual track approach. (Attached Exhibit C to the Complaint).

Significantly, California Legislature passed groundbreaking foreclosure relief bills on July 2, 2012 (aka California Homeowner Bill of Rights).  The legislation bans banks from proceeding with a foreclosure when a homeowner is seeking a loan modification, a practice known as dual tracking. The Bill requires banks to provide struggling homeowners with a single point of contact at the bank; requires the banks to clearly explain to the borrowers why they are rejected for a loan modification; gives borrowers the right to sue the lender for "significant, material violations" of the law; and subjects the lenders to fines of $7,500 per loan for filing and recording unverified documents. All of the facts establish that Defendant was dual tracking post January 1, 2013 so any retroactivity issues are moot.  Based on the foregoing, this claim easily prevails.

**6.   Plaintiff's Fraud-Deceit Causes of Action Have Merit.**

**a. Fraud Claims**

A Fraud & Deceit cause of action requires 1) misrepresentation (false representation or concealment/nondisclosure of material fact), 2) knowledge of falsity (scienter), 3) intent to defraud (i.e., to induce action in reliance on the misrepresentation), 4) justifiable reliance, and 5) resulting damages from each of the Defendants. *Lazar v. Superior Court* (1996) 12 Cal.4th 631. The elements of negligent misrepresentation are the same except there is no requirement of scienter. *Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 184.

**Analysis:** Plaintiff's fraud and deceit claims contain adequate particularity to meet notice pleading standards. Plaintiff has **clearly alleged fraud claims based on attempts to foreclose without standing** (see above). Who (Wells Fargo and Regional Trustee Service Corporation), what (attempts to foreclose without standing and collect payments without any right thereto), when (since the recordation of the NOD), where (San Francisco County, California), how (recording a NOD and NOTS without standing and attempting to sell the Property at a trustee sale without any right to do so).

Regarding loan modification fraud, the relevant questions are answered as follows. **Who? -** Defendant's actual and/or ostensible agents that contacted Plaintiff during the relevant period. **What? -** Plaintiff has particularly pled the exact nature of the affirmative misrepresentations and

- 13 -

concealed facts including that Wells Fargo told Plaintiff to stop paying the mortgage in order to qualify for a loan modification and that there would be no foreclosure pending the outcome of the loan modification. **When?** - Beginning in April 2012, and continuing to the present, representatives of Wells Fargo made representations to Plaintiff that:

- The note secured by 1st deed of trust on the PROPERTY would be placed in the loan modification program;

- Defendant Wells Fargo told Plaintiff that she should stop making his mortgage payments in order for Defendants to qualify her for loan modification;

- Until the loan modification review process was completed a Trustee's Sale would not be conducted on the Property;

- The Loan Modification Agreement was not executed by Wells Fargo;

As a preliminary matter, Defendant's Opposition fails because the fraud and deceit claims were stated with adequate specificity. An exception to the strict pleading standard for fraud is recognized when it appears the facts lie more within Defendant's knowledge than Plaintiff's. *Committee on Children's Television, Inc. v. General Foods Corp.*, (1983) 35 Cal.3d. 197, 216. In that case, the California Supreme Court unequivocally held that:

certain exceptions . . . mitigate the rigor of the rule requiring specific pleading of fraud. Less specificity is required when "it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy," [citations]; "[e]ven under the strict rules of common law pleading, one of the canons was that less particularity is required when the facts lie more in the knowledge of the opposite party ...."

Consequently, a party is no longer required to plead with common law exactness, and less particularity is needed **where it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of controversy**. *Simons v. County of Kern*, (1965) 234 Cal.App.2d 362, 367; *Schessler v. Keck,* (1954) 125 Cal.App.2d 827, 835-836.

Fraud is sufficiently pled when the complaint sets out a representative selection of the alleged misrepresentations sufficient to permit the trial court to ascertain whether the statements were material and otherwise actionable. *Goldrich v. Natural Y Surgical Specialties, Inc.*, (1994) 25

- 14 -

Cal.App.4th 772, 782, citing *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 218.

Likewise, *Charpentier v. Los Angeles Rams Football Co.* (1999) 75 Cal. App. 4th 301, held that fraud was sufficiently pled against a corporate defendant with superior knowledge of the underlying facts, when Defendants "cannot persuasively complain it misunderstands the fraud claim made," **and discovery will allow the parties to find out more specifics about "who made the representations and by what means"** (emphasis added).

Defendant also actively concealed the true dangers of "strategic default" from Plaintiff and other clients so they would have an opportunity to collect **millions of dollars a month** in HAMP servicing money and to eventually foreclose after they had "bled" Plaintiff dry, e.g., through useless payments that would only increase Plaintiff's catastrophic equity losses after foreclosure. Since a three month default is necessary to buy real property out of the securitization process for "pennies on the dollar" and initiate foreclosure, there is strong ground to believe that goal was Defendant's true motive for making such misrepresentations.

Obviously, Plaintiff detrimentally relied upon these misrepresentations and concealment of the true facts regarding intentional default for the "trial modification" / HAMP qualification. Honestly, who would even *conceivably* have considered pursuing modification if Defendant had told Plaintiff and other clients the true facts, which were (1) that he would suffer foreclosure and catastrophic equity losses despite making good-faith trial modification payments, (2) that his credit rating would crash and burn so there would be no way to save the home via other means, (3) that the intentional default *prescribed by Defendant* would result in exorbitant and crippling penalties, fees, costs and other damages that would make it impossible to catch-up once Defendant "pulled the rug out from under her," slapped him with an outrageous bill for arrearages and penalties, and threatened immediate foreclosure for nonpayment, and (4) that costly litigation would be necessary to protect his rights, etc.

Defendant Wells Fargo had full knowledge of the falsity of said misrepresentations and of Plaintiff's actual and justifiable misapprehension and detriment of the true circumstances concealed by Defendant (i.e., scienter). Defendant Wells Fargo engaged in such misconduct with the intent to defraud Plaintiff (i.e., to induce action in reliance on the misrepresentations and concealment). Plaintiff justifiably relied on said misrepresentations and concealment and, as a proximate result, Plaintiff suffered damages from each of the Defendants. Thus, fraud and deceit

are clearly established here under all of the alleged theories. *Lazar v. Superior Court* (1996) 12 Cal.4th 631.  Fraud is a claim that commonly prevails in wrongful foreclosure cases because of the now very public and common knowledge of the banks fraudulent enterprise and the destruction of thousands of innocent and unsuspecting borrowers.

### b.   Negligent Misrepresentation

Plaintiff has already asserted facts and supporting case law that establish Defendant's duty of care (See above NIED and Negligence).   Further, The California Court of Appeals (4th Circuit) recently found that a valid cause of action for Negligent Misrepresentation exists where there are sufficient facts to support an inference that a borrower would may been able to pay the past due monthly payments but for the representations of bank agents who told a borrower to stop making monthly mortgage payments in order to qualify for a loan modification and that no payments could be made during the loan modification review process.  *Ragland v. U.S. Bank* (2012) Cal.App.4[th] 182, 147 Cal.Rptr.3d 41.  This case is virtually identical.

### 7.   Plaintiff's Promissory Estoppel Claim Prevails.

Promissory estoppel requires "(1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by the party's reliance." See, *Jolley, supra *25*.  See, also Aceves v. U.S. Bank, N.A. (2011) 192 Cal.App.4[th] 218, 255 and Garcia v. World Savings, FSB (2010) 183 Cal.App.4[th] 103 (finding promissory estoppel is supported by the fact that a bank breached their promise to delay the foreclosure process).

Defendant attack this claim for lack of a clear and unambiguous promise and on the preposterous contention that Defendant fulfilled their promises and/or Plaintiff's reliance was not justified, but these contentions are belied by the facts set forth above. Defendants, and each of them as co-conspirators, etc., made the clear and unambiguous promises set forth above; Plaintiff was justified in relying thereon (see duty analysis in Negligence section, above), and Defendants broke those promises to Plaintiff's detriment, i.e., Defendants never gave Plaintiff the promised modification with reasonable terms that could actually help Plaintiff save her home, which was always the promised result. Thus, this claim prevails.  The case of *Cabanillas v. Wachovia Mortg.* SACV 12-00228-CJC (C.D. Cal. March 20, 2012 is inapposite to the case at bar.  Moreover, the Jolley case is now the standard for review in California.  In *Cabanillas*, Plaintiffs claimed that the bank merely promise to consider and evaluate their modification request.  In this case, Plaintiff

claims that Wells Fargo promised not to foreclose on the property during the modification review but engaged in illegal dual tracking.

As set forth in the Complaint, and contrary to Defendant's specious argument, the facts of this case establish clearly that Plaintiff could have delayed the foreclosure process, pursued other strategies such as refinance (because of the equity in the home) or reversed mortgage (because of her age and no dependents) but World Savings (now Wells Fargo) took advantage of Plaintiff's age, gave her a loan with negative amortization that continued to increase each year despite the fact that Plaintiff was on a fixed income, misrepresented the loan modification process and foreclosed on her home even when Wells Fargo promised it would not foreclose on the home during the loan modification process. The elements of Promissory Estoppel have been satisfied sufficiently. Plaintiff would prefer not to dignify the incredible "say anything argument" that her position as not changed. She is facing being homeless in San Francisco, single, cancer survivor, at the age of 71, on a fixed income after spending years working as an airline attendant flying many of the same corporate executives around that now want to foreclose on her property.

**8. Plaintiff's Elder Abuse Claims are Sufficiently Pled.**

The California Attorney General's Office has issued a guide for "*financial elder abuse.*" In this guide, the Attorney General states: "*Financial elder abuse is the theft of money or property from an elder…it can be as simple as taking money from a wallet and as complex as manipulating a victim into turning over property to an abuser.*" The publication goes on to state: "*This form of abuse can be devastating because an elder victim's life saving can disappear in the blink of an eye, leaving then unable to provide for their needs and afraid of what an uncertain tomorrow will bring.*" The guide goes on to recognize certain "warning signs" which includes predatory lending. In the section discussing "Predatory Lending" the publication states:

> "*More than 80% of Americans aged 50 or older are homeowners. Elders are of the target of unscrupulous lenders who pressure then into high-interest rate loans that they may not be able to repay. Older homeowners are often persuaded to borrow money through home equity loans for home repairs, debt consolidation, or to pay health care costs. These loans are sold a "miracle financial care," and homeowners are devastated to find out they cannot afford to pay off the loans, and as a result, may lose their home. Often these are loans are packed with excessive fees, costly credit insurance, pre-payment penalties, and balloon payments.*"

Oddly, even the California Banker's Association discusses the concept of elder financial abuse by stating the "common elder abuse scenarios include obtaining money or property by undue influence, misrepresentation, or fraud…"[4]

Defendants violated the Elder Abuse Act (Welf. & Inst. §15600) in engaging in predatory lending and loan modification fraud.  Financial abuse of an elder or dependent adult occurs when a person or entity does any of the following: "Takes, secrets, appropriates, obtains, or retains real or personal property of an elder or dependent adult **for a wrongful use or with intent to defraud**, or both.  Welf. & Inst. §15610.30(a) [Emphasis added].  A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a **wrongful use** if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity **knew or should have known that this conduct is likely to be harmful to the elder or dependent adult**.  Welf. & Inst. §15610.30(b) ( [Emphasis added]. For purposes of this section, a person or entity takes, secrets, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult.  Welf. & Inst. §15610.30(c).

Undue influence consists of: (1) In the use, by one whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; (2) In taking an unfair advantage of another's weakness of mind; or (3) In taking a grossly oppressive and unfair advantage of another's necessities or distress.  Civ. Code §1575.

The clear and convincing evidence supports Plaintiff's claims that Wells Fargo is guilty of "reckless, oppression, fraud, or malice in the commission of abuse."  *Zimmer v. Nawabi* (2008) 556 F.Supp.2d 1025.  The Court in *Zimmer* held that a person or entity is deemed to have acted in bad faith if the person or entity knew or should have known that the elder had the right to have the property transferred or made readily available to the elder or to his representative.  Lastly, a person or entity should have known of such right "if, on the basis of the information received by the person or entity or the person or entity's authorized third party, or both, it is obvious to a reasonable person that the elder has such a right." The Court went on to state that: "Under

---

[4] The California Banker's website is www.calbankers.com.

- 18 -

California law, a mortgage loan broker acts in a fiduciary capacity that "not only imposes on him the duty of acting in the highest good faith toward his principal, but precludes the agent from obtaining any advantage over the principal. The duty obligates brokers to make a full and accurate disclosure of the terms of the loan to borrowers and always act in utmost good faith toward their principles." *Id.* at 1033. It is undisputed that Plaintiff was 65 or over at the time of the loan origination, that her loan was a "pick-a-pay" negative amortization loan with interest only payments reaching 125% of the original principal balance and that Plaintiff sought the loan as a result of medical expenses as result of her cancer treatment.

Moreover, Wells Fargo is foreclosing on Plaintiff's home rather than modifying her loan due to financial incentives often provided for in various pooling and service agreements. Wells Fargo (as successor by merger with World Savings) enjoyed making money off the servicing of this loan that is a product of elder abuse which includes a pay option ARM loan (Pick-A-Pay) negative amortization rate. There is a strong public policy argument to be made that a Court must step in and exercise its equitable powers to prevent a foreclosure where an elderly homeowner is about to be foreclosed upon and kicked out of their homes and thrust into an uncertain future.

California Business and Professions Code §17203 grants the Court the express authority, "as may be necessary to restore to any person in interest, any money or property, real or personal, which may have been acquired by means of such unfair competition." Where a violation of the California Elder abuse statutes can be shown, this violation can serve as an underlying violation sufficient for California Business and Professions Code §17200 purposes which profits acts of unfair competition such as violations of other statutes. The Court must maintain the status quo. The other option, of allowing the elderly victim to be kicked to the curb should not be permitted even where a subsequent lender claims it is a "holder in due course." The subsequent lender (Wells Fargo) created the market place for these type of loans and enjoyed the fruits of the poisonous tree. But for the secondary market purchases of these types of predatory loans - like Plaintiff's loan – the original lenders would not abuse California elderly homeowners who would have direct recourse against them. In *Hernandez v. Stabach* 145 Cal.App.3d 309, 193 Cal.Rptr. 350, the Court granted a preliminary injunction preventing Defendant (a landlord accused of retaliatory eviction – an "unfair" and "illegal" act under California Business and Professions Code § 17200 from filing an unlawful detainer action to evict the non-rent paying tenant until such time as the Defendant Landlord appeared in Superior Court and obtain leave by showing good cause

1  which would permit such unlawful detainer action citing California Business and Professions Code

2  §17203.  Therefore, this claim easily prevails.

3  **9.  <u>Wrongful Foreclosure</u>.**

   It is undisputed, that Defendants engaged in dual tracking.  Plaintiff's loan was in the review

4  process at the time Defendant recorded a Notice of Default.  However, the trustee of the DOT was

5  Golden West at the time the NOD was recorded.  A substitution of trustee for Defendant Regional

6  Trustee Services Corp. was not recorded until nearly 2 months later in December 2012.  Thereafter,

7  Defendants recorded a Notice of Trustee Sale on January 23, 2013 while a **loan modification was**

8  **pending** as evidenced by the letters from Wells Fargo to Plaintiff at the end of January 2013 and

   beginning of February 2013 requesting further documentation for the loan modification.  The

9  violation of the new California Homeowners' Bill of Rights is obvious on its face of the Complaint.

10   The new legislation set forth in pertinent part:

11   (a)   "California is still reeling from the economic impacts of a wave of residential
              property foreclosures that began in 2007.  From 2007 to 2011 alone, there were
12            over 900,000 completed foreclosure sales.  In 2011, 38 of the top 100 hardest hit
              zip code in the nation were in California, and the current wave of foreclosures
13            continues apace."

14   (b)   It is essential to the economic health of this state to mitigate the negative effects
              on the state and local economies and the housing market that are the result of
15            continued foreclosures by modifying the foreclosure process to ensure that
              borrowers who may qualify for a foreclosure alternative are considered for, and
16            have a meaningful opportunity to obtain, available loss mitigation options.  These
              changes to the state's foreclosure process are essential to ensure that the current
17            crisis is not worsened by unnecessarily adding foreclosed properties to the market
              when an alternative to foreclosure may be available.
18

19
        Defendant makes the specious claim that the new California Homeowner's Bill of Rights
20
   only applies to "natural persons" excluding loans made to trustees of revocable living trusts.  First,
21
   there is a dispute as to the true DOT.  (See, above).[5]   Second, there is no case law or authority cited
22
   by Defendants that revocable trusts are not natural persons.  Third, it is undisputed that Defendants
23
   are foreclosing and attempting to collect mortgage payments from Plaintiff and not the trust ***because***
24
   ***if the trust is revoked Wells Fargo would have no one to collect from***.  Finally, the new statute
25
   specifically excludes certain borrowers who have declared bankruptcy, surrendered the property or

26   _____

27   [5]  The DOT submitted by Plaintiff in the original complaint is "as an unmarried woman."

hired a third-party loan modification advisor and there is no exclusion for individuals who take loans related to a revocable trust.  The HBOR is completely silent on this issue.

Therefore, this claim easily prevails.

**10.  Plaintiff's Cause of Action for Violation of Business & Professions Code §17200 Is Sufficiently Pled**

Business and Professions Code §17200, et seq. ("Section 17200") prohibits any "unlawful, unfair or fraudulent business act or practice" and any "unfair, deceptive, untrue or misleading advertising." Statutory unfair competition extends to all unfair and deceptive business practices. A "fraudulent" activity includes any practice *likely to deceive* the public, even if no one is actually deceived. *Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d. 197, 209*. An unlawful activity includes any business practice that is forbidden by law (*Id*.), including anything prohibited by civil, criminal, federal, state, municipal, statutory, regulatory or court-made law (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832,839).

An "unfair" practice is one that offends established public policy; that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or that has an impact on the victim that outweighs defendant's reasons, justifications and motives for the practice. *Podolsky v. First Healthcare Corp*. (1996) 50 Cal.App.4th 632.  Unfairness is independently sufficient to state a claim. *Allied Grape Growers v. Bronco Wine Co*. (1988) 203 Cal.App.3d 432, 451.

**Analysis**: This claim is strong because Defendants committed fraud, deceit and other unconscionable misconduct to unlawfully foreclosure on Plaintiff's home and also unlawfully employed a "dual track" scheme (i.e., seeking foreclosure while pretending to help with a modification) in violation of dictates of the Comptroller of the Currency, a division of the United States Department of Treasury and the new California Homeowners' Bill of Rights. Defendants are also committing fraud and deceit to foreclose on the home without standing. Such conduct is also obviously unfair, fraudulent and unlawful under the foregoing authority.

**11.  Cancelation of Instruments**.

As set forth above, Defendants Wells Fargo and Regional Trustee Services recorded a Notice of Default on October 22, 2012.  However, the trustee under the DOT was Golden West Savings.  A substitution of trustee was not recorded until nearly 2 months later on December 14, 2012 making the NOD void.  Moreover, Plaintiff asserts that the substitution of trustee was signed by a known "robo-signer" and if a fraud.  Further, the Notice of Trustee Sale was recorded on January 23, 2013

- 21 -

1    while the loan modification was pending and Plaintiff contends that Defendants do not have the

2    beneficial interest in the loan and therefore cannot foreclose.  Therefore, the recorded instruments

3    are invalid, void, fraudulent and in violation of the new California Homeowners' Bill of Rights.

## VI. CONCLUSION

4         Based on the foregoing, Defendant's Motion to Dismiss should be overruled.  Alternatively,

5    Plaintiff should be allowed to amend the complaint.

6
      Date:   April 9, 2013                              Respectfully Submitted,

7

8                                                ___/Vernon L. Bradley/_____
9                                                 Vernon L. Bradley
                                                   Attorney for Plaintiff Heddi Lindberg
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Plaintiff's Opposition to Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss
US District Court – Northern California No. 3:13-CV-0808-JCS