Robert A. Bailey (# 214688)
  rbailey@afrct.com
Kenneth A. Franklin (# 143809)
  kfranklin@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN,
  CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Telephone: (626) 535-1900
Facsimile: (626) 577-7764

Attorneys for
WELLS FARGO BANK, N.A., successor by
merger with Wells Fargo Bank Southwest, N.A.,
f/k/a Wachovia Mortgage, FSB, f/k/a World
Savings Bank, FSB ("Wells Fargo")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND

| | |
|---|---|
| HEDDI LINDBERG,<br><br>             Plaintiff,<br><br>     v.<br><br>WELLS FARGO BANK, N.A., A/K/A WACHOVIA MORTGAGE as successor by merger with WORLD SAVINGS BANK, FSB; REGIONAL TRUSTEE SERVICES CORPORATION, and DOES 1 through 50, inclusive, and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title, or any cloud on Plaintiff's title thereto, named as DOES 51-100, inclusive,<br><br>             Defendants. | CASE NO.: 4:13-CV-0808-PJH<br><br>[The Honorable Phyllis J. Hamilton]<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED**<br><br>Date:    May 15, 2013<br>Time:   9:00 a.m.<br>Ctrm:    3, 3rd Floor |

**TO PLAINTIFF AND HER COUNSEL OF RECORD:**

/ / /

/ / /

/ / /

1. **PLAINTIFF'S CLAIMS ARE PREEMPTED BY HOLA**

A. **Plaintiff's Reliance On Pre-*Silvas* Cases Is Misplaced**

In an ill-conceived attempt to avoid preemption, plaintiff relies on outdated authority that does not reflect the current state of the law -- *Fenning v. Glenfed, Inc.* 40 Cal. App. 4th 1285 (1995), *People ex rel. Sepulveda v. Highland Fed. Sav. & Loan*, 14 Cal. App. 4th 1692 (1993), and *Siegel v. American Sav. & Loan Assn.,* 210 Cal. App. 3d 953 (1989) ) (Opposition ("Opp." 5:4-8.) First, this Court is not bound by state court decisions interpreting HOLA. *Settle v. World Sav. Bank, F.S.B.*, 2012 U.S. Dist. LEXIS 4215, *46-48, fn. 49 (C.D. Cal. Jan. 11, 2012). This "is not a question of interpreting state law, but rather a question of federal preemption." *Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064, 1074 (C.D. Cal. 2010) (holding that claim under Cal. Civ. Code § 2923.5 was preempted by HOLA and finding that it was not bound by state decision holding precisely the opposite).

Moreover, plaintiff's cited cases predate *Silvas*, and even predate the OTS' issuance of 12 C.F.R. § 560.2 ("effective Oct. 30, 1996"). These courts plainly could not follow the analysis that *Silvas* now requires. Further, *Sepulveda*, and *Siegel* are outdated because those courts began their analysis with the assumption that federal preemption was **disfavored**, and/or that a presumption existed **against** preemption. The Ninth Circuit has since rejected this notion, finding that HOLA preempted the "field" of lending by federal savings banks. *Silvas*, 514 F. 3d at 1005.

*Fenning* is easily distinguishable. The plaintiff challenged the bank's advertising and sales practices with respect to the sale of uninsured investment securities—**the alleged wrongdoing had nothing to do with the bank's lending activities**. If 12 C.F.R. § 560.2(b) had existed at the time, the court would have found that alleged conduct was unrelated to a subdivision (b) illustration, and thus, was not preempted by HOLA. Here, Wells Fargo has shown that plaintiff's claims—all arising out of lending activities - **are** related to one or more § 560.2(b) illustrations.

/ / /

/ / /

**B.  Plaintiff's Claims Are Primarily Note Ownership Claims And Not "Wrongful Foreclosure" Claims**

While plaintiff alleges that her claims are based upon "wrongful foreclosure" or fraud, it is clear that the FAC is primarily based upon allegation that Wells Fargo does not own the note. Plaintiff states "[t]he crux of Plaintiff's claims . . . is that Defendant Wells Fargo has violated the California nonjudicial statutes and fraudulently represented itself as the lender of Plaintiff's loan." (Opp.5:22-23.)

None of the cases cited by plaintiff stand for the proposition that note ownership claims survive HOLA preemption. Wells Fargo cited substantial authority that "note ownership" claims are preempted by HOLA. (MTD, FAC, Document no. 15, 4:9-26.)

**C.  HOLA's Field Preemption Continues To Apply Because This Loan Pre-Dates The Dodd-Frank Act, Which Is Not Retroactive**

HOLA's field preemption of state law claims continues to exist for loans pre-dating the 2010 Dodd-Frank Act ("Act").[1]  It is not retroactive, so the claims in this suit are subject to field preemption analysis of HOLA, and its well-established body of decisional law.  12 U.S.C. § 5553; *Molosky v. Washington Mut., Inc.,* 664 F.3d 109 (6th Cir. 2011), fn. 1 (holding that provision on preemption effective 7/21/11 had no retroactive effect, and was irrelevant to the appeal).  "[C]laims related to contracts formed prior to the enactment of Dodd-Frank are subject to the preemption analysis in effect at that time." *Settle v. World Savings Bank/Wachovia Mortgage/Wells Fargo Bank,* 2011 U.S. Dist. LEXIS 4215 (C.D. Cal. Jan. 11, 2012, Morrow, J), p. *45 (applied HOLA field preemption, not conflict analysis preemption, because loan contract pre-dated the Act; held that UCL claims over "unfair" loan modification processing and denial

---

[1] Dodd-Frank Wall Street Reform Act and Consumer Protection Act of 2010, Pub. Law. 111-203 § 1046 (July 21, 2010), codified at 12 U.S.C. § 1465 substitutes the National Bank Act's conflict preemption analysis for the HOLA's field preemption analysis only for loan contracts entered into after July 21, 2010.  The Act itself expressly provides against retroactive application of the change in preemption analysis. 12 U.S.C. § 5553 states: "This title . . . shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by the [OCC] or [OTS] regarding the applicability of State law under Federal banking law to any contract entered into on or before the date of enactment of this Act [enacted July 21, 2010], by national bank, Federal savings associations . . . ."

1  were preempted).  (The preemption of these claims would also occur under the National Bank

2  Act's ("NBA") conflict analysis, promulgated by the Office of Comptroller of the Currency

3  ("OCC"), had this loan been originated by a national bank).[2]  Thus, the customary HOLA field

---

[2] The OCC intended its adoption of certain HOLA preemptions to result in the same outcomes under the NBA's "conflict analysis" for residential mortgage lending.  In 2004 the OCC expanded the NBA preemptions to incorporate many of the HOLA preemptions regarding such lending, and did so verbatim with most.  According to the OCC, "[t]"he list is also substantially identical to the types of laws specified in a comparable regulation of the OTS. *See*, 12 C.F.R. 560.2(b)."  69 Federal Register 1904, 1911 (Jan. 13, 2004).  The OCC adds, "[t]he extent of Federal regulation and supervision of Federal savings associations under the Home Owners' Loan Act is substantially the same as for national banks under the national banking laws, a fact that warrants similar conclusions about the applicability of state laws to the conduct of the Federally authorized activities of both types of entities." *Id*. at p. 1912, n. 62.  Thus, the OCC expected and intended "similar conclusions" to result for NBA and HOLA preemptions for residential mortgage lending, because the preemptions were "substantially the same."  So, "conflict analysis" for preemption will generally result in the same outcome as the "field preemption" where the OCC borrowed from the HOLA.  And decisional law has been consistent with the OCC's intention.

The Ninth Circuit Court of Appeal has applied NBA preemptions to defeat loan origination claims in a manner comparable to its application of the HOLA preemption. *Martinez v. Wells Fargo Home Mortgage*, 598 F.3d 549, 556 (9th Cir. 2010), (underwriting based claims under the Cal. UCL, based on overcharged and undisclosed charges for underwriting of loan, as unfair conduct preempted by NBA 12 C.F.R. §§ 7.4002(b)(2) and 34.4(a)(9) & (10), and also as fraudulent conduct preempted by sub. (9) of § 34.4, so alleged unlawful conduct failed to state a claim). While the *Martinez* decision did not discuss the HOLA preemption, it dealt with NBA preemptions that are virtual duplicates of the corresponding HOLA preemptions in 12 C.F.R. § 560.2(b)(9) & (10) (disclosures and servicing, respectively).  Comparing the Ninth Circuit's decision in *Silvas v. E*Trade Mortgage Corp*., 514 F.2d 1001, 1006 (9th Cir. 2008) demonstrates that the outcome under those HOLA and NBA preemptions is the same.  *Silvas* held that that HOLA's 12 C.F.R. § 560.2(b)(9) defeated a Cal. UCL claim, a false advertising claim, and a common law fraud claim based on allegations of fraud and unfairness at loan origination and in loan disclosures.  That is what the *Martinez* decision did as well regarding the NBA's preemption on "disclosures" under 12 C.F.R. § 34.4(a)(9). (The only difference between the OCC's § 34.4(a)(9) and § 560.2(b)(9) is that the OCC omitted the reference to supplying credit reports, which is not relevant here).

In *Leyvas v. Bank of Am. Corp.* (In re *Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*), 601 F. Supp. 2d 1201, 1223 (S.D. Cal. 2009), the Court looked to HOLA preemption case law, and followed it, in holding that the NBA's 12 C.F.R. § 34.4(a)(9) preempted the UCL and False Advertising Act claims (Cal. Bus. & Prof. Code §§ 17200 and 17500, respectively).  That was proper because the NBA's § 34.4(a)(9) is nearly identical to the HOLA's § 560.2(b)(9) regarding disclosure and advertising. Likewise, in *Parmer v. Wachovia, now doing business as Wells Fargo Bank*, N.A., 2011 U.S. Dist. LEXIS 43866, p. *2 fn. 1 (N.D. Cal., April 22, 2011, Hamilton, J.) the Court put it this way: "To the extent that successor Wells Fargo's status as a national bank, rather than a federally chartered federal savings bank, is

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  preemption applies here to defeat these state law claims.

2  **2.   PLAINTIFF'S ARGUMENT REGARDING "SECURITIZATION" FAILS**

3  Plaintiff's baseless claim regarding an alleged assignment of the note to a REMIC fails.
4  (Opp. 66:11-7:2.)  In dismissing an almost identical claim the Court in *Hague v. Wells Fargo*
5  *Bank, N.A.*, 2011 U.S. Dist. LEXIS 140122, 13-14 (N.D. Cal. Dec. 6, 2011) stated "REMIC
6  securitization (as alleged by the *Hagues*) does not actually remove the property interest of the
7  party assigning the note . . . ." *See also*, *Lane v. Vitek Real Estate Industries Group*, 713
8  F.Supp.2d 1092, 1099 (E.D. Cal. 2010) ("the argument that parties lose their interest in a loan
9  when it is assigned to a trust pool has also been rejected by many district courts"); *In re Macklin*,
10 2011 WL 2015520, at *6 (Bankr. E.D. Cal. May 19, 2011) (finding that "the fact that the Note is
11 purchased  by entities which sell securities does not alter the Note"); *Wadhwa v. Aurora Loan*
12 *Servs.,LLC*, No. 11–1784, 2011 WL 2681483, at *4 (E.D. Cal. July 8, 2011) (rejecting  that
13 securitization, and assignment of the note to a REMIC invalidates interests other than the
14 borrower's); *Hafiz v. Greenpoint Mortg. Funding*, *Inc*., 652 F. Supp. 2d 1039, 1043(N.D. Cal.
15 2009) (rejecting argument that defendants' power of sale is lost by assignment of original
16 promissory note to a trust pool); *Benham v. Aurora Loan Servs*., 2009 WL 2880232, at *3 (N.D.
17 Cal. Sept. 1, 2009) (rejecting same argument regarding trust pool); *Reyes v. GMAC Mortg. LLC*,
18 No. 11–0100, 2011 WL 1322775, at *2 (D.  Apr. 5, 2011) (stating that "securitization of a loan
19 does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust").

20 Plaintiff's claim that "Wells Fargo does not dispute Plaintiff's claim that the note was
21 securitized" is pure fantasy.  (Opp. 7:16.)  Wells Fargo unequivocally assets that it owns the note
22 and has the right to foreclose.  (MTD, FAC, Document no. 15, 9:5-10:5.)

23 **3.   PLAINTIFF'S CLAIMS FAIL TO SATISFY THE RULE 8 STANDARD**

24 Plaintiff's reliance on *Barrionuevo v. Chase Bank, N.A.,* 885 F. Supp. 2d 964 (N.D. Cal.

---

27 deemed significant for purposes of preemption, it is sufficient to note that the preemptive scope of the National Bank Act ("NBA") - pursuant to which the Office of the Comptroller of the Currency ("OCC") is charged with supervision of national bank - and HOLA have the same effect."

1 2012) is misplaced. First, the plaintiff in *Barrionuevo* specifically alleged that the bank sold

2 Plaintiffs' Deed of Trust. *Id.* at 967. Moreover, *Barrionuevos* included detailed factual

3 allegation as to the securitization of the note and deed of trust and attached to the complaint a

4 report supporting the detailed allegations. Specifically, the court stated "In May of 2006, the

5 *Barrionuevos* allege that Washington Mutual "securitized and sold Plaintiffs' Deed of Trust to

6 the WMALT Series 2006-AR4 Trust," naming La Salle Bank as Trustee. Pls.' Am. Compl. ¶ 10.

7 In support of this allegation they point to a report prepared by Certified Forensic Loan Auditors,

8 which apparently reaches the same conclusion. *See*, Pls.' Am. Compl., Ex. A - Property

9 Securitization Analysis Report." *Id* at 967.

10 Here, plaintiff merely alleges "[o]n information and belief, plaintiff's deed of trust may

11 have been transferred through the secondary mortgage market in an attempt to securitize

12 Plaintiff's loan. (FAC ¶ 36.)[3] That plaintiff's claims are pure speculation is confirmed by

13 plaintiff's statement in the opposition that [t]he Complaint sets forth *specific factual* allegation

14 that Plaintiff's was securitized . . . .(either in 2004 or 2007) . . . ." (Opp. 8:5-8.) It speaks

15 volumes that plaintiff fails to cite to these "specific factual allegations" in the FAC. **The FAC**

16 **contains no factual allegations regarding that alleged securitization.** Moreover, the fact the

17 counsel claims that loan was securitized "either in 2004 or 2007" conclusively establishes that

18 the claim of securitization is pure speculation. Such unsupported speculation fails to meet the

19 plausibility requirements as set forth by the Supreme Court. *Bell Atlantic Corp. v. Twombly*, 550

20 U.S. 544, 570 (2007).

21 **4.    THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS**

22 Plaintiff fails to cite to any facts in the FAC that would support plaintiff's claim for

23 intentional infliction of emotional distress. Moreover, plaintiff's reliance on *Morgan v. Ocwen*

24 *Loan Servicing, LLC*, 795 F. Supp. 2d 1370, 1377 (N.D. Ga. 2011) is baffling. First, that case

25 appears to have been decided under Georgia law and is therefore irrelevant. Second, the *Morgan*

26

27 [3] In the Opp. plaintiff make vague references to the a generic REMIC. (Opp. 6:11-25.) This is inadequate. First, these claims are not contained in the FAC, but are merely counsel's argument.
28 Second, plaintiff's argument is pure speculation, unsupported by any factual allegations.

(left margin: ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP)

1  Court did not make any determination on the merits of the intentional infliction of emotional
2  distress claim. *Id*. at 1377.

### 5. THE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENCE CLAIMS FAIL FOR A LACK OF DUTY

It is well established that no duty of care exists with respect to the decision as to whether or not to lend and on what terms. *See*, *Nymark v. Heart Federal Savings Loan Assoc.*, 231 Cal. App 3d 1089, 1095 (1991). The loan application process is for the benefit of the lender in order to satisfy itself that making the loan is in its interests. *Id*. at 1096. A loan modification is no different since in essence, the borrower applicant is asking for a new or different loan. Just as with an origination, the application process is only for its benefit so that it is able to decide in its own interest whether or not to modify. No duty exists to the borrower applicant in this regard. *Eg*. *Hellbaum v. Lytton Sav. and Loan Ass'n of N. Cal*, 274 Cal. App. 3d 456, 459-60 (1969). Absent a duty of care there is no cause of action for negligence.

In her opposition the plaintiff cites the recent court of appeals decision in *Jolley v Chase Home Finance,* 213 Cal. App. 4th 872 (2013) for the proposition that a duty may exist in the context of a loan modification application. That case expressly did not abrogate the general rule that banks and their borrowers deal with each other at arm's length and that, in so far as the facts reflect that the institution's involvement does not exceed the scope of its role as a mere lender of money, no duty exists. *Jolley, supra* at 897. In *Jolley* the appellate court specifically noted that it was considering the conduct of a lender with respect to its handling of a construction loan as opposed to a residential home loan. The court went to some lengths to distinguish the two different scenarios where in the case of a home loan the relationship between bank and borrower, except for servicing issues, effectively ends when the loan funds but, in a construction loan, the relationship is ongoing in that the bank is called upon to make periodic disbursement of the loan funds over a period of time depending on the state of progress towards completion. *Id.* at 901. Nothing in plaintiff's opposition or the FAC itself offers any hint as to how Wells Fargo was acting as anything other than a money lender with respect to plaintiff's loan modification application. Reduced to its essence, plaintiff's objection is that he was not offered a

1 modification. Neither the opinion in *Jolley* nor any other case or statue imposes such a duty on a
2 lender.

3 In contrast with *Jolley*, there are no facts alleged that Wells Fargo was more than a mere
4 lender of money. Plaintiff's cites to no allegations for the FAC that would support any duty of
5 care. Instead, in the opposition plaintiff states, without any support, "Defendant participated in
6 the financed enterprise **far beyond the domain of the usual money lender.** (Opp. 10:1-2,
7 emphasis in original.) Plaintiff reliance on *Wagner v. Benson,* 101 Cal. App. 3d 27, (1980) is
8 misplaced. *Wagner* expressly held that liability to a borrower for negligence arises only when
9 the lender "actively participates" in the financed enterprise. *Id*. at 37. It is unclear how making
10 a residential loan and then considering a loan modification is active participation in a financed
11 enterprise, or beyond the role of a usual money lender.

### 6. TENDER IS NECESSARY TO QUIET TITLE

13 Plaintiff claims that tender is not necessary "because she is not in defaulted [sic] on her
14 loan because the securitization process . . . ." (Opp. 11:21.) This claim is wrong. It is
15 undisputed that plaintiff borrowed money and has not repaid the money. (FAC, Exhs. A and B.)
16 Since plaintiff seeks a determination that "title to the subject property be vested in the Plaintiff
17 alone . . . ." she must tender the outstanding debt. (FAC ¶ 61.) Moreover, it is not inequitable
18 for required plaintiff to pay the her substantial debt before quieting title to her the Property. Just
19 the opposite, equity requires that the debt be paid before title is cleared.

### 7. PLAINTIFF'S CLAIMS FOR FRAUD FAIL

21 Plaintiff's fraud claim is based on her flawed theory that Wells Fargo lacks standing to
22 foreclose. (Opp. 13:9-24.) There is no factual or legal basis for this claim. Even if plaintiff's
23 standing claim had merit, which it does not, a lack of standing to foreclose does not satisfy the
24 elements of fraud.

25 As set forth in the MTD, FAC (Document no. 15) plaintiff failed to allege facts necessary
26 to meet the Rule 9 standards. Instead of correcting the defect, plaintiff cites to California state
27 law cases to argue that she does not have to meet the fraud pleading requirements. First, those
28 state law cases apply only to unique circumstances, that are not present here. Wells Fargo does

1  not have superior knowledge as to the facts that support plaintiff's fraud claim.  Second,

2  California common law exceptions to pleading requirement under California state law do not

3  apply to the federal pleading requirement under Rule 9.

4  Moreover, plaintiff's fraud claims do not meet the Rule 8 standards.  Plaintiff's counsel

5  has fabricated a fanciful story that Wells Fargo encouraged plaintiff's default to "collect millions

6  of dollars a month in HAMP servicing money . . . . [and to]  'bled' plaintiff dry , e.g. through

7  useless payments . . . ."  (Opp. 15:7-10.)  This story makes no sense, is unsupported by any

8  factual allegation in the FAC and fails to meet the plausibility requirements as set forth by the

9  Supreme Court. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### 8.   PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS

11  Plaintiff alleges "[d]efendants never gave Plaintiff the promised modification with

12  reasonable terms that could actually help Plaintiff save her home, which was always the

13  promised result." (Opp. 16:22-24.)  First, the FAC never alleges that Wells Fargo promised a

14  loan modification.  Second, a loan modification "with reasonable terms" is too vague to be

15  considered a promise clear and unambiguous in its terms.  Nor could plaintiff reasonably rely on

16  a promised loan modification with no specific terms.

### 9.   PLAINTIFF'S ELDER ABUSE CLAIM FAILS

18  Plaintiff fails to provide any facts or legal analysis as to why plaintiff's elder abuse claim as

19  it relates to the loan origination is not barred by the statute of limitation.  This failure is an

20  admission that the claim is barred by the statute of limitations.

21  Plaintiff also fails to demonstrate how, in the loan process or the loan modification process,

22  any property was taken from plaintiff.  For this reason alone, the claim fails.

23  Plaintiff's reliance on *Zimmer v. Nawabi*, 566 F. Supp. 2d 1025 (E.D. Cal. 2008) is

24  misplaced. First, the defendant in *Zimmer* was a loan broker with a fiduciary duty to plaintiff.  A

25  lender has no such duty to its borrowers. *Perlas v. GMAC Mortg., LLC*, 187 Cal. App. 4th at 436

26  (2010).  Second, in *Zimmer*  the Court found that "Golden State received $ 10,700.00 in fees,

27  which it wrongfully obtained as a result of *Nawabi's* false statements about the terms of

28  plaintiff's refinance, which it knew were less favorable to plaintiff than her previous mortgage."

1  *Zimmer* at 1034.  Here there is no allegation that Wells Fargo obtained any of plaintiff's
2  property.

### 10. PLAINTIFF'S UNFAIR BUSINESS PRACTICES CLAIM

It is now clear that plaintiff's § 17200 claim is based solely on its other claims alleged in the FAC.  (Opp. 21:16-22.)  This fails for the reasons plaintiff other claims fail.

### 11. PLAINTIFF'S CLAIM FOR CANCELLATION OF INSTRUMENT FAILS

Plaintiff fails to explain how the notice of default is void and fails to address the law cited in the MTD, FAC (Document no. 15).  Instead, without any support, plaintiff asserts that the substitution of trustee was signed by a known "robo-signer."  (Opp. 21:25-27.)  This claim fails because it was not made in the FAC and because it fails to meet the Rule 8 standard.

### 12. CONCLUSION

For the foregoing reasons, Wells Fargo requests an order granting its motion to dismiss as to all claims without leave to amend.

Respectfully submitted,

Dated:  April 18, 2013

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By:  /s/ Kenneth A. Franklin
   Kenneth A. Franklin
   kfranklin@afrct.com
Attorneys for
WELLS FARGO BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB (sued erroneously as Wells Fargo Bank, N.A., a/k/a Wachovia Mortgage as successor by merger with World Savings Bank FSB) ("Wells Fargo")

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. RULES 9 AND 12(b)(6)**

on the interested parties in said case as follows:

**Served Electronically Via the Court's CM/ECF System**

| *Attorneys for Plaintiff:* | *Attorneys for Defendant:*<br>*Regional Trustee Services Corporation* |
|---|---|
| Vernon L. Bradley<br>Law Offices of Vernon L. Bradley<br>Waldo Point Harbor<br>54 Liberty Dock<br>Sausalito, CA  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<br><br>Tel: 415-331-4441<br>Fax: 415-331-4443 | Robin Prema Wright, Esq.<br>Nicole K. Neff, Esq.<br>WRIGHT, FINLAY & ZAK, LLP<br>4665 MacArthur Court, Suite 280<br>Newport Beach, CA  92660<br><br>Tel:   (949) 477-5050<br>Fax:  (949) 477-9200<br>*rwright@wrightlegal.net*<br>*nneff@wrightlegal.net* |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on April 18, 2013.

| Leslie Coumans | */s/ Leslie Coumans* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |

93000/FR0813/00622363-1

CASE NO. 4:13-CV-0808-PJH
CERTIFICATE OF SERVICE