1   Robert A. Bailey (# 214688)
      rbailey@afrct.com
2   Kenneth A. Franklin (# 143809)
      kfranklin@afrct.com
3   Yaw-Jiun (Gene) Wu (# 228240)
      gwu@afrct.com
4   ANGLIN, FLEWELLING, RASMUSSEN,
      CAMPBELL & TRYTTEN LLP
5   199 South Los Robles Avenue, Suite 600
    Pasadena, California 91101-2459
6   Telephone:  (626) 535-1900
    Facsimile:  (626) 577-7764
7
    Attorneys for
8   WELLS FARGO BANK, N.A., successor by
    merger with Wells Fargo Bank Southwest, N.A.,
9   f/k/a Wachovia Mortgage, FSB, f/k/a World
    Savings Bank, FSB (sued erroneously as Wells
10  Fargo Bank, N.A., a/k/a Wachovia Mortgage as
    successor by merger with World Savings Bank
11  FSB) ("Wells Fargo")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| 14 | |
| 15   HEDDI LINDBERG, | CASE NO.: 4:13-CV-0808-PJH |
| 16              Plaintiff, | [The Honorable Phyllis J. Hamilton] |
| 17       v. | |
| 18   WELLS FARGO BANK, N.A., A/K/A | **WELLS FARGO'S OPPOSITION TO** |
|     WACHOVIA MORTGAGE as successor by | **PLAINTIFF'S MOTION TO REMAND** |
| 19   merger with WORLD SAVINGS BANK, FSB; | |
|     REGIONAL TRUSTEE SERVICES | |
| 20   CORPORATION, and DOES 1 through 50, | Date:       June 12, 2013 |
|     inclusive, and all persons unknown, claiming | Time:       9:00 a.m. |
| 21   any legal or equitable right, title, estate, lien, or | Ctrm:       3, 3rd Floor |
|     interest in the property described in the | |
| 22   complaint adverse to Plaintiff's title, or any | |
|     cloud on Plaintiff's title thereto, named as | |
| 23   DOES 51-100, inclusive, | |
| 24              Defendants. | |

25          Defendant Wells Fargo Bank, N.A., successor by merger with Wells Fargo Bank

26   Southwest, N.A. formerly known as Wachovia Mortgage, FSB, formerly known as World

27   Savings Bank, FSB ("Wells Fargo") respectfully submits this opposition to plaintiff's motion to

28   remand to state court.

1

2

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

2.    THE AMOUNT IN CONTROVERSY FAR EXCEEDS $75,000....................................2

3.    A NATIONAL BANK'S PRINCIPAL PLACE OF BUSINESS IS *NOT* THE MEASURE OF ITS CITIZENSHIP ........................................................................4

4.    A NATIONAL BANK IS A CITIZEN OF THE STATE WHERE ITS MAIN OFFICE IS LOCATED, AS DESIGNATED IN ITS ARTICLES OF ASSOCIATION ........................................................................................................6

5.    THE GREAT WEIGHT OF POST-*SCHMIDT* AUTHORITIES UNANIMOUSLY REJECT APPLICATION OF THE PPB TEST IN 28 U.S.C. § 1348........................................................................................................................7

6.    ANY RELIANCE ON *AMERICAN SURETY* IS MISPLACED  FOR SEVERAL REASONS .........................................................................................................9

    A.    *American Surety* Likely Used The "Principal Place Of Business" Phrase As A Convenient Substitute For "State Of Incorporation," Adding Nothing To *Schmidt* ....................................................................................................9

    B.    If *American Surety* Used "Principal Place Of Business" As A Distinct Concept, Then It Is "Clearly Irreconcilable" With Supreme Court Precedent........................................................................................................11

    C.    American Surety, From A Completely Different Era, Decided Only The Branch Office Question ....................................................................................13

7.    UNLIKE *WMR*, NEITHER *FIRSTAR* NOR *HORTON* DECIDED THE PPB QUESTION CURRENTLY PRESENTED....................................................................14

8.    THE STATUTORY HISTORY OF 28 U.S.C. § 1348 DOES NOT CALL FOR PRECISE JURISDICTIONAL PARITY ........................................................................15

    A.    Imperfect Parity Would Not Be An "Anomalous Result" Under *Schmidt* ............16

9.    APPLYING THE PPB TEST REQUIRES AN ACT OF CONGRESS ..........................17

10.   CONCLUSION.....................................................................................................19

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4
*Am. Sur. Co. v. Bank of Ca.,*
   133 F.2d 160 (9th Cir. 1943) .........................................................................................10, 13

5

6
*American Surety Co. v. Bank of Cal.,*
   133 F2d 160 (9th Cir. 1943) ("*American Surety*") ......................................................... passim

7

8
*American Surety v. Bank of Cal.,*
   44 F. Supp. 81 (D. Or. 1941) .........................................................................................13

9
*Atienza v. Wells Fargo Bank, N.A.,*
   2011 U.S. Dist. LEXIS 1738 (N.D. Cal. Jan. 4, 2011) ...............................................4

10

11
*Black & White Taxicab v. Brown & Yellow Taxicab,*
   276 U.S. 518 (1928)........................................................................................................11

12

13
*Cabriales v. Aurora Loan Servs.,*
   2010 U.S. Dist. LEXIS 24726 (N.D. Cal. 2010) ........................................................3

14
*Cal. ex rel Bates v. Mortg. Electronic Registration System, Inc.,*
   2010 U.S. Dist. LEXIS 81650 (E.D. Cal. July 21, 2010) .......................................1, 2

15

16
*Cal. ex rel. Bates v. Mortgage Elec. Registration Sys.,*
   694 F.3d 1076 (9th Cir 2012) .....................................................................................1, 2

17

18
*Carden v. Arkoma Associates,*
   494 U.S. 185 (1990)........................................................................................................18

19
*DeLeon v. Wells Fargo Bank,*
   729 F. Supp. 2d 1119 (N.D. Cal. Jun. 9, 2010)................................................. passim

20

21
*Excelsior Funds, Inc. v. J.P. Morgan Chase Bank, N.A.,*
   470 F. Supp. 2d 312 (S.D.N.Y. 2006)......................................................................7, 8, 9

22
*Ferrell v. Express Check Advance of SC, LLC,*
   591 F.3d 698 (4th Cir. 2010) .........................................................................................18

23

24
*Firstar Bank, N.A. v. Faul,*
   253 F.3d 982 (7th Cir. 2001) ................................................................................. passim

25

26
*Flores v. Wells Fargo Bank,*
   2012 U.S. Dist. LEXIS 32648 (N.D. Cal. Mar. 12, 2012)............................4, 12, 17

27
*Garfinkle v. Wells Fargo Bank,*
   483 F.2d 1074 (9th Cir. 1973) .....................................................................................4

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Giordano v. Wachovia Mortgage, FSB,*
    2010 U.S. Dist. LEXIS 136284 (N.D. Cal. Dec. 14, 2010) (Fogel, J.) ..................................... 4

*Hargrow v. Wells Fargo Bank N.A.,*
    491 F. App'x 534 (6th Cir. 2012) .......................................................................................... 2

*Harvey v. Grey Wolf Drilling Co.,*
    542 F.3d 1077 (5th Cir. 2008) ............................................................................................. 18

*Hertz v. Friend,*
    130 S. Ct. 1181 (2010) .................................................................................................... 9, 10

*Hicklin Eng'g, l.c. v. Bartell,*
    439 F.3d 346 (7th Cir. 2006) ............................................................................................... 14

*Horton v. Bank One, N.A.,*
    387 F.3d 426 (5th Cir. 2004) ........................................................................................ passim

*Johnson v. Columbia Properties Anchorage, LP,*
    437 F.3d 894 (9th Cir. 2006) ............................................................................................... 18

*Kelton Arms Condos v. Homestead Ins. Co.,*
    346 F.3d 1190 (9th Cir. 2003) ............................................................................................... 9

*Kim v. Wells Fargo Bank, N.A.,*
    2012 U.S. Dist. LEXIS 108596 (N.D. Cal. Aug. 2, 2012) ............................................... 1, 12

*Lowdermilk v. U.S. Bank, N.A.,*
    479 F.3d 994 (9th Cir. 2007) ................................................................................................. 9

*McKenna v. Wells Fargo Bank, N.A.,*
    693 F.3d 207 (1st Cir. 2012) ................................................................................................. 2

*Mfrs. & Traders Trust Co. v. HSBC Bank U.S.A., N.A.,*
    564 F. Supp. 2d 261 (S.D.N.Y. 2008) ................................................................................... 8

*Miller v. Gammie,*
    335 F.3d 889 (9th Cir. 2003) ............................................................................................... 11

*Mireles v. Wells Fargo Bank, N.A.,*
    845 F. Supp. 2d 1034 (N.D. Cal. 2012) ......................................................................... passim

*Miss. Pub. Corp. v. Murphree,*
    326 U.S. 438 (1946) ............................................................................................... 5, 11, 12

*Moreno v. Wells Fargo Bank,*
    2011 U.S. Dist. LEXIS 146195 (N.D. Cal. Dec. 21, 2011) ............................................... 4, 8

*Nguyen v. Wells Fargo Bank,*
    749 F. Supp. 2d 1022 (N.D. Cal. Oct. 25, 2010) ............................................................. 4, 8

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Peralta v. Countrywide Home Loans, Inc.*,
   2009 U.S. Dist. LEXIS 112387 (N.D. Cal. Nov. 16, 2009)....................................1, 5

*Reyes v. Wells Fargo Bank, N.A.*,
   2010 U.S. Dist. LEXIS 113821 (N.D. Cal. 2010) ...................................................2

*Rieger v. Wells Fargo*,
   2013 U.S. Dist. LEXIS 58232 (N.D. Cal. April 23, 2013)......................................3, 4

*Sami v. Wells Fargo Bank*,
   2012 U.S. Dist. LEXIS 38466 (N.D. Cal. Mar. 21, 2012).......................................4, 8

*Southern Ry. Co. v. Allison*,
   190 U.S. 326, 23 S. Ct. 713, 47 L. Ed. 1078.......................................................10

*St. Louis & San Francisco Ry. Co. v. James*,
   161 U.S. 545, 16 S. Ct. 621, 40 L. Ed. 802..........................................................10

*Tse v. Wells Fargo Bank, N.A.*,
   2011 U.S. Dist. LEXIS 6796 (N.D. Cal. Jan. 19, 2011) ........................................4, 7

*United States v. Castillo*,
   496 F.3d 947 (9th Cir. 2007) (en banc) ...............................................................2

*United States v. Perlaza*,
   439 F.3d 1149 (9th Cir. 2006) ..........................................................................15

*Valenzuela v. Wells Fargo Bank, N.A.*,
   2013 U.S. Dist. LEXIS 6608 (C.D. Cal. Jan. 15, 2013) .........................................7

*Wachovia Bank v. Schmidt*,
   546 U.S. 303 (2006) ("*Schmidt*")............................................................. passim

*Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*,
   653 F.3d 702, 710 (8th Cir. 2011) ............................................................. passim

**FEDERAL STATUTES**

12 U.S.C. § 1-216(d)........................................................................................18

12 U.S.C. § 22.................................................................................................11

12 U.S.C. § 36(g)(3)(B)...........................................................................6, 12, 15

28 U.S.C. § 1332...........................................................................................2, 18

28 U.S.C. § 1332(a)(1).......................................................................................2

28 U.S.C. § 1332(c)(1)............................................................................. passim

28 U.S.C. § 1332(c)(10)....................................................................................18

28 U.S.C. § 1332(d)(10) ..................................................................................18

28 U.S.C. § 1348 ................................................................................... passim

28 U.S.C. § 1331 ....................................................................................4

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  

**MEMORANDUM OF POINTS AND AUTHORITIES**

2  

**1.   INTRODUCTION**

3       This action, originally filed in the California Superior Court for the County of San

4   Francisco, was removed to this Court on February 21, 2013 based on diversity jurisdiction.

5   (Document no. 1.)  After receiving an unfavorable ruling from this Court on April 22, 2013 on

6   her request for a preliminary injunction, plaintiff now seeks to remand this action.  (Document

7   no. 27.)  The motion for remand is baseless.  Plaintiff mistakenly argues that Wells Fargo is a

8   citizen of California alleging that its "main office" is located San Francisco.  Plaintiff also argues

9   that, notwithstanding her claim that the $475,000 deed of trust is invalid, there is not $75,000 in

10   controversy.

11       This very Court has already address the identical citizenship issues raised by plaintiff and

12   concluded that "for the purposes of diversity jurisdiction, a national bank is a citizen of the state

13   in which its main office is located as specified in its articles of association."  *Peralta v.*

14   *Countrywide Home Loans, Inc.,* Case No. , 2009 U.S. Dist. LEXIS 112387, 2009 WL 3837235,

15   *4-5 (N.D. Cal. Nov. 16, 2009. )[1]

16       Relying in part on this Court decision in *Peralta,* ***every court*** in the Northern District has

17   held that Wells Fargo's citizenship depended only on its main office, and not its principal place

18   of business ("PPB") and the Wells Fargo is not a citizen of California.  *See e.g., DeLeon v. Wells*

19   *Fargo Bank,* 729 F. Supp. 2d 1119, 1123-24 (N.D. Cal. Jun. 9, 2010) (Fogel, J.); *Kim v. Wells*

20   *Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 108596, *8-9 (N.D. Cal. Aug. 2, 2012) (Davila, J.)

21   (rejecting many of the same cases cited by plaintiff).

22       Just last year, the Ninth Circuit implicitly affirmed Wells Fargo's exclusive citizenship in

23   South Dakota.  *Cal. ex rel. Bates v. Mortgage Elec. Registration Sys.*, 694 F.3d 1076, 1080 (9th

24   Cir 2012).  Before the underlying District Court in *Bates* (*Cal. ex rel Bates v. Mortg. Electronic*

25   *Registration System, Inc.,* 2010 U.S. Dist. LEXIS 81650 (E.D. Cal. July 21, 2010)), the plaintiff

26   moved to remand, asserting that Wells Fargo Bank, N.A., was a California citizen and that both

27  

28   [1] It is undisputed that Sioux Falls, South Dakota is the main office set forth in Wells Fargo's articles of association.  (Document no. 1, Exh. E.)

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   he and the State of California, real party in interest, destroyed diversity. *Id.,* at *2-3. The

2   District Court denied plaintiff's motion to remand on both grounds. *Id.* at *4. The plaintiff

3   subsequently appealed the dismissal of the action and the District Court's denial of his remand

4   motion with regards to the State of California. *Bates*, 694 F.3d 1076 (9th Cir 2012). The Ninth

5   Circuit upheld diversity jurisdiction and the resulting District Court judgment. *Id.* at 1080. If

6   *American Surety, infra*, had applied, the Ninth Circuit would have been compelled to dismiss for

7   lack of jurisdiction, as the citizenship of Wells Fargo was discussed in the same order from

8   which the plaintiff appealed. *See, United States v. Castillo*, 496 F.3d 947, 952 (9th Cir. 2007)

9   (en banc) ("defects in our subject-matter jurisdiction go to the inherent power of the court and

10   cannot be waived or forfeited."). In upholding diversity jurisdiction, the Ninth Circuit thereby

11   found by implication that Wells Fargo is a citizen only of South Dakota. *See also*, *McKenna v.*

12   *Wells Fargo Bank, N.A.*, 693 F.3d 207, 212 (1st Cir. 2012) ("Well Fargo, a national bank, is a

13   citizen of the state where it is 'located,' 28 U.S.C. § 1348; this is 'the State designated in its

14   articles of association as its main office,' [*Schmidt*, 546 U.S. at 318]; and Wells Fargo is a citizen

15   of South Dakota for diversity purposes.") (no mention of PPB test); *accord Hargrow v. Wells*

16   *Fargo Bank N.A.*, 491 F. App'x 534, 536 (6th Cir. 2012) (non-precedential).

## 2.   THE AMOUNT IN CONTROVERSY FAR EXCEEDS $75,000

18   Plaintiff argues that the $75,000 amount in controversy requirement has not been met

19   because "the complaint does not set forth a specific amount in controversy . . . ." and that she

20   does not "state certain claims equal or exceed $75,000." Plaintiff, however ignores the law

21   regarding declaratory and injunctive relief.

22   For a federal court to have subject matter jurisdiction under Section 1332, "the matter in

23   controversy [must] exceed[] the sum or value of $75,000, exclusive of interest and costs, and

24   [be] between citizens of different States." 28 U.S.C. § 1332(a)(1). However, "'[i]n actions

25   seeking declaratory or injunctive relief, it is well established that the amount in controversy is

26   measured by the value of the object of the litigation.' 'If the primary purpose of a lawsuit is to

27   enjoin a bank from selling or transferring property, then the property is the object of the

28   litigation.'" *Reyes v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 113821, at *12-13 (N.D.

1   Cal. 2010) (Spero, M.J.) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347

2   (1977); *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973)); *accord Rieger v.*

3   *Wells Fargo*, 2013 U.S. Dist. LEXIS 58232, *10 (N.D. Cal. April 23, 2013) (Corley, M.J.)

4   ("Because this case arises from Plaintiff's default on a loan of $525,000.00 [cite], the $75,000

5   amount in controversy requirement is satisfied.").

6       Plaintiff unquestionably seeks to invalidate the deed of trust and further seeks a

7   determination that her debt to Wells Fargo is invalid.  Specifically, plaintiff "seeks a declaration

8   of title, that the title to the subject property be vested in Plaintiff alone, and that the Defendants

9   declared to have no equitable interest, rights or title in the subject property and that each of them

10  be forever enjoined from asserting any estate, title, or interest in the subject property adverse to

11  Plaintiff herein."  (Comp. ¶ 61; FAC ¶ 61.)  Plaintiff further claims that:  (1) the deed of trust is

12  ineffective (Comp. ¶ 36, FAC ¶ 36); (2) Defendants do not have legal authority to foreclose

13  (Comp. ¶ 38, FAC ¶ 38); (3) that there is no holder in due course of the mortgage (Comp. ¶ 60,

14  FAC ¶ 60); and (4) defendants actions "deny the mortgage holder the right to foreclose or even

15  asset that they have a mortgage on the subject property (Comp. ¶ 65, FAC ¶ 65).  Simply put,

16  plaintiff seeks to invalidate Wells Fargo's $475,000 lien on the property.

17      In the present case plaintiff obtained a loan of $475,000 (the "Loan") secured by a deed

18  of trust recorded against real property located at 3 Summit Street, San Francisco, California. (the

19  "Property").  (A copy of the deed of trust is attached to the Request for Judicial Notice ("RJN")

20  as Exh. A; FAC, Exh. A.)  The current unpaid Loan balance exceeds $531,195.49.  (Declaration

21  of Michael Dolan at ¶ 12 and Exh. 1 thereto.)  Moreover, the value of the Property is $565,000.

22  (*Id*. at ¶ 13 and Exh. 2 thereto.)

23      Plaintiff's claims, if accepted, would wipe out Wells Fargo's security interest in the

24  Property.  The complaint and the FAC unquestionably involve a dispute in excess of $75,000.

25      In *Cabriales v. Aurora Loan Servs.*, 2010 U.S. Dist. LEXIS 24726 (N.D. Cal. 2010)

26  (James, M.J.), the Court held that the amount of the loan is a distinct factor in determining

27  whether the amount in controversy has been met, even ***prior*** to a trustee's sale, when the plaintiff

28  sought to enjoin the sale of the property.  *Id.*, at *8-10.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    In *Garfinkle*, *supra*, the plaintiffs challenged the lawfulness of the non-judicial

2    foreclosure procedure and sought an injunction prohibiting the bank from selling the property.

3    483 F.2d at 1076.  The Ninth Circuit held that, in determining that a "minimum in controversy"

4    threshold of $10,000 had been reached for then 28 USC § 1331, "the whole purpose of this

5    action is to foreclose the Bank from selling this property in the manner contemplated.  Based on

6    these facts, this Court has no difficulty finding that the matter in controversy has a value in

7    excess of $10,000, exclusive of interest and costs." *Id.*

8    Here, plaintiff's loan was for $475,000.00, easily meeting the jurisdictional threshold.

9    **3.    A NATIONAL BANK'S PRINCIPAL PLACE OF BUSINESS IS *NOT* THE**

10   **MEASURE OF ITS CITIZENSHIP**

11   The citizenship of a national bank is governed by 28 U.S.C. § 1348, which was enacted in

12   1948 and remains unchanged.  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 311-12 (2006)

13   ("*Schmidt*").  The second paragraph of Section 1348 governs citizenship: "All national banking

14   associations shall, for the purposes of all other actions by or against them, be deemed citizens of

15   the States in which they are respectively ***located***." (emphasis added).

16   The basis for plaintiff's claimed that national banks are citizens of both the location of

17   their main office and their PPB is unclear.  Presumably, plaintiff is relying on *American Surety*

18   *Co. v. Bank of Cal.*, 133 F2d 160, 162 (9th Cir. 1943) ("*American Surety*").

19   ***All*** post-*Schmidt* decisions from ***this district*** have uniformly rejected the proposition that

20   citizens of a national bank is both the location of their main office and their PPB. *DeLeon*,

21   *supra; Nguyen v. Wells Fargo Bank*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. Oct. 25, 2010)

22   (LaPorte, M.J.); *Rieger v. Wells Fargo Bank*, 2013 U.S. Dist. LEXIS 58232 (N.D. Cal. Apr. 23,

23   2013) (Corley, M.J.); *Sami v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 38466 (N.D. Cal. Mar.

24   21, 2012) (Ryu, M.J.); *Flores v. Wells Fargo Bank,* 2012 U.S. Dist. LEXIS 32648 (N.D. Cal.

25   Mar. 12, 2012) (Corley, M.J.);  *Moreno v. Wells Fargo Bank*, 2011 U.S. Dist. LEXIS 146195

26   (N.D. Cal. Dec. 21, 2011) (LaPorte, M.J.); *Tse v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist.

27   LEXIS 6796 (N.D. Cal. Jan. 19, 2011) (Henderson, J.); *Atienza v. Wells Fargo Bank, N.A.*, 2011

28   U.S. Dist. LEXIS 1738 (N.D. Cal. Jan. 4, 2011) (Seeborg, J.); *Giordano v. Wachovia Mortgage,*

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  *FSB*, 2010 U.S. Dist. LEXIS 136284 (N.D. Cal. Dec. 14, 2010) (Fogel, J.); *Peralta v.*

2  *Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 112387 (N.D. Cal. Nov. 16, 2009)

3  (Hamilton, J.).

4       The Eighth Circuit, in *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC* , ruled upon the exact

5  issue under consideration, rejected applying the PPB test to 28 U.S.C. § 1348 because that test of

6  citizenship did not exist until 10 years after the enactment of Section 1348.  653 F.3d 702, 710

7  (8th Cir. 2011) ("*WMR*").

8       *American Surety*, is not controlling because *American Surety* held that the "citizenship of

9  a corporation is fixed by its principal place of business."  However, the PPB test for citizenship

10  did not come about until 1958, fifteen years after *American Surety* was decided.  As detailed

11  below, *American Surety* was possibly using PPB as convenient shorthand for the state of

12  incorporation, in which case it adds nothing to *Schmidt*.

13       On the other hand, if *American Surety* was using the PPB as a separate and distinct test

14  for citizenship, albeit for corporations, then it is "clearly irreconcilable" with long standing

15  Supreme Court precedent.  *See e.g., Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 442, n.2 (1946)

16  ("For purposes of jurisdiction a corporation is a citizen or resident ***only*** of the state of its

17  organization.") (emphasis added).

18       Furthermore, the pre-*Schmidt* Circuit decisions relied on by the dissent in *WMR* (*Firstar*

19  *Bank, N.A. v. Faul*, 253 F.3d 982, 994 (7th Cir. 2001) and *Horton v. Bank One, N.A.*, 387 F.3d

20  426, 436 (5th Cir. 2004)), as well as *American Surety, supra*, were actually deciding whether a

21  ***branch*** office should be used for citizenship.  As detailed below, this was the exact factual

22  situation in *Schmidt*.  If even the Supreme Court could not reach the PPB issue under the exact

23  circumstances, then those earlier Circuit decisions could not possibly be precedential on the PPB

24  issue today.

25       Finally, consistent with its constitutional mandate on diversity jurisdiction, Congress has

26  applied the PPB test to limited liability companies, but only for class action lawsuits.  Yet it has

27  refused to do so for national banks.  Notably, the Supreme Court has refused to apply the PPB

28  test to non-corporations, instead leaving that decision to Congress.  For all the foregoing reasons,

1    Wells Fargo respectfully submits the PPB test does not apply.

2    **4.    A NATIONAL BANK IS A CITIZEN OF THE STATE WHERE ITS MAIN OFFICE**

3    **IS LOCATED, AS DESIGNATED IN ITS ARTICLES OF ASSOCIATION**

4        The citizenship of a national bank is governed by 28 U.S.C. § 1348, which was enacted in

5    1948 and remains unchanged.  *Schmidt*, 546 U.S. at 311-312.  The second paragraph of

6    Section 1348 governs citizenship:  "All national banking associations shall, for the purposes of

7    all other actions by or against them, be deemed citizens of the States in which they are

8    respectively *located*."  (emphasis added).

9        In *Schmidt*, the Supreme Court construed the term "located" in Section 1348, and it

10   concluded that, for purposes of that section, "a national bank . . . is a citizen of the State in which

11   its *main office*, as set forth in its articles of association, is located."  *Id.* at 307 (emphasis added).

12   The "main office" is where a national bank's "operations of discount and deposit are to be

13   carried out." *Id.* at 307, n.1.

14       In this case, Wells Fargo Bank, N.A.'s articles of association evidence that its main office

15   is located in Sioux Falls, South Dakota, and accordingly, it is a citizen of only South Dakota.

16   *See* Not. of Removal, Ex. D, p. 64 (Arts. of Ass'n at § II.1.)  (Document no. 1.)

17       Under Section 1348 and *Schmidt*, the main office *must* be used to assess citizenship, and

18   Wells Fargo is clearly a citizen of South Dakota.  The importance of this is apparent in the

19   context of *American Surety*, which did not address even the potential use of the main office test.

20       In fact, *Schmidt* itself expressed skepticism for including the PPB test.  The Court

21   considered expanding the definition of "located" to include a bank's PPB, but did *not* do so.

22   *Schmidt*, 546 U.S. at 315 and n.8.  First, the Court pointed out that, unlike PPB, "main office"

23   and "located" are linked by statute.  *Id.* at 307, n.1 ("The State in which the main office is

24   located qualifies as the bank's 'home State' under the banking laws.  12 U.S.C. § 36(g)(3)(B).").

25   For the Court's reference, 12 U.S.C. § 36(g)(3)(B) reads: "**(B) Home State** [¶] The term 'home

26   State' means the State in which the main office of a national bank is located."  (bold in original).

27           Section 1348 states that a national banking association is a citizen of the
             state in which it is "located."  12 U.S.C. § 36(g)(3)(B) states that a "'home
28           State' means the State in which the main office of a national bank is
             located."  ***The statutes thus link a national bank's main office, home***

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*state, and location*.  No similar statute links a national bank to a principal place of business.  A statute does link corporations to their principal places of business, however.  *See* 28 U.S.C. § 1332(c)(1).  Removal jurisdiction is governed by statute.  *See* 28 U.S.C. §1441.  The Court may not impose a test for which there is no statutory basis.

*Valenzuela v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 6608, at *4-5 (C.D. Cal. Jan. 15, 2013) (Phillips, J.) (emphasis added).

Next, the Supreme Court contrasted the language of the statute governing citizenship of corporations (28 U.S.C. § 1332(c)(1)) with the "counterpart" statute governing the citizenship of national banks (28 U.S.C. § 1348), and it pointedly observed that while Section 1332(c)(1) prescribed that a corporation is a citizen of **both** its "state of incorporation *and* where it has its principal place of business," Section 1348 contained **no reference** to a bank's PPB.  546 U.S. at 317, n.9 (italics in original).

Published cases uniformly agree that in footnote 9 of *Schmidt,* the Supreme Court disapproved of including the PPB test in Section 1348, and that it was not instructing the lower courts to apply the PPB test to create jurisdictional parity with corporations, something that the Supreme Court could have done itself.  "[T]he fairest reading of footnote nine is that the Supreme Court **expressed skepticism** over whether the term 'locate' in §1348 included a national bank's 'principal place of business,' in view of the absence of such term in the statute." *Excelsior Funds, Inc. v. J.P. Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312, 317 (S.D.N.Y. 2006) (emphasis added).  "Moreover, in footnote 9, the Court recognized the imperfect parity between corporations and national banks."  *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1123 (N.D. Cal. 2010); *accord WMR*, 653 F.3d at 708 (citing *Excelsior's* reading of footnote 9 with approval); *see also, Tse v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 6796, *5-6 (N.D. Cal. Jan. 19, 2011) ("Footnote nine seems to accept that in a small number of cases, the fact that corporations and national banks live by different citizenship rules will have some practical significance, **however scant**.") (emphasis added).

**5.   THE GREAT WEIGHT OF POST-*SCHMIDT* AUTHORITIES UNANIMOUSLY REJECT APPLICATION OF THE PPB TEST IN 28 U.S.C. § 1348**

While *Schmidt* did not actually decide whether the PPB test should be used in

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

conjunction with the main office test, the *Schmidt* Court did express doubt on adopting the PPB as an additional test. Importantly, the great weight of the decisions interpreting *Schmidt*, especially the published cases have rejected including the PPB test as an additional test for citizenship.

In 2011, the Eighth Circuit in *WMR* rejected including the PPB test in Section 1348, because that test was not a test for citizenship until 1958, ten years after Section 1348 was enacted:

> In 1948, when Congress last amended § 1348, it had not yet created principal-place-of-business citizenship. At that time the term "located" referred to the state in which the national bank had its main office, as designated by its articles of association. Moreover, when Congress introduced principal-place-of-business citizenship for state banks and corporations in § 1332(c)(1), it made no reference to jurisdictional parity, nor to national banks or § 1348. And nothing in §1348 indicates that it would incorporate by reference any subsequent change in the statutes governing jurisdiction over state banks and corporations. These circumstances strongly suggest that, with the passage of § 1332(c)(1), Congress reconfigured the jurisdictional landscape of state banks and state corporations, but left that of national banks ***undisturbed***. [¶¶]
>
> Had Congress wished to retain jurisdictional parity in 1958, it could have unequivocally done so. It did not, and consequently the concept no longer applies. Whether it ought to be revived is a policy question for Congress, not the federal courts. We will not import a jurisdictional concept into § 1348 that was ***unknown*** at the time of its adoption. Accordingly, we hold that, pursuant to § 1348, a national bank is a citizen ***only*** of the state in which its main office is located.

653 F.3d 702 at 708 (emphases added); *Moreno*, *supra*, 2011 U.S. Dist. LEXIS 146195 (N.D. Cal. 2011); *Sami*, *supra*, 2012 U.S. Dist. LEXIS 38466 (N.D. Cal. 2012) (both following *WMR*).

Even before *WMR*, the published District Court decisions all agreed that a national bank is only a citizen where it has its "main office" – South Dakota in the case of Wells Fargo. *Excelsior Funds*, 470 F. Supp. 2d at 320 (applying the PPB test to § 1348 was not possible because PPB did not exist when § 1348 was adopted); *DeLeon*, 729 F. Supp. 2d at 1124 ("Wells Fargo is not a citizen of California…. Consequently, the court concludes that Wells Fargo is a citizen of the state in which its main office, as specified in its articles of association, is located"); *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d at 1028 (N.D. Cal. 2010) ("Wells Fargo is a citizen of South Dakota for purposes of diversity."); *Mfrs. & Traders Trust Co. v. HSBC Bank*

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  *U.S.A., N.A.*, 564 F. Supp. 2d 261, 263 (S.D.N.Y. 2008) (following *Excelsior*).

2  　　　　Although the Ninth Circuit has not yet explicitly decided the issue since *Schmidt*, it

3  would likely not include the PPB test in light of *Schmidt*:  "Defendant [U.S. Bank] is a citizen of

4  Ohio because its main office is located in that state . . . ."  *Lowdermilk v. U.S. Bank, N.A.*,

5  479 F.3d 994, 997 (9th Cir. 2007) (emphasis added) (citing *Schmidt*, 546 U.S. at 305-

6  07).  Importantly, *Lowdermilk* did not even consider U.S. Bank's PPB.

7  　　　　Wells Fargo respectfully requests this Court follow the great weight of published

8  decisions (as well as the unanimous decisions of the Northern District) on this issue.  In

9  particular, *WMR* should be followed for the sake of uniformity, as it is the highest post-*Schmidt*

10  decision on this issue to date.  *See, Hertz v. Friend*, 130 S. Ct. 1181, 1192-93 (2010) (uniform

11  interpretation of jurisdictional statute preferred).  Departing from *WMR* would create a circuit

12  split of authority, a highly disfavored outcome.  *Kelton Arms Condos v. Homestead Ins. Co.*, 346

13  F.3d 1190, 1192 (9th Cir. 2003) ("We recognize that procedural rules are best applied uniformly,

14  and we decline to create a circuit split unless there is a compelling reason to do so.").  Moreover,

15  a circuit split would also create the odd situation where Wells Fargo's citizenship would depend

16  on *where* it is being sued.

17  　　　　　　**6.**　　**ANY RELIANCE ON *AMERICAN SURETY* IS MISPLACED**

18  　　　　　　　　　　**FOR SEVERAL REASONS**

19  　　　　When placed in its 1943 context, *American Surety*'s use of the PPB language was either

20  as a convenient substitute for the state of incorporation (in which case it adds nothing to

21  *Schmidt*), or if not as a substitute, then totally in conflict with Supreme Court jurisprudence.  In

22  fact, not even *Firstar* and *Horton* used *American Surety* to find two-state citizenship for a

23  national bank.

24  **A.**　　***American Surety* Likely Used The "Principal Place Of Business" Phrase As A**

25  　　　　**Convenient Substitute For "State Of Incorporation," Adding Nothing To *Schmidt***

26  　　　　Under the predecessor statute to Section 1348, from 1911, *American Surety* held:

27  　　　　　　No case defining "located," in this connection, has come to our attention.
　　　　　　The quotation from the cited [predecessor] section reveals a departure
28  　　　　　　from the old rule that the incorporation of national banking associations
　　　　　　under the laws of the United States is a basis for federal jurisdiction.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

[citation]  There would appear to be a close analogy between such a bank and a corporation national in scope.  The citizenship of a corporation is fixed by its principal place of business, a rule which prevails even though it extends its field of endeavor into other states under the sanction of the laws of such other states.  *St. Louis & San Francisco Ry. Co. v. James,* 161 U.S. 545, 16 S. Ct. 621, 40 L. Ed. 802 [(1896)]; *Southern Ry. Co. v. Allison,* 190 U.S. 326, 23 S. Ct. 713, 47 L. Ed. 1078 [(1903)].  In addition, a logical interpretation of the phraseology of 28 U.S.C. § 41(16) leads to the conclusion that the "States in which [national banking associations] are respectively located" are those states in which their principal places of business are maintained.

*American Surety*, 133 F.2d at 161-62.  The 1911 version of Section 1348 was substantively similar to the current version.  *See Schmidt*, at 312, n.6.

Perhaps most puzzling is *American Surety*'s statement, made in 1943, that the "citizenship of a corporation is fixed by its principal place of business."  133 F.2d at 161.  Taken at face value, this is clearly a misstatement of the law.

In *Hertz v. Friend*, 130 S. Ct. 1181 (2010), the Supreme Court undertook an extensive historical analysis of the origins of the citizenship of state-chartered corporations and found that from 1854 to 1957, corporations were only citizens of their state of incorporation.  *Hertz*, 130 S. Ct. at 1189-90.  It was not until 1958 that the PPB test for corporations was created purely by statute.  *Id.* at 1190 ("[I]n 1958, Congress both codified the courts' traditional place of incorporation test and ***also*** enacted into law …[the] 'principal place of business' language.") (emphasis added); *accord Schmidt*, at 306 ("A business organized as a corporation, for diversity jurisdiction purposes, is 'deemed to be a citizen of any State by which it has been incorporated' and, ***since 1958***, also 'of the State where it has its principal place of business.' § 1332(c)(1).") (emphasis added).

That the Ninth Circuit must have been using the PPB language as a shorthand is bolstered by the fact that the two cases cited by *American Surety* for citizenship, *St Louis & San Francisco Ry. Co.,* 161 U.S. 545 (1896)*,* and *Southern Ry. Co. v. Allison,* 190 U.S. 326 (1903), both held that the state of incorporation was the state of citizenship.

In fact, as recently as 1928, only fifteen years before *American Surety*, the Supreme Court held that the state of incorporation was the test for citizenship, even if it appeared that the corporation had purposefully incorporated in a state different from which they did business to

take advantage of diversity jurisdiction. *Black & White Taxicab v. Brown & Yellow Taxicab*, 276 U.S. 518, 524 (1928) ("In these circumstance, courts will not inquire into motives when deciding concerning their jurisdiction.").

Given the state of case law in 1943, it does not seem reasonable that the Ninth Circuit would have committed such clear error on this settled point of law. Therefore, *American Surety*, placed in its proper historical context, was likely using the "principal place of business" phrase merely as a convenient substituted for state of incorporation.

Naturally, because national banks are federally chartered, they do not have, strictly speaking, a "state of incorporation." "The best analog to [the state of incorporation] is the state designated in a national bank's articles of association as the location of its main office." *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1061 (N.D. Cal. 2012) (Morrow, J.); *accord Firstar*, 253 F.3d at 993-94 ("While a national bank is not incorporated in a state, the organization certificate described in 12 U.S.C. § 22 serves a function similar to a certificate of incorporation.").

This reading of *American Surety*, which Wells Fargo submits is the proper one, adds nothing to *Schmidt*. Since the Ninth Circuit likely meant to say "state of incorporation" when it used the "principal place of business" phrase, as discussed above, *American Surety* does not provide an additional basis for citizenship.

**B.     If *American Surety* Used "Principal Place Of Business" As A Distinct Concept, Then It Is "Clearly Irreconcilable" With Supreme Court Precedent**

However, if *American Surety* used the "principal place of business" phrase as separate and distinct from state of incorporation, then it was almost immediately abrogated in 1946 (if it was ever valid) when the Supreme Court held: "For purposes of jurisdiction a corporation is a citizen or resident ***only*** of the state of its organization." *Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 442, n.2 (1946) (emphasis added). *Murphree* makes *American Surety* "clearly irreconcilable" on the citizenship issue and thereby abrogating the latter. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (where "clearly irreconcilable," intervening Supreme Court authority implicitly overrules prior Ninth Circuit decision).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    Also, it is important to note that *Schmidt*'s mention of the PPB test was ***always together***

2    ***with*** the main office test.  546 U.S. at 317, 318 n.8 & n.9.  However, in 1943, because neither

3    interstate banking (*id.* at 307, n.2) nor two-state citizenship even for corporations were allowed

4    (*id.* at 306), *American Surety*'s use of PPB (unless as a substitute for state of incorporation or

5    main office) must have meant PPB as the only test for citizenship.  Indeed, *American Surety* does

6    not discuss the possibility of using the main office test.

7    In this second scenario, *American Surety* has also been abrogated by *Schmidt*, which

8    mandated that the main office test must be used.  *Schmidt*, 546 U.S.at 307, 318.  Just recently,

9    the Court in *Flores* held exactly that:

10    **B.  *Schmidt* Abrogated American *Surety***
      **\* \* \* [¶]**

11

12    *American Surety* cannot be reconciled with the Supreme Court's decision
      in *Schmidt*.  The *American Surety* court held that "[t]he trial court was

13    right in holding that defendant is a citizen *only* of the state in which its
      principal place of business is located, the State of California." 133 F.2d at

14    162 (emphasis added).  In other words, *American Surety* held that the
      principal place of business rule is the exclusive test for citizenship of

15    national banks for diversity jurisdiction purposes.  In *Schmidt*, in contrast,
      the Supreme Court interpreted the same word—"located"—to mean that a

16    national bank is a citizen of the state in which its main office, as set out in
      its articles of association, is located.  546 U.S. at 307.  Thus, *Schmidt*
      conflicts with *American Surety*.

17

18    *Flores*, 2012 U.S. Dist. LEXIS 32648 at \*6, 7; *see also*, *Kim v. Wells Fargo Bank*, 2012 U.S.

19    Dist. LEXIS 108596, \*9-10 (N.D. Cal. Aug. 2, 2012) ("Because *American Surety* left no room

20    for another basis of citizenship, including that promulgated by the Supreme Court, *American*

21    *Surety* conflicts with *Schmidt* in such a way that harmonization of the two is impossible.  The

22    reasoning of those courts that have attempted to do so is unpersuasive.").

23    *Flores* also pointed out that among the many uses of the word "located" in the National

24    Bank Act, none of those uses refers to the PPB, counseling against including PPB in the meaning

25    of "located."  *Id*. 2012 U.S. Dist. LEXIS 32648 at \*6.  In fact, as briefed above, part of the

26    National Bank Act (at Section 36(g)(3)(B)) actually links "main office" with "located," under the

27    definition of "home State."  In short, *American Surety* simply cannot be "reconciled" with

28    *Murphree* or *Schmidt* to provide the PPB as an additional test to *Schmidt*'s main office test.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

C.      **American Surety, From A Completely Different Era, Decided Only The Branch Office Question**

In addition, *American Surety* was not deciding the question presented today and addressed by *WMR*: whether a national bank's PPB should be used to assess citizenship in addition to its main office.  Instead, *American Surety* addressed whether the branch office of a national bank should be used to assess citizenship, the same exact question in *Schmidt*. *American Surety*, 133 F.2d at 162.

The bank in *American Surety*, like the bank in *Schmidt*, had its PPB and main office in the same state.  *American Surety v. Bank of Cal.*, 44 F. Supp. 81, 82 (D. Or. 1941).  Again, if the Supreme Court could not decide if the PPB test belonged in Section 1348 under the same fact pattern, neither could *American Surety*.  *See, Mireles*, 845 F. Supp. 2d at 1061 n.116 (distinguishing *Firstar* and *Horton* on similar grounds).

Tellingly, unlike *Uriarte,* even *Firstar* and *Horton* did not read *American Surety* as supporting their positions.  *Firstar*, 253 F.3d at 989, n.3 ("For the reasons explained near the end of this opinion, we ***deviate*** from *American Surety* … by concluding that national banks potentially can be citizens of two states for diversity purposes.") (emphasis added); *Horton*, 387 F.3d at 431 ("*See also, Am. Sur. Co. v. Bank of Ca.,* 133 F.2d 160, 161-62 (9th Cir. 1943) (holding national bank with ***branch*** in Oregon was not citizen thereof for diversity purposes under predecessor of section 1348)") (emphasis added).

Second, *American Surety* only resorted to a corporation's citizenship as an "analogy" because "[N]o case defining 'located'… has come to our attention."  *American Surety*, 133 F.2d at 161.  The Supreme Court's decision in *Schmidt* makes this rationale no longer viable.

Finally, interstate branches for national banks were prohibited until 1994, unless grandfathered in as converted state chartered banks (*Schmidt*, 546 U.S. at 307, n.2), probably like the bank in *American Surety*.  Given the obsolete banking background in which *American Surety* was decided, it has limited value today.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    **7.    UNLIKE *WMR*, NEITHER *FIRSTAR* NOR *HORTON* DECIDED THE PPB**

2    **QUESTION CURRENTLY PRESENTED**

3        As previously discussed, *Firstar* and *Horton* are two pre-*Schmidt* decisions that

4    purportedly held that a national bank was a citizen of both its main office and additionally, the

5    bank's PPB.  *Horton* mostly follows *Firstar*, citing the latter sixteen times.

6        However, *Firstar* and *Horton* did not actually decide the PPB question.  In *Schmidt*, the

7    Supreme Court said that it would not decide the PPB question (*Schmidt*, at 315, n.8) because the

8    bank's main office and PPB were in the same state.  *Id.*, at 317, n.9.  This was the same exact

9    situation presented in both *Firstar* and *Horton*.  In *Firstar*, Firstar Bank, N.A. "identified its

10   principal place of business as Ohio. …  The state identified in Firstar's organization certificate as

11   the place where its operations are carried on [a.k.a. "main office"] is also Ohio."  *Firstar*, 253

12   F.3d at 984.  In *Horton*, "Bank One [N.A.] claims that it is a citizen only of Illinois – the state of

13   its principal place of business and the state listed in its organization certificate."  *Horton*, 387

14   F.3d at 428.

15       Moreover, the Seventh Circuit and Chief Justice Flaum, the author of *Firstar*, have also

16   since abandoned *Firstar*'s application of the PPB test to national banks for citizenship purposes.

17   *See, Hicklin Eng'g, l.c. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("But [*Schmidt*] held that

18   national banks are citizens ***only*** of the states in which their main offices are located….")

19   (emphasis added).

20       In both cases, the party challenging diversity was a citizen of a branch office state.

21   *Firstar*, 253 F.3d at 985; *Horton*, 253 F.3d at 428.  If the Supreme Court declined to decide the

22   PPB question because that portion was "not … necessary" to the case (see *Schmidt*, at n.8 & n.9),

23   surely neither *Firstar* nor *Horton* purport to do so under ***identical*** facts.

24       In fact, *Mireles* recently pointed out this flaw in *Firstar* and *Horton*:

25           Plaintiffs' reliance on *Horton* [citation] and *Firstar* [citation] is misplaced.
             While those cases contained language ***suggesting*** that a national banking
26           association may be a citizen of both its state of incorporation and the state
             of its principal place of business, the holdings in *Horton* and *Firstar*
27           addressed whether a national bank is a citizen of ***every*** state in which it
             operates a branch.

28

*Mireles*, 845 F. Supp. 2d at 1061 n.116 (emphases added).  Under Ninth Circuit law, the PPB portions of *Firstar* and *Horton* would not be precedential, since regardless of how those Courts came out on whether Section 1348 included the PPB test, diversity would have remained intact. *United States v. Perlaza*, 439 F.3d 1149, 1159 (9th Cir. 2006) (precedential value of prior decisions limited to issues necessary to reach the decision).  For this reason alone, both *Firstar* and *Horton* should be disregarded.

Additionally, neither case analyzed the statutory link between "main office" and "located" provided in 12 U.S.C. § 36(g)(3)(B).  As pointed out above, the Supreme Court noted that the statutory definition of "home State" is where a national bank's "main office" is "located."  It is doubtful that *Firstar* and *Horton* would have felt so free to add the PPB test had they examined Section 36(g)(3)(B).

In contrast to *Firstar* and *Horton, WMR **actually*** decided the issue presented today because one of the defendants there was a California citizen.  *WMR*, 653 F.3d at 705 ("Appellant Synoran [an LLC] is a citizen of several states, including California.  Appellants maintain that Wells Fargo is a citizen of California, its principal place of business, and of South Dakota, where its main office is located.").

As the most recent of the three out-of-Circuit decisions, decided with the benefit of the landmark decision in *Schmidt*, and the only one that actually decided whether Section 1348 included the PPB test, *WMR* should be followed, not *Firstar and Horton*.

## 8.   THE STATUTORY HISTORY OF 28 U.S.C. § 1348 DOES NOT CALL FOR PRECISE JURISDICTIONAL PARITY

One of the crucial flaws in plaintiff's cases (*Firstar, Horton, Rouse, Taheny, and Uriarte*) is that they all assume ***precise*** jurisdictional parity with state-chartered corporations, as opposed to imperfect parity, is necessary to Section 1348.  This simply has no basis in the statute.  *See, e.g., DeLeon,* 729 F. Supp. 2d at 1123 ("Moreover, in footnote 9, the Court recognized the ***imperfect*** parity between corporations and national banks.") (emphasis added).

It is true that in 1882, the predecessor statute to Section 1348 stated that the jurisdiction for national banks "shall be same as, and not other than, the jurisdiction for suits by or against

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

banks not organized under any law of the United States…." *Schmidt*, 546 U.S. at 310 (quoting Act of July 12, 1882, § 4, 22 Stat. 163 and adopting the short hand of "state banks").  However, this version does not even have the operative term "located" that currently exists in Section 1348. This limits its interpretative aid.

More directly, in 1887, when the present "located" phrase was enacted, the reference to "banks not organized under any law of the United States" was replaced with "between individual citizens of the same State." *Schmidt*, 546 U.S. at 310-11 (quoting Act Mar. 3, 1887, § 4, 24 Stat. 554-55).  In fact, by 1911, under the version of the statute decided by *American Surety*, **all** references to jurisdictional parity with another entity or person had been excised.  *Schmidt*, 546 U.S. at 312 (quoting Act Mar. 3, 1887, § 4, 24 Stat. 554-55).  Against this statutory history (where the "parity with state banks" language disappeared three versions and more than a century ago), there is no reason why precise jurisdictional parity of national banks with state banks and corporations should be the rule today.

**A.    Imperfect Parity Would Not Be An "Anomalous Result" Under *Schmidt***

While it is true that *Schmidt* made comparisons between national banks and state-chartered corporations to avoid what it calls an "anomalous result" (*Schmidt*, 546 U.S. at 317), the "anomalous result" it wished to avoid was to have a national bank be treated as a citizen in sixteen, or potentially all fifty, states due to its branch office locations.  *Schmidt*, 546 U.S. at 317.

In fact, *Schmidt's* reliance on the principle of jurisdictional parity with state-chartered corporations was only to (politely) highlight the absurd result reached by the Fourth Circuit in adopting the branch office as a test for citizenship.  *Id.* at 317 ("Accordingly, while corporations ordinarily rank as citizens of at most 2 States, Wachovia, under the Court of Appeals' **novel** citizenship rule, would be a citizen of 16 States.") (emphasis added).

Wells Fargo respectfully submits that having state corporations be citizens of two states, pursuant to 28 U.S.C. § 1332(c)(1), while having national banks be citizens of only one state (*i.e.* incomplete parity), pursuant to Section 1348, would not be "anomalous":

Some courts have held that because Congress eliminated federal question jurisdiction for national banks in 1882 in order to expressly create jurisdictional parity with state banks and

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    corporations, the "located" language should be interpreted to include a national bank's main

2    office and its principal place of business; otherwise, a state bank could be a citizen of two states

3    while a national bank could only be a citizen of one.  [citation]  There is nothing in the language

4    of Section 1348, however, which requires such precise jurisdictional parity.  [¶_____]

5       To the contrary, the 1882 statutes' unambiguous statement that federal jurisdiction over

6    national banks "shall be the same as, and not other than" jurisdiction over state-chartered entities

7    was eliminated by the 1887 amendment.  *See, WMR e-PIN*, 653 F.3d at 709 (noting that "the

8    language that expressly established parity between national banks and state banks was removed

9    in 1887").  None of the subsequent iterations of the jurisdiction provisions, including Section

10   1348, contain analogous language that requires jurisdictional parity.  Moreover, to the extent that

11   jurisdictional parity matters, it exists generally, if not precisely, when "located" in Section 1348

12   is interpreted to refer only to the state of a national bank's main office.  When so construed,

13   Section 1348 makes national banks citizens of one state, whereas Section 1332(c)(1) makes state

14   banks citizens of – at most – two states.  Thus, interpreting "is located" in Section 1348 to refer

15   only to a national bank's main office ***avoids*** the "anomalous result" the Supreme Court worried

16   about when it considered whether national banks are citizens of every state in which they

17   conduct business.  *See, Schmidt*, 546 U.S. at 317 (noting that if Wachovia were a citizen of every

18   state in which it conducted business, it would be a citizen of 16 states).

19      *Flores v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 32648, *12-13 (N.D. Cal. Mar.

20   12, 2012) (section entitled "Precise Jurisdictional Parity Is Not Required.") (emphasis added).

21      On the other hand, "perfect" jurisdictional parity would essentially replace Section 1348

22   with Section 1332(c)(1), a statute with vastly different language.  Wells Fargo respectfully

23   submits that such a fundamental change should be left to Congress.

24       **9. APPLYING THE PPB TEST REQUIRES AN ACT OF CONGRESS**

25      Ultimately, *Uriarte, Firstar,* and *Horton* would all effect a significant amendment to

26   Section 1348, making a national bank a citizen of the state of its main office, as designated in its

27   articles of association, and if different, also of the state of its PPB.

28      Unacknowledged by those cases, this would essentially replace Section 1348 with 28

1  U.S.C. § 1332(c)(1), which provides "a corporation shall be deemed to be a citizen of any State

2  by which it has been incorporated and of the State where it has its principal place of business."

3  Such a drastic re-writing of Section 1348 more than 60 years later should be done by Congress,

4  not the Court. *Accord Mireles*, 845 F. Supp. 2d at 1061 ("one can only speculate as to what

5  Congress' intent would have been had it known that the citizenship of state banks would be

6  changed decades in the future.").

7        Recent legislation shows that applying the PPB test to non-corporations requires an act of

8  Congress. In 2005, Congress amended Section 1332 as part of the Class Action Fairness Act

9  ("CAFA"). It fixed the citizenship of an "unincorporated association" to its "State where it has

10  its principal place of business and the State under whose laws it is organized" (28 U.S.C.

11  § 1332(d)(10)), which parallels that of corporations. The Fourth Circuit held that Section

12  1332(d)(10) applies to limited liability companies in CAFA class actions **only**. *Ferrell v.*

13  *Express Check Advance of SC, LLC*, 591 F.3d 698, 702 (4th Cir. 2010).

14        In fact, the Fifth Circuit held that the special CAFA diversity statute was an additional

15  reason **not** to extend the PPB test to LLCs in regular lawsuits. *Harvey v. Grey Wolf Drilling Co.*,

16  542 F.3d 1077, 1080 (5th Cir. 2008). That rationale applies with even greater clarity to federally

17  chartered national banks. It is also notable that *Firstar,* 253 F.3d 982, in 2001 and *Horton,* 387

18  F.3d 426, in 2004, which purported to judicially apply the PPB test, were both decided before the

19  2005 enactment of Section 1332(c)(10) by Congress.

20        Prior to the enactment of Section 1332(d)(10), the Supreme Court had refused to apply

21  the PPB test to limited liability partnerships, deciding to leave that decision to Congress. *Carden*

22  *v. Arkoma Associates*, 494 U.S. 185, 197 (1990) ("such accommodation is performed more

23  legitimately by Congress than by courts…"); *accord, Johnson v. Columbia Properties*

24  *Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (no corporate citizenship treatment for LLCs).

25        If the PPB test for citizenship created by Section 1332(c)(1), the citizenship statute for

26  state-chartered corporations, cannot be applied to state-chartered LLCs, it surely cannot be

27  applied to federally-chartered national banks, which are heavily regulated by the federal

28  government. *See, e.g.,* 12 U.S.C. §§ 1-216d.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

## 10.   <u>CONCLUSION</u>

For all of the above reasons this is diversity jurisdiction and defendant Wells Fargo Bank, N.A. respectfully requests that the Court deny plaintiff's motion to remand the case to state court.

Respectfully submitted,

Dated:  May 16, 2013

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By:   /s/ Kenneth A. Franklin
Kenneth A. Franklin
kfranklin@afrct.com
Attorneys for
WELLS FARGO BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB (sued erroneously as Wells Fargo Bank, N.A., a/k/a Wachovia Mortgage as successor by merger with World Savings Bank FSB) ("Wells Fargo")

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**WELLS FARGO'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

on the interested parties in said case as follows:

**Served Electronically**
**Via the Court's CM/ECF System**

| *Attorneys for Plaintiff:* | *Attorneys for Defendant:* |
| --- | --- |
| | *Regional Trustee Services Corporation* |
| Vernon L. Bradley | Robin Prema Wright, Esq. |
| Law Offices of Vernon L. Bradley | Nicole K. Neff, Esq. |
| Waldo Point Harbor | WRIGHT, FINLAY & ZAK, LLP |
| 54 Liberty Dock | 4665 MacArthur Court, Suite 280 |
| Sausalito, CA  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 | Newport Beach, CA  92660 |
| | |
| Tel:  415-331-4441 | Tel:     (949) 477-5050 |
| Fax:  415-331-4443 | Fax:    (949) 477-9200 |
| | *rwright@wrightlegal.net* |
| *bradleylawoffice@comcast.net* | *nneff@wrightlegal.net* |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on **May 16, 2013.**

| Lina C. Velasquez | */s/ Lina C. Velasquez* |
| --- | --- |
| (Type or Print Name) | (Signature of Declarant) |